Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 782492 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

Briefs and Other Related Documents

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Christopher BOYD, Plaintiff,
v.
UNIVERSITY OF ILLINOIS, Interspace a/k/a Iodyne Corporation, Dean Robert Wedgeworth, Vice Chancellor Melvin U. Degeeter, Defendants.
No. 96 Civ. 9327(TPG).

Sept. 30, 1999.

OPINION

GRIESA, J.

*1 Plaintiff Christopher Boyd is suing *pro se.* He is a former student at the University of Illinois at Urbana-Champaign ("the University"), and is now resides in New York. His basic claim is that he created a valuable business concept and presented it to representatives of the University, who used his services and then created a company without compensating him. He is suing the University, as well as University employees Marvin DeGeeter and Robert Wedgeworth, and also the company referred to, IODyne Digital Library Technologies Inc., ("IODyne"). All of the parties are citizens of Illinois. Subject matter jurisdiction is based on diversity of citizenship.

The University and DeGeeter move to dismiss the complaint, or in the alternative for summary judgment. Wedgeworth and IODyne move for summary judgment. The motion to dismiss is denied. The motion of the University for summary judgment dismissing the complaint against it is granted. The motions of DeGeeter, Wedgeworth and IODyne for summary judgment are denied, except that such motions are granted dismissing plaintiff's claim under the 1996 Economic Espionage Act.

*The Parties*

Melvin DeGeeter is the University's Vice Chancellor of the Research and Technology Management Office. Plaintiff is suing him individually and as a representative of the University. Robert Wedgeworth is Director of the University Library and is President of IODyne. Plaintiff is suing him individually and as a representative of the University.

*Prior Proceedings*

The court previously denied defendants' motions to dismiss for lack of personal jurisdiction and denied their motion to transfer the case to the Central District of Illinois. Plaintiff originally named Dr. Larry Smarr as a defendant. He is employed by the University's National Center for Supercomputing Applications ("NCSA"). Plaintiff has dropped Smarr from the case.

*Facts*

The relevant events begin when plaintiff was a student taking graduate courses at the University. Through a contact at the NCSA, plaintiff learned of Wedgeworth and the software developed by the "digital library project." He contacted Wedgworth in October or November in 1995, and in a brief meeting introduced his idea of commercializing the Library's software.

Plaintiff and Wedgeworth then held a lunch meeting around Thanksgiving of 1995 to discuss plaintiff's ideas. The parties dispute exactly what happened at this meeting. Plaintiff claims that he disclosed confidential details of a business plan and gave Wedgeworth a twelve-page document outlining the plan. He further claims that they discussed explicit terms of compensation, to include roughly $82,000 for his fee, a consulting rate of $800 an hour, and a share of equity in the company. Wedgeworth claims that he was never given any document of any kind at this meeting and that he has never discussed terms of compensation with the plaintiff.

By February of 1996, plaintiff had moved to Arizona. Wedgeworth called him there to discuss commercializing the Library's thesaurus browser technology. Plaintiff claims that "by the end of" the two meetings in November 1995 and this call in February 1996, Wedgeworth had engaged his consulting services to start up a company. Specifically, plaintiff claims that he was to draft a business plan and private placement memorandum. Wedgeworth denies engaging plaintiff's services.

*2 From March of 1996 through October 1996, the exact chronology of events is unclear. What is clear is that (1) plaintiff proposed forming a company to be called Interspace Corp., (2) that some efforts were made to in fact form Interspace, and (3) that ultimately IODyne was formed instead, without the plaintiff. Plaintiff claims that he introduced two investors, Richard Spizzirri and Donaldson Pillsbury, to the project, and also legal counsel Joseph Diamante.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 1999 WL 782492 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

Defendants have offered no alternative explanation for these parties' involvement. Plaintiff also did draft a business plan and private placement memorandum for Interspace. He claims that these were used to form IODyne, but defendants claim that these documents were unusable.

Correspondence in the record indicates that in May and June of 1996 all parties were proceeding with the formation of Interspace. On August 14, 1996 the University signed a preliminary agreement with Interspace to license the Library's "thesaurus browser" software. However, Interspace was not and still is not a valid corporation. Wedgeworth signed the agreement for Interspace, writing for his title "President of Interspace, University Librarian."

Several incorporation meetings were held in New York City. For the first, on May 17, 1996, DeGeeter drafted a meeting agenda and attended the meeting. Plaintiff was expected to attend but did not. Plaintiff alleges that by the second meeting, held September 11, 1996, defendants had decided to cut him out of the company, abandon Interspace and form IODyne instead. Defendants say only that they had no contact with plaintiff after early September of 1996, and that IODyne was formed because plaintiff had not incorporated Interspace. Wedgeworth drafted a business plan for IODyne on October 30, which plaintiff claims simply recast his plan. IODyne's purpose is to license technology from the University.

Pennie & Edmonds filed to register a trademark for IODyne on November 19, 1996. On November 20, 1996 the third incorporation meeting was held in New York. Wedgeworth, Pillsbury, Spizzirri and Diamante attended. All four men were elected directors of IODyne at this meeting, along with Bruce Schatz. Wedgeworth was elected President of IODyne, and Diamante became the Secretary and Treasurer. Each director contributed $5,000 in initial capitalization, which defendants claim is now exhausted by the instant litigation. Plaintiff asserts that IODyne has been deliberately undercapitalized and is waiting until an indefinite future date for its first infusion of investment capital. It is clear that, at the present, IODyne has no assets, and as yet has no license with the University.

Plaintiff claims that he asked Pennie & Edmonds for his $82,000 fee in November. Plaintiff has not been paid anything.

Plaintiff filed this action on December 12, 1996.

*Discussion*

The University and DeGeeter move to dismiss the complaint for failure to state a proper claim. The court denies this motion and will proceed to deal with their alternate motion for summary judgment along with the summary judgment motions of Wedgeworth and IODyne.

**\*3** It is familiar law that parties moving for summary judgment bear the burden of establishing that there are no triable issues of fact, and all ambiguities are to be construed in favor of the nonmoving party. When dealing with a party proceeding *pro se,* the court is to interpret the party's papers as "rais[ing] the strongest arguments that they suggest." *Walsh v. Eastman Kodak Co.,* 53 F.Supp.2d 569, 571 (W.D.N.Y.1999), quoting *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995).

In support of their various motions to dismiss, the defendants have made the following claims: (1) the University, DeGeeter and Wedgeworth are immune from a federal court suit as a state agency and officers under the Eleventh Amendment, (2) plaintiff's claims for breach of contract, implied contract, promissory estoppel and quantum meruit fail for indefiniteness, and (3) plaintiff's claims for trade secret misappropriation fail because (a) he has not identified anything to be called a trade secret, and (b) he abandoned protection by making no effort to preserve confidentiality. Defendants mutually adopt each others' motions and factual statements.

*Eleventh Amendment Sovereign Immunity*

The University, DeGeeter and Wedgeworth all claim total immunity from suit under the Eleventh Amendment. The University, named as a separate defendant, is a state-funded university. DeGeeter and Wedgeworth claim immunity as employees of the University.

A state agency is immune from suit for monetary relief, unless the state has expressly waived immunity or Congress has authorized suit under section 5 of the Fourteenth Amendment. The Supreme Court's recent decision in *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.,* 119 S.Ct. 2219 (1999), reiterates the stringent standards for waiver and the limitations on Congress's ability to abrogate sovereignty. State-funded universities are almost always held to be immune state agencies. *See Kroll v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 3
Not Reported in F.Supp.2d, 1999 WL 782492 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*Board of Trustees of the University of Illinois,* 934 F.2d 904 (7th Cir.), *cert. denied,* 502 U.S. 941 (1991) (treating the University like a state agency); *see also* Erwin Chemerinsky, Federal Jurisdiction, 407-09 nn. 33-34 (3d Ed.1999) (listing federal decisions). This rule clearly applies to the University of Illinois.

There has been no express waiver of Eleventh Amendment immunity by or on behalf of the University, nor does plaintiff allege a claim under a federal statute that abrogates that immunity. Plaintiff's claims against the University are dismissed.

DeGeeter and Wedgeworth would also be immune if they were acting in their official capacities as employees of the state agency. If they were acting in an individual capacity, they are not immune. *See generally* Chemerinsky at 421-23.

Defendants rightly rely on plaintiff's persistent representations that he is suing both DeGeeter and Wedgeworth as agents of the University. However, in a summary judgment motion the burden lies with the moving parties. In this light, it is not at all clear that Wedgeworth acted on behalf of the University in becoming the president of a private corporation. As for DeGeeter, while he may in fact have acted for the University, he has submitted no affidavit to the court to argue this point.

**\*4** Summary judgment on Eleventh Amendment grounds is denied as to DeGeeter and Wedgeworth. Of course, this defense can be raised in further proceedings.

*Plaintiff's Contract and Related Claims*

Plaintiff has alleged many claims that roughly correspond to breach of contract, breach of implied contract, promissory estoppel, quantum meruit or unjust enrichment. All parties agree that there is no written contract. As to whether there was a contract in some form, or some other basis for recovery by plaintiff, plaintiff's present record contains a great deal of confusion, but it cannot be said to justify dismissal on summary judgment.

There are problems from the standpoint of the individual defendants and IODyne. It is conceded that plaintiff carried out work for them, and that they were in touch with him regarding his proposal. Defendants have not provided a sufficient explanation of how matters were resolved with plaintiff, or how they did or did not use his ideas and work.

Defendants' motion for summary judgment on the above claims is denied.

*Plaintiff's Trade Secret and Related Claims*

To the extent that plaintiff relies on the 1996 Economic Espionage Act, 18 U.S.C. § 1831 *et seq.,* his claim is dismissed. This Act is a criminal statute that affords no standing to any private citizen.

As for his remaining claims encompassing theft of trade secrets or similar torts, the record does not justify dismissal on summary judgment.

*Conclusion*

The motion of the University and DeGeeter to dismiss the complaint for failure to state a proper claim is denied. The motion of the University for summary judgment dismissing the complaint against it is granted. The motions of DeGeeter, Wedgeworth and IODyne for summary judgment are denied, except that such motions are granted dismissing plaintiff's claim under the 1996 Economic Espionage Act.

It will be necessary to hold pretrial proceedings to clarify both plaintiff's claims and the defenses to those claims. In the course of these proceedings, the court will give further consideration to whether any of plaintiff's claims should be dismissed.

SO ORDERED.

S.D.N.Y.,1999.
Boyd v. University of Illinois
Not Reported in F.Supp.2d, 1999 WL 782492 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:96cv09327 (Docket) (Dec. 12, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.