# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT R. PRUNTE;<br>YOWORLD MUSIC COMPANY, d/b/a<br>ROWDY CITY RECORDS,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSAL MUSIC GROUP, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:06-cv-00480-PLF<br>)<br>)<br>)<br>) |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FILED BY DEFENDANTS UMG RECORDINGS, INC. AND ATLANTIC RECORDING TO DISMISS AMENDED COMPLAINT**

Steven B. Fabrizio (Bar No. 436482)
Michael B. DeSanctis (Bar No. 460961)
Elizabeth G. Porter  (Bar No. 484335)
JENNER & BLOCK LLP
601 Thirteenth Street, N.W
Suite 1200 South
Washington, D.C. 20005
Tel.: (202) 639-6000
Fax:  (202) 639-6066

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

BACKGROUND ............................................................................................2

STANDARD OF REVIEW ...............................................................................4

ARGUMENT ................................................................................................5

I.   PLAINTIFF YOWORLD MUST BE DISMISSED BECAUSE IT IS NOT
     REPRESENTED BY COUNSEL. ..............................................................5

II.  COUNTS I AND II MUST BE DISMISSED FOR THEIR FAILURE TO STATE A
     CAUSE OF ACTION ON WHICH RELIEF CAN BE GRANTED........................6

     A.  The Amended Complaint Reveals that Mr. Prunte Neither Owns Nor Has
         Registered the Copyrights in the Works Alleged to Have Been Infringed........6

     B.  The Facts Alleged in the Amended Complaint Demonstrate That No Trier of Fact
         Could Find That The Allegedly Infringing Songs Are Substantially Similar to
         Protectible Material in Plaintiffs' Works. ...........................................11

III. COUNT III, ALLEGING A VIOLATION OF THE LANHAM ACT, MUST BE
     DISMISSED. .....................................................................................19

IV.  COUNT IV, ALLEGING CIVIL RICO, FAILS AS A MATTER OF LAW. .........21

V.   COUNTS V-XI MUST BE DISMISSED BECAUSE ALL BUT ONE IS PREMISED
     ON A CRIMINAL STATUTE WITH NO PRIVATE RIGHT OF ACTION, AND
     NONE STATES A CLAIM ON WHICH RELIEF CAN BE GRANTED. ..............24

     A.  Count V:  Alleged Bank Fraud Under 18 U.S.C. § 1344(2)......................25

     B.  Count VI:  Alleged Extortion Under 18 U.S.C. § 1951...........................26

     C.  Count VII:  Alleged Criminal Copyright Infringement Under 17 U.S.C. § 506(a)
         and 18 U.S.C. § 2319 ..................................................................27

     D.  Count VIII:  Trafficking in Counterfeit Labels Under 18 U.S.C. § 2318..........27

     E.  Count IX:  Interstate Transportation of Stolen Property Under 18 U.S.C. § 2314...........28

     F.  Count X:  Alleged Violation of the Travel Act Under 18 U.S.C. § 1952..........29

     G.  Count XI:  Theft of Trade Secrets Under the Electronic Espionage Act, 18 U.S.C.
         § 1832...................................................................................29

VI. COUNT XII OF PLAINTIFFS' AMENDED COMPLAINT FOR BREACH OF
   FIDUCIARY DUTY AND "RESPONDEAT SUPERIOR" FAILS TO STATE A
   CLAIM AND MUST BE DISMISSED...................................................................30

CONCLUSION.................................................................................................................33

# TABLE OF AUTHORITIES*

## CASES

*American Airways Charters, Inc. v. Regan*, 746 F.2d 865 (D.C. Cir. 1984) ...................................5

*Arica Institute, Inc. v. Palmer*, 970 F.2d 1067 (2d Cir. 1992) .......................................................14

*Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529 (11th Cir. 1994) ....................9

*Bajorat v. Columbia-Breckenridge Development Corp.*, 944 F. Supp. 1371 (N.D. Ill. 1996) ....................................................................................................................................29

*Bell v. Blaze Magazine*, 58 U.S.P.Q. 2d 1464 (S.D.N.Y. 2001) ....................................................13

*Bhagwanani v. Howard University*, 355 F. Supp. 2d 294 (D.D.C. 2005) .....................................25

*Boyd v. University of Illinois*, No. 96 Civ. 9327, 1999 WL 782492 (S.D.N.Y Sept. 30, 1999) ..................................................................................................................................29

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2004) ...................................................21

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) ............................................................................25

*Cooper v. North Jersey Trust Co. of Ridgewood*, 250 F. Supp. 237 (S.D.N.Y. 1965) .................28

*Cort v. Ash*, 422 U.S. 66 (1975)....................................................................................................25

*Danielsen v. Burnside-Ott Aviation Training Center, Inc.*, 941 F.2d 1220 (D.C. Cir. 1991) ...................................................................................................................................24

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) .....................................19

*Davis v. MCI Communications Services, Inc.*, 421 F. Supp. 2d 1178 (E.D. Mo. 2006)...............31

*Dodd v. Infinity Travel*, 90 F. Supp. 115 (D.D.C. 2000) .............................................................22

*Domen v. Natural Rehabilitation Hospital, Inc.*, 925 F. Supp. 830 (D.D.C. 1996) .......................4

*Donald Frederick Evans & Associates, Inc. v. Continental Homes, Inc.*, 785 F.2d 897 (11th Cir. 1986)...................................................................................................................27

*Dowling v. United States*, 473 U.S. 207 (1985)........................................................................28, 29

*Dawson v. Hinshaw Music Inc.*, 905 F.2d 731 (4th Cir. 1990) ....................................................12

---

* Authorities upon which we chiefly rely are marked with an asterisk.

*Estelle v. Gamble*, 429 U.S. 97 (1976) ....................................................................... 4-5

*Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991) ..............................7

*First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004)..............22

*Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259 (S.D.N.Y. 2005) .........................19

*Grace v. Bank Leumi Trust Co. of New York*, 443 F.3d 180 (2d Cir. 2006)...................................5

*Iannacone v. Law*, 142 F.3d 553 (2d Cir. 1998) ............................................................................5

*John's Insulation. Inc. v. Siska Construction Co.*, 774 F. Supp. 156 (S.D.N.Y. 1991)................26

*Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199 (3d Cir. 2005)...............................................12

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994) ...........27

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) .........................................4

*Kregos v. Associated Press*, 795 F. Supp. 1325 (S.D.N.Y. 1992), *aff'd*, 3 F.3d 656 (2d
   Cir. 1993) ...................................................................................................................................9

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163
   (1993)........................................................................................................................................4

*Lober v. Moore*, 417 F.2d 714 (D.C. Cir. 1969) ..........................................................................32

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir. 1990)..............................9

*McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162 (D.C. Cir. 1995)........................................25

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982).............................24

*Milgrom v. Burstein*, 374 F. Supp. 2d 523 (E.D. Ky. 2005).........................................................25

*Morris v. Business Concepts, Inc.*, 259 F.3d 65 (2d Cir. 2001).....................................................11

*Nelson v. PRN Productions, Inc.*, 873 F.2d 1141 (8th Cir. 1989) .................................................13

*Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181 (D.D.C. 2005).........................................6, 7, 9, 18

*Persson v. Smart Inventions, Inc.*, 23 Cal. Rptr. 3d 335 (Cal. Ct. App. 2005).......................31, 32

*Perrin v. United States*, 444 U.S. 37 (1979) ................................................................................29

*Prunte v. Walt Disney Co.*, No. 04-0629 (JDB), Memorandum Opinion (D.D.C. Mar. 31, 2005) ............................................................................................................................2

*Rockefeller v. U.S. Court of Appeals for the Tenth Circuit*, 248 F. Supp. 2d 17 (D.D.C. 2003) ..............................................................................................................................25

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)........................................................20

*Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194 (1993)...............................................................................................................................5

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ...................................................21

*Stenograph L.L.C. v. Bossard Associates, Inc.*, 144 F.3d 96 (D.C. Cir. 1998)............11

*Strategy Source, Inc. v. Lee*, 233 F. Supp. 2d 1 (D.D.C. 2002)....................................9

*Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004)....................................30

*Sturdza v. United Arab Emirates*, 281 F.3d 1287 (D.C. Cir. 2002).........................12, 13

*Toms v. Pizzo*, 4 F. Supp. 2d 178 (W.D.N.Y. 1998), *aff'd*, 172 F.3d 38 (2d Cir. 1998) (unpublished table decision) .................................................................................. 26-27

*United States v. Coonan*, 938 F.2d 1553 (2d Cir. 1991).............................................21

*United States v. Shultz*, 482 F.2d 1179 (6th Cir. 1973) .............................................28

*United States v. Sow*, No. 02 CR 610, 2003 WL 1597085 (S.D.N.Y. Mar. 27, 2003) .................28

*United States v. Thomas*, 315 F.3d 190 (3d Cir. 2002)...............................................26

*United States v. Turkette*, 452 U.S. 576 (1981) .........................................................23

*United States v. White*, 116 F.3d 903 (D.C. Cir. 1997) ..............................................22

*United States ex rel. Rockefeller v. Westinghouse Electric Co.*, 274 F. Supp. 2d 10 (D.D.C. 2003), *aff'd sub nom. Rockefeller ex rel. United States v. Washington TRU Solutions LLC*, No. 03-7120, 2004 WL 180264 (D.C. Cir. Jan. 21, 2004) .............................5

*Walker v. Time Life Films, Inc.*, 784 F.2d 44 (2d Cir. 1986)........................................12

*Western Associates Ltd. Partnership ex rel. Avenue Associates Ltd. Partnership v. Market Square Assocs.*, 235 F.3d 629 (D.C. Cir. 2001) ..........................................23

*Whitehead v. Paramount Pictures Corp.*, 53 F. Supp. 2d 38 (D.D.C. 1999), *aff'd*, No.
99-7137, 2000 WL 33363291 (D.C. Cir. Apr. 19, 2000) .............................. 7-8, 12, 13, 14, 15

*Williams v. Crichton*, 84 F.3d 581 (2d Cir. 1996) .......................................................................13

*Wolf v. Superior Court*, 130 Cal. Rptr. 2d 860 (Cal. Ct. App. 2003) .............................................32

*Zyla v. Wadsworth*, 360 F.3d 243 (1st Cir. 2004) ........................................................................19

*Yellow Bus Lines v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132 (D.C.
Cir. 1990) .............................................................................................................................21

## STATUTES AND REGULATIONS

15 U.S.C. § 1125(a)(1) ....................................................................................................................19

17 U.S.C. § 101 ...............................................................................................................................10

17 U.S.C. § 410(a) .............................................................................................................................8

*17 U.S.C. § 411(a) ...................................................................................................................8, 10

17 U.S.C. § 506(a) ...........................................................................................................................27

18 U.S.C. § 1344 ........................................................................................................................25, 26

18 U.S.C. § 1832(a) .........................................................................................................................30

18 U.S.C. § 1836(a) .........................................................................................................................29

18 U.S.C. § 1951 ..............................................................................................................................26

18 U.S.C. § 1952 ..............................................................................................................................29

18 U.S.C. § 1961(5) .........................................................................................................................23

18 U.S.C. § 2314 ..............................................................................................................................28

18 U.S.C. § 2318(a) .........................................................................................................................27

18 U.S.C. § 2318(b)(1) ....................................................................................................................27

18 U.S.C. § 2318(b)(4) ....................................................................................................................28

18 U.S.C. § 2318(f) ..........................................................................................................................27

18 U.S.C. § 2319 ..........................................................................................................27

28 U.S.C. § 1654 ............................................................................................................5

37 C.F.R. § 202.1(a) .....................................................................................................14

37 C.F.R. § 202.16(b)(3)(i) ..........................................................................................10

37 C.F.R. § 202.16(c)(7) ..............................................................................................10

37 C.F.R. § 202.16(c)(10) ............................................................................................10

37 C.F.R. § 202.16(c)(11) ............................................................................................10

37 C.F.R. § 202.16(c)(13) ............................................................................................10

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT R. PRUNTE; | ) |
| YOWORLD MUSIC COMPANY, d/b/a | ) |
| ROWDY CITY RECORDS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Civil Action No. 1:06-cv-00480-PLF |
| | ) |
| UNIVERSAL MUSIC GROUP, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FILED BY DEFENDANTS UMG RECORDINGS, INC. AND ATLANTIC RECORDING CORPORATION TO DISMISS AMENDED COMPLAINT**

Defendants UMG Recordings, Inc. ("Universal") and Atlantic Recording Corporation ("Atlantic"),[1] through undersigned counsel, respectfully submit this Memorandum of Points and Authorities in support of their motion to dismiss the amended complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Universal and Atlantic are sometimes referred to herein collectively as the "Record Companies.") At its core, plaintiffs' sprawling, 90-page *pro se* amended complaint attempts to allege a simple (albeit unfounded) claim of copyright infringement. That is, it alleges that the defendant Record Companies produced and/or distributed a number of sound recordings that have paraphrased the lyrics of plaintiffs' songs. As we show, the plaintiffs' own allegations reveal that the plaintiffs are not properly before this

---

[1] The amended complaint misnames the appropriate recording company defendants as "Universal Music Group dba UMG Recordings" and "Warner Music Group dba Atlantic Recording Corporation." The initial complaint named only "Universal Music Group" and "Warner Music Group," and was served only on those misnamed entities. The appropriate Universal entity appears to be "UMG Recordings, Inc." and the appropriate Warner entity appears to be "Atlantic Recording Corporation." Because plaintiff Mr. Prunte is appearing *pro se* in this action, defendants Universal and Atlantic have not contested service of process.

Court and, even if they were, the allegedly infringing lyrics set forth in plaintiffs' amended complaint are, on their face, not remotely similar to any original and copyrightable aspects of the plaintiffs' lyrics. Beyond the core infringement counts, the amended complaint alleges that the very same underlying facts give rise to a string of progressively implausible civil and criminal claims based on wild allegations of, among other things, conspiracy and racketeering, fraud and extortion. None of these allegations even begins to state claims on which relief can be granted. Accordingly, plaintiffs' amended complaint should be dismissed with prejudice in its entirety.

## BACKGROUND

Plaintiff Robert Prunte is an experienced *pro se* litigant in this and other federal courts throughout the country. His last round of copyright infringement litigation, against the Walt Disney Company and others, consisted of six successive suits (not counting appeals) in three different federal courts. *See Prunte v. Walt Disney Co.*, No. 04-0629 (JDB), Memorandum Opinion (D.D.C. Mar. 31, 2005) (summarizing history) (attached hereto at Exhibit 1). Counsel is not aware of any having resulted in a judgment of liability.[2] Mr. Prunte has now turned his attention to the Record Companies.

Mr. Prunte alleges that he is a songwriter, manager, record producer and promoter. Although he appears never to have been signed by an established record label, he claims to have developed bands and released albums through YoWorld Music Co., doing business as Rowdy City Records ("YoWorld"), of which he is president. Compl. Exh. M. According to the amended complaint, YoWorld's "street teams" of employees sell YoWorld's CDs directly to the public on the streets of select east coast cities. Compl. Exh. F.

---

[2] Numerous of those cases, some of which named as co-conspirators the federal judges who had ruled against Mr. Prunte, were dismissed as frivolous. Similarly, many of Mr. Prunte's scores of motions, including repeated motions for sanctions against the defendants and one which sought U.S. Marshal protection in light of perceived terrorist threats from Disney, were denied as frivolous, abusive and malicious.

As early as January 2001, YoWorld had accused Universal of having infringed works that YoWorld had sent to it in the hope of being offered some kind of recording contract. Compl. Exh. M. No litigation was ever filed. Instead, YoWorld sent Universal more unsolicited works for review. *Id.*

Later that year, in September of 2001, YoWorld appears to have purchased a copy of "MusicSessions," an interactive CD-ROM produced by a division of Universal known as "Inside Sessions." Compl. Exh. O at p. 5 of 8. At that time, Inside Sessions was a new concept created by Universal for people interested in careers in the recording industry. For $200, customers received the MusicSessions CD-ROM on which top artists, producers and executives taught interactive courses on various aspects of the industry, from songwriting, to recording, to promoting. Compl. Exh. D. In addition, customers could send samples of their original works to Inside Sessions which would provide short written critiques. Compl. Exhs. B-C.

In late 2001, and as part of the Inside Sessions program, YoWorld submitted a collection of songs to be critiqued by Inside Sessions. In response, Inside Sessions sent YoWorld at least two letters in 2002 in which they provided helpful, insightful and encouraging critiques of YoWorld's songs. Compl. Exhs. B-C. Karen Pate of YoWorld even wrote back to Inside Sessions with profuse thanks, praising the helpfulness of the critiques and attributing the subsequent success of YoWorld's bands and albums to the tips provided by Inside Sessions. Compl. Exh. Q.

Now, two and a half years later, plaintiffs claim that numerous hit songs by current recording stars such as Brandy Norwood, Kanye West, Eminem, Ludacris, and Fat Joe, among others, paraphrased and therefore infringed the lyrics and titles of songs plaintiffs had sent to Inside Sessions. But it doesn't end there. Following their primary infringement counts,

plaintiffs proceed to allege nine additional counts arising out of a confusing, convoluted and wholly fictional story of how Inside Sessions was all a sham and that, in reality, it was designed from the outset to be some sort of criminal clearing house, feeding its customers' songs to the entire music industry for infringement.  Amend. Compl. pp. 2-9.  In turn, they claim that members of the entire industry, including well known recording artists, agreed that they would infringe the songs, but first would alter the lyrics just enough to avoid detection.[3]  Amend. Compl. ¶¶ 109, 199.

Based on these facts, plaintiffs allege such colorful causes of action as RICO, extortion, bank fraud, and even violations of the Electronic Espionage Act and the Travel Act.  Yet, in support of this alleged industry-wide scheme, aside from their broadest and most conclusory allegations, plaintiffs have pled no facts to support *any* of their claims.

## STANDARD OF REVIEW

On a motion to dismiss, this Court must accept as true all the factual allegations in the complaint.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  However, the Court need not accept factual inferences or conclusions of law that are unsupported by the facts set forth in the amended complaint.  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Domen v. Natural Rehab. Hosp., Inc.*, 925 F. Supp. 830, 837 (D.D.C. 1996).  Even a *pro se* plaintiff's complaint must be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 108 n.16 (1976) (internal

---

[3]  After the defendant Record Companies filed their motion to dismiss the complaint on April 18, 2006, plaintiffs filed an amended complaint that appears to contain no new counts but, instead, contains numerous new legal arguments and additional songs that they allege to have been infringed.  As for the new songs added to the amended complaint, plaintiffs entirely fail to allege *anything* — no lyrics, titles, artists, labels — that identifies the songs that allegedly infringe them.

quotation marks omitted) (dismissing *pro se* prisoner's complaint where "it [was] apparent from his complaint" that claim was not cognizable).

## ARGUMENT

### I.    PLAINTIFF YOWORLD MUST BE DISMISSED BECAUSE IT IS NOT REPRESENTED BY COUNSEL.

As an initial matter, Plaintiff YoWorld Music Co., d/b/a Rowdy City Records, is an artificial entity that is not properly before this Court because it is not represented by counsel.  It must, therefore, be dismissed.  Unlike an individual, an artificial entity such as YoWorld may not proceed in federal court unless it is represented by licensed counsel.  *See Rowland v. Cal. Men's Colony*, *Unit II Men's Advisory Council*, 506 U.S. 194, 202-03 (1993) (recognizing that it "has been the law for the better part of two centuries" that artificial entities, including corporations, partnerships and associations, cannot proceed pro se); *American Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 n.14 (D.C. Cir. 1984) ("a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*") (internal quotation marks omitted); *United States ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 16 (D.D.C. 2003), *aff'd sub nom. Rockefeller ex rel. United States v. Washington TRU Solutions LLC*, No. 03-7120, 2004 WL 180264 (D.C. Cir. Jan. 21, 2004); *Iannacone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (partnership cannot appear *pro se*); 28 U.S.C. § 1654.  Indeed, even a sole shareholder of a business cannot appear *pro se* on behalf of the business.  *See Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006).

Here, plaintiff YoWorld is obviously an artificial entity.  *See, e.g.*, Exh. Q (letter from YoWorld Music Co. signed by "Karen J. Pate, Chief Operating Officer"); Amend. Compl. ¶ 8 (alleging that Mr. Prunte and Ms. Pate are partners in YoWorld).  It follows that while Mr. Prunte may proceed *pro se* before this Court, corporate plaintiff YoWorld may not.  Because

-5-

YoWorld is not represented by counsel in this action, all claims by plaintiff YoWorld must be dismissed.

## II.    COUNTS I AND II MUST BE DISMISSED FOR THEIR FAILURE TO STATE A CAUSE OF ACTION ON WHICH RELIEF CAN BE GRANTED.

Counts I and II of the amended complaint allege direct and contributory copyright infringement respectively. Plaintiffs, however, have failed to state a claim of copyright infringement at all, for two independent reasons. First, the exhibits to the initial complaint show that Mr. Prunte (the only plaintiff legitimately before the Court) neither owns nor has registered the copyrights in the works he alleges to have been infringed. Plaintiffs have now amended their complaint to allege that they filed an application for "preregistration" of the YoWorld songs on April 20, 2006. *See* Amend. Compl. Exh. T. This, eleventh-hour effort, however, does nothing to save plaintiffs' claims from dismissal. The Copyright Office has yet to preregister the songs and, in any event, undisputed facts in the amended complaint establish that the songs at issue do not meet the preregistration requirements. Second, based on the facts set out in the amended complaint, it is clear that, as a matter of law, the works at issue are not remotely similar enough for plaintiffs to claim infringement of any original expression protected under the copyright laws. Accordingly, Counts I and II of the amended complaint must be dismissed.

### A.    The Amended Complaint Reveals that Mr. Prunte Neither Owns Nor Has Registered the Copyrights in the Works Alleged to Have Been Infringed.

To assert a claim of direct copyright infringement, a plaintiff must establish "(1) which specific original works form the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts [and] during what time the defendant infringed the copyright." *Newborn v. Yahoo! Inc.*, 391 F. Supp. 2d 181, 186 (D.D.C. 2005) (internal quotations omitted;

alteration in original) (granting motion to dismiss on ground that, among other things, plaintiffs' pleadings failed adequately to demonstrate that plaintiffs owned registered copyrights in the subject works).  Here, the amended complaint fails as a matter of law to demonstrate any possibility of meeting the second and third of these requirements — namely, that he owns registered copyrights in the songs claimed to have been infringed.

Although plaintiffs baldly assert that Mr. Prunte is the sole owner of the copyrights in all the songs at issue, *see* Amend. Compl. ¶ 77; Compl. ¶ 18, the documents attached to the complaint and amended complaint show otherwise.[4]  Namely, plaintiffs specifically assert that only one song at issue here, "We Got It Poppin," is contained in the collected works registered by the Copyright Office as SRu-452-280.  *See* Amend Compl. ¶¶ 19, 64; Compl. at p. 86, and Exh A.  The sole claimant, and therefore, sole owner of that registration, however, is YoWorld — not Mr. Prunte.  *See* Compl. Exh A.[5]  Because YoWorld is not a proper party to this action, and Mr. Prunte does not own the copyright, Mr. Prunte has failed to allege — and cannot allege — the most basic element of a copyright infringement claim with respect to "We Got It Poppin." *See Feist Pub'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (to establish copyright infringement, plaintiffs must show "ownership of a valid copyright"); *Newborn*, 391 F. Supp. 2d at 186 (same); *Whitehead v. Paramount Pictures Corp.*, 53 F. Supp. 2d 38, 45-46 (D.D.C. 1999)

---

[4] The exhibits attached to the complaint are not re-attached to the amended complaint.  They are, however, cited throughout the amended complaint and incorporated therein.

[5] Defendants attach hereto as Exhibit 2, and respectfully request that the Court take judicial notice of, the official registration stamped by the Copyright Office, Form SR: SRu 452-280. This official registration confirms plaintiffs' acknowledgement that "We Got It Poppin" is the only song on the compilation that is at issue here (line 1), that YoWorld is the sole claimant (line 4a), and that Mr. Prunte and the other contributing authors assigned their "ownership of the copyright" to YoWorld "by written contract" (line 4b).

(Friedman, J.) (quoting *Feist*, 499 U.S. at 361), *aff'd*, No. 99-7137, 2000 WL 33363291 (D.C. Cir. Apr. 19, 2000).

With respect to all remaining songs, plaintiffs attached no registration certificates to the initial complaint (and does not even allege copyright registration). Rather, they simply attached an unidentified "receipt" from the Copyright Office, dated March 2, 2006, purporting to be related to a sound recording entitled "Collection One of YoWorld Music's Purloined Songs." Compl. Exh. A1; *see also* Compl. at p. 86. Giving plaintiffs every benefit of the doubt that this is a receipt for an application for registration of the remaining songs at issue, and that Mr. Prunte is the claimant on that registration (notwithstanding the fact that the "receipt" purports to relate to "YoWorld Music's Purloined Songs"), such allegations would fail to state a claim because the Copyright Office has not yet formally registered the work.

The Copyright Act provides that,

> [w]hen, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register shall register the claim and issue to the applicant a certificate of registration under the seal of the Copyright Office.

17 U.S.C. § 410(a). In turn,

> no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.

17 U.S.C. § 411(a). Although there currently is a split of authority in the courts nationwide, the majority rule in this District is that commencement of copyright litigation is conditioned upon issuance of the registration by the Copyright Office, not on the plaintiff's merely having applied for registration.

As one court in this District reasoned after a thorough examination of the cases, the statute, and its underlying policies, these statutory sections reflect Congress' conclusion when it enacted Section 411 "that vetting by the Copyright Office of claims that materials are entitled to copyright protection was a necessary prerequisite to federal courts exercising jurisdiction over such claims.  Presumably, Congress concluded that the expert 'wisdom' of the Copyright Office justified this result." *Strategy Source, Inc. v. Lee*, 233 F. Supp. 2d 1, 4 (D.D.C. 2002) (surveying cases on both sides of the issue).   This result, moreover, worked no injustice given that any damages eventually awarded to the plaintiff in a suit filed after registration would relate back to the date of the initial application.  *Id.* (citing 17 U.S.C. § 410(d)).  Other courts both in this district and elsewhere have reached the same conclusion.  *See, e.g., Newborn*, 391 F. Supp. 2d at 186, 188; *Kregos v. Associated Press*, 795 F. Supp. 1325, 1331 (S.D.N.Y. 1992) ("Receipt of an actual Certificate of Registration or denial of [the] same is a jurisdictional requirement") (quotation marks omitted), *aff'd*, 3 F.3d 656 (2d Cir. 1993); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488 (11th Cir. 1990) (same); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1532 (11th Cir. 1994) ("Copyright registration is a prerequisite to the institution of a copyright infringement lawsuit").  Because the Copyright Office has not issued a registration for the songs at issue in this case, plaintiffs have not and cannot allege a necessary element of their cause of action for copyright infringement.  Counts I and II must, therefore, be dismissed.

In their amended complaint, plaintiffs attach an application for what is known as "preregistration," which they filed on April 20, 2006 — after defendants filed and served their motion to dismiss the initial complaint.  *See* Amend. Compl. Exh T and ¶ 76.  This application does nothing to save the amended complaint from dismissal.  First, like their application for

registration, plaintiffs have only *applied* for preregistration.  *See* Amend. Compl. Exh. T, p. 4

("We received your application . . . . We are processing your preregistration claim and will notify

you when the process is complete.").  Thus, for the same reasons discussed above with respect to

registration, plaintiffs' mere *application* for preregistration does not entitle them to sue in federal

court.  *See* 17 U.S.C. § 411(a); 37 C.F.R. § 202.16(c)(7) (making clear that preregistration occurs

only after Copyright Office reviews and approves application); 37 C.F.R. § 202.16(c)(10), (11)

and (13).

Second, according to the preregistration application itself, the claimant is Mr. Prunte,

*doing business as YoWorld Music Company*.  Exh. T at 3.[6]  By the same token, the amended

complaint appropriately makes clear that the ownership rights in the subject songs were assigned

by their authors to YoWorld — not Mr. Prunte individually.  *See* Amend. Compl. Exh. U (three-

year "YoWorld Music Company Recording/Development/Management Agreement" between

YoWorld and Andre Cooper, dated May 21, 2005); Amend. Compl. ¶ 74 (asserting that all of the

other artists signed the same distribution/management agreement).  Thus, plaintiffs' own

allegations in the amended complaint again make clear that the songs at issue are owned not by

Mr. Prunte, but by YoWorld — which is not a proper party before the Court.

Finally, plaintiffs' own allegations make clear that preregistration is not even available

for the songs at issue here.  Specifically, a work is eligible for preregistration only if it is

"unpublished."  37 C.F.R. § 202.16(b)(3)(i).  In the context of copyright law, "publication"

means simply that the work has been distributed to the public.  *See* 17 U.S.C. § 101.  Here,

plaintiffs concede in the amended complaint that YoWorld's "street teams"  distributed the

works at issue to the public on the streets of Baltimore and other urban centers.  *See* Amend.

---

[6] Ms. Karen Pate — Mr. Prunte's corporate partner in YoWorld — paid for the preregistration
application.  Exh. T at 1 and 6.

Compl. ¶¶ 73, 89; Compl. Exh. Q (touting sales of over 2000 YoWorld CDs in Baltimore, Washington, D.C. and Atlanta); Compl. ¶ 65(d).[7]

In sum, Mr. Prunte does not own the copyrights to the songs at issue in this case and, in any event, the Copyright Office has not issued a registration or preregistration for any of the songs other than "We Got it Poppin" (owned by YoWorld). Thus, Mr. Prunte, as the only plaintiff legitimately before the Court, has not and cannot allege the necessary elements of his cause of action for copyright infringement. Counts I and II must, therefore, be dismissed.

**B.    The Facts Alleged in the Amended Complaint Demonstrate That No Trier of Fact Could Find That The Allegedly Infringing Songs Are Substantially Similar to Protectible Material in Plaintiffs' Works.**

Even if Mr. Prunte did own registered copyrights in the works alleged to have been infringed, Counts I and II would have to be dismissed for the independent reason that, as a matter of law, the works claimed to have been infringed are not remotely similar to the works alleged to be infringing.

In addition to alleging ownership of a registered copyright, a copyright plaintiff must also set forth facts sufficient to show "copying of constituent elements of the work that are original." *Stenograph L.L.C. v. Bossard Associates, Inc.*, 144 F.3d 96, 99 (D.C. Cir. 1998) (quoting *Feist*, 499 U.S. at 361). In the absence of direct evidence of copying — and plaintiffs allege none here — a plaintiff must allege that the defendants had access to the plaintiff's works and that there

---

[7] In an attempt to evade the lack of a validly issued registration or preregistration, plaintiffs argue that the registration of one song —"We Got It Poppin"— may act as a bootstrap to allow an infringement suit based on all of the songs, because "We Got It Poppin" is included in the compilation for which plaintiffs have sought preregistration. Amend. Compl. ¶¶ 64-65. This assertion is entirely backwards. The cases on which plaintiffs rely hold that "where the owner of a copyright for a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action under § 411(a) for the constituent part." *Morris v. Business Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001). Plaintiffs' opposite argument — that if one work is registered, the compilation in which it appears should also be deemed as registered — misconstrues *Morris* and defies common sense.

exists "substantial similarity between the protectible material in plaintiff[s'] and defendants' works." *Whitehead*, 53 F. Supp. 2d at 46 (citing *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996)). Whether substantial similarities relate to protectible material involves distinguishing between the author's protectible expression and the unprotectible idea, concept or theme that he or she seeks to convey. *See id.* (citing cases). In this analysis, the fact-finder decides from the perspective of the lay hearer, without the aid of expert testimony, whether the copying, if any, was illicit, or an unlawful appropriation of the copyrighted work. *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 51-52 (2d Cir. 1986); *see also Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 208-09 (3d Cir. 2005) (same).[8] Accordingly, courts are free to decide the issue of infringement as a matter of law. *See, e.g.*, *Whitehead*, 53 F. Supp. 2d at 47-52. And where, as here, the original and allegedly infringing lyrics are set forth in the complaint, no discovery is necessary and courts may grant a defendant's motion to dismiss where, on the face of the complaint, no substantial similarity of protectible material exists. As one circuit court explained,

---

[8] Plaintiffs are thus wrong when they argue that this Court must take expert testimony to analyze the similarities in the context of his allegedly complex "Ebonic Literary Expressions." Compl. ¶¶ 80-81. As this Court has explained, some courts bifurcate the similarity analysis and first look for "substantial similarity" or "probative similarity" that evidences copying and *then* look for "substantial similarity" of protectible material that evidences infringement or misappropriation. *Whitehead*, 53 F. Supp. 2d at 46 n.3. Under this bifurcated analysis, expert testimony is relevant only with respect to the former inquiry. *See Walker*, 784 F.2d at 51-52; *Kay Berry, Inc.*, 421 F.3d at 208. This Court, however, follows those courts that combine the two inquiries, since a showing of substantial similarity of protectible material necessarily will subsume the lesser showing required to establish mere copying. *Whitehead*, 53 F. Supp. 2d at 46 n.3. That inquiry is based on the "ordinary lay hearer" standard for which expert testimony is "irrelevant." *Walker*, 784 F.2d at 51; *Kay Berry, Inc.*, 421 F.3d at 208. The D.C. Circuit has declined to decide the issue of whether there ever are times when the use of expert testimony may be appropriate in highly specialized situations such as cases involving computer programs. *See Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1300-01 (D.C. Cir. 2002). There, the court also cited a decision of the Fourth Circuit, in which that court held that expert testimony might be admissible for "highly specialized musical arrangements," *id.* at 1300, but not for musical recordings, which remain subject to the ordinary lay observer test, *see Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 737 (4th Cir. 1990).

> [i]n this case, the trial court carefully studied the lyrics involved and determined that reasonable minds could not differ as to the absence of substantial similarity. The trial judge could properly determine the matter of substantial similarity as a matter of law and did so by granting defendants' motion to dismiss the copyright count on the ground that it failed to state a claim for infringing use.

*Nelson v. PRN Productions, Inc.*, 873 F.2d 1141, 1143-44 (8th Cir. 1989); *see also Bell v. Blaze Magazine*, 58 U.S.P.Q.2d 1464 (S.D.N.Y. 2001) (granting motion to dismiss for failure to state a claim where complaint revealed that defendants' hip hop magazine entitled "Hip Hop Behind Bars" bore no substantial similarities to any protectible material in plaintiff's manuscript of "Hip Hop Behind the Walls"); *see also Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1296-97 (D.C. Cir. 2002) (summary judgment as a matter of law "remains appropriate if the works are so dissimilar as to protectible elements that no reasonable jury could find for the plaintiff on the question of substantial similarity").

This Court closely analyzed the substantial similarity inquiry in *Whitehead*, 53 F. Supp. 2d at 46-47. There, the Court recognized that "the *sine qua non* of copyright is originality," *id.* at 46 (quoting *Feist Publications*, 499 U.S. at 345), and explained that, although an author's creative expression can be protected, ideas and concepts cannot. *Id.* (citing cases). Nor are "sequences of events that necessarily result from the choice of setting or situations, known as *scenes a faire*, and stock themes or settings that often arise in works of a particular genre." *Id.* Thus, "[e]lements such as drunks, prostitutes, vermin and derelict cars would appear in any realistic work about … policemen in the South Bronx and thus are unprotectible *scenes a faire*." *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986)); *see also Sturdza*, 281 F.3d at 1295-96. By the same token, individual words and short phrases are not copyrightable because they are not sufficiently original. *Whitehead*, 53 F. Supp. 2d at 47 n.5 (dismissing such claims out of hand as "too

-13-

patently frivolous for discussion"); *see also, e.g., Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992); 37 C.F.R. § 202.1(a) ("Words and short phrases" are not subject to copyright).

Here, plaintiffs forthrightly concede, as they must, that the allegedly infringing songs do not track YoWorld's lyrics verbatim. Amend. Compl. ¶¶ 78, 108; Compl. ¶ 79. Rather, he repeatedly insists that they are "paraphrased." *See, e.g.*, Amend. Compl. ¶¶ 105, 165(h); Compl. at p. 10; *id*. ¶¶ 2, 60, 79, 94. In reality, however, the amended complaint itself makes clear that they share only random words such as "smoke," "drink," "shoot," "king," "slow" and "muthafugga," or short phrases, often in very different contexts, that are common either to the hip-hop genre or to language generally such as "I'm a maniac," "tear the roof off," "so high," and "get/got it poppin" (a common hip hop phrase referring to, among other things, a sexually suggestive style of dancing).[9] Amend. Compl. ¶¶ 92-101. Such words and snippets are not remotely original enough to warrant copyright protection standing alone and thus cannot state a cause of action. *See, e.g.,* 37 C.F.R. § 202.1(a) ("Words and short phrases" are not subject to copyright); *Whitehead*, 53 F. Supp. 2d at 47 n.5; *Arica Inst.*, 970 F.2d at 1072.

Indeed, the only similarities between YoWorld's lyrics and the allegedly infringing lyrics are, at most, standard depictions of antisocial behavior, anger, male bravado, and various themes on gang life, drug use, protecting one's turf, demanding respect, partying, sex, and love that ubiquitously recur in the style of hip hop music that both plaintiffs' and defendant Record Companies' compositions represent. Any passing similarity between a word or phrase naturally results from both portraying popular hip hop themes and engaging in a style of "street talk" that characterizes all hip hop and so-called gangsta-rap lyrics. Such stock themes and *scenes a faire*

---

[9] *See, e.g.*, Urban Dictionary, www.urbandictionary.com/define.php?term=poppin%27.

are not protectible.  *See, e.g., Whitehead*, 53 F. Supp. 2d at 47-52 (finding numerous stock themes and *scenes a faire* unprotectible as between works of the same genre including concepts and themes related to interracial relationships, escape scenes in action movies, and standard depictions of CIA agents in spy movies).

Even the most cursory review of the lyrics set forth in the amended complaint reveals inexorably that the allegedly infringing lyrics are not remotely similar to any protectible aspects of YoWorld's songs:

| Plaintiffs' Lyrics | Allegedly Infringing Lyrics |
|---|---|
| We gone smoke, drink, cuss, fight, stab, shoot cuz we wildin tonight, we gone roll the dice, wit cash in the pot, somebody getting rocked, somebody getting dropped | 1.  I smoke I drink, I'm supposed to stop but I cant, I'm a dog, I love hoes, and I'm addicted to money cars and clothes |
| | 2.  I smoke by maself, drink by maself, fuck these hoes by ma gotdamn self |

*See* Amend. Compl. ¶ 93.  Here, the only two words in common are "smoke" and "drink," which do not even appear in the same phraseology.  Plaintiffs obviously cannot claim to hold a monopoly on the words "smoke" and "drink" or on their use in the same sentence.  Moreover, the conceptual  themes of the songs are not remotely related.  Plaintiffs' is about a group of people planning to party and cause trouble.  Of the two allegedly infringing songs, one is about a person bemoaning his various addictions to smoking, drinking, women, cars and clothes; the other is about someone smoking, drinking and doing other things not portrayed in plaintiffs' song *by himself.*

| **Plaintiffs' Lyrics** | **Allegedly Infringing Lyrics** |
|---|---|
| If I gotta shoot I shoot ta kill, gotta keep it real, send them threats, gonna get wet, me and ma homeys packin steel, If I gotta shoot I shoot ta kill, glock is concealed, loose lips sink ships, leavin em slumped behind the wheel, If I gotta shoot ta kill, up on the hill, thugs die, mamas cry, people always tryin to steal, If I goot shoot I shoot ta kill, dey wont I will, keep a clip, neva slip, gotta make sure they pay them bills | 1.  If I can't shoot you, Ima hafta kill you by spittin, ballin motha fuckas, my ruckas aint written, when my bullets miss, ma words keep hittin, if you like pain, then that's what your getting<br><br>2.  Gold grills, coupe devilles, sittin on 20 20's, the dirty dirty baby, show em how the south do, we pop pills, shoot to kill, you know what we bout, and on behalf of g-unit, welcome to the south |

*See* Amend. Compl. ¶ 94.  Here, the only commonality is the word "shoot" in one song and the phrase "shoot to kill" — an extremely common phrase in the English language — in the other. And again, the conceptual themes of the songs are not remotely similar.  Plaintiffs' song is about someone who shoots and kills and how he does it.  Of the two allegedly infringing songs, one is about someone *not shooting¸* but "killing" with words; the other lists a number of the speakers' various traits only one of which is that they shoot to kill.

| **Plaintiffs' Lyrics** | **Allegedly Infringing Lyrics** |
|---|---|
| Im so high, higher than the clouds in the sky, so high I could kiss the clouds in the sky | Ohh this feels so crazy, how this love is blazing, baby we are so high, walkin on cloud nine, you got me up so high, so high, my shoes are scraping the sky, so high, you got me so high, my shoes are scraping the Sky |

*See* Amend. Compl. ¶ 98.  Here, the only similarities are the phrases "so high," "cloud/clouds" and "the sky."  Both songs simply use the extremely common metaphor of comparing a mental or emotional high to being physically high in the sky.  The allegedly infringing song is about being high on love and being on "cloud nine."  Plaintiffs' song, by contrast is about being higher

-16-

than the clouds and kissing the clouds.  It is not clear whether the speaker in plaintiffs' song is high on love or something else.

| **Plaintiffs' Lyrics** | **Allegedly Infringing Lyrics** |
|---|---|
| We wish dem muthafuggas would, try ta come on this block, cause we them real thugs thas hard to stop, we wish dem motha fuggas would, try to come to the table runnin a stable, just because they think they strong and they able, we wish them mothafuggas would. | I shoot arm leg, leg, arm head, the heater burner bruiser on my hip this year, I shoot, arm leg, leg, arm head, I wish a motha fugga would trip this year |

*See* Amend. Compl. ¶ 100.  Here, the only conceivable similarity is the relationship between the repeated phrase "we wish dem motha fuggas would try . . . " and the phrase "I wish a motha fugga would trip this year" used once.  Plaintiffs' lyrics are about protecting the speakers' turf and do not mention shooting anybody.  The allegedly infringing lyrics are about shooting someone's arms, legs and head.  The two are not remotely similar.

| **Plaintiffs' Lyrics** | **Allegedly Infringing Lyrics** |
|---|---|
| Everybodys talkin bout us, they see its me you trust, and guys be tryin ta get with you but they cant do a thing for you, Everybodys talkin bout us, they say its only lust, but I am yours and you are mine, this love will last our whole lifetime | The more they talk about our love, the more they make it obvious, the more they seem so envious, how can they talk about us, when they don't know one thing about, they're just running their mouf, so all we do is tune them out |

*See* Amend. Compl. ¶ 92.  Here, the only similarity is between "Everybodys talkin bout us" and "they talk about us" — phrases so short and generic that, even if they were identical, they could not constitute infringement because the YoWorld phrase is not protectible under the copyright laws.  Moreover, although both songs appear to be about lovers resolving to ignore the fact that

others are gossiping about them, this is a common theme in all artistic media, as in life itself, and clearly is not original to YoWorld.

As the above examples conclusively demonstrate, no rational finder of fact could conclude that the allegedly infringing songs set forth in the amended complaint, ¶¶ 92-101 at pp. 29-34, are substantially similar to any copyrightable elements of the YoWorld songs.

In the amended complaint, moreover, plaintiffs assert eight additional songs, not included in the initial complaint, that also allegedly were infringed. *See* Amend. Compl. ¶ 64; Exh. T at 1. After defendants showed in their initial motion to dismiss that plaintiffs' juxtaposition of the YoWorld lyrics and the allegedly infringing lyrics proved only their *dissimilarity*, plaintiffs opted not to identify the allegedly infringed lyrics in the eight new YoWorld songs. At the same time, plaintiffs entirely fail to allege *anything* — the lyrics, titles, artists, labels — to identify in any way the songs that allegedly infringe YoWorld's works. As such, plaintiffs have failed to state a critical element of their copyright infringement claim with respect to these songs. *See generally Newborn*, 391 F. Supp. 2d at 186 (requiring that copyright plaintiff allege "by what acts [and] during what time the defendant infringed the copyright") (quotation marks omitted).

Accordingly, the amended complaint fails to state a cause of action for copyright infringement. Counts I and II must therefore be dismissed with prejudice. In turn, because plaintiffs have failed adequately to allege that the defendants infringed the YoWorld works, the entire amended complaint should be dismissed because the only wrong consistently alleged (though dressed up in the clothes of ten additional causes of action) is that the defendants infringed, stole or otherwise misappropriated YoWorld's lyrics. In an excess of caution, however, defendants will address the remaining counts, each of which should be dismissed with prejudice regardless of whether Counts I and II are dismissed as they clearly should be.

### III.    COUNT III, ALLEGING A VIOLATION OF THE LANHAM ACT, MUST BE DISMISSED.

In Count III, plaintiffs claim that the Record Companies' alleged use of his "titles and accompanying original expressions," Amend. Compl. ¶ 133, to create derivative works is actionable under section 43(a) of the Lanham Act, 15 U.S.C. § 1125, in that they will "deceive the general public as to the origin, sponsorship and or approval of defendants['] activities by the plaintiff," Amend. Compl. ¶ 136. This claim fails to state a cause of action and must be dismissed.

By its terms, the Lanham Act prohibits the use of "false designations of origin" that are likely to confuse the public as to origin, sponsorship, approval or the association of another. 15 U.S.C. § 1125(a)(1). In 2003, the United States Supreme Court held unambiguously that the Lanham Act's proscription against false designations of origin does not apply to claims of false authorship. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-37 (2003). It applies only to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept or communication embodied in those goods." *Id*. at 37. Thus, the Court found no false designation of origin because the defendant had properly identified itself as the manufacturer of the physical video tapes alleged to be infringing, even if it had not accurately credited the plaintiff as the source of its creative content. *Id.*; *see also Zyla v. Wadsworth*, 360 F.3d 243, 251-52 (1st Cir. 2004) (discussing *Dastar*). Here, there is no allegation that the Record Companies did not manufacture the tangible CDs that bear their labels. Rather, plaintiffs contend only that the Record Companies have claimed YoWorld's allegedly creative expressions as their own. Since *Dastar*, however, it has been clear that "[t]he failure to credit the true author of a copyrighted work is not a false designation of origin, but a violation of copyright." *Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259, 263 (S.D.N.Y. 2005) (discussing *Dastar*).

Accordingly, plaintiffs have failed to state a claim to protect his allegedly creative expression under the Lanham Act.

To the extent that plaintiffs are claiming trademark protection under the Lanham Act solely for the literal titles of their works, the allegations likewise fail to state a claim. Song titles typically are not subject to trademark protection under the Lanham Act except in the rare instances where the copied title is so unique and ubiquitous that it has acquired "secondary meaning," that is, that it is so widely associated with the individual plaintiff that its use by the defendant is likely to cause the public to mistakenly assume association with the plaintiff. *See Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989). Here, plaintiffs have not pled any facts which remotely suggest that the YoWorld song titles are so widely known that even exact copies of them would cause the public to associate the copy with YoWorld or Mr. Prunte. They claim only that the songs have been publicly performed, *see* Amend. Compl. ¶ 89, and that members of their "street teams" have sold limited numbers of CDs of their songs on the streets of various east coast cities, Amend. Compl. ¶ 73. Such facts do not even begin to support an allegation of secondary meaning that would give rise to trademark protection. *See, e.g., Rogers*, 875 F.2d at 1000-01 (defendant's title "Ginger and Fred" was not likely to cause misperception that work was sponsored or approved by Ginger Rogers). More importantly, even if secondary meaning is assumed for purposes of this motion — which it cannot be on the facts pled — the majority of the titles of plaintiffs' songs and the allegedly infringing songs share ***not a single word in common***. *See* Amend. Compl. ¶¶ 92-101. The remainder, moreover, share only random words or phrases that are so common, such as "smoke" and "drink", "slow," "so high" or "get/got it poppin'," that their isolated use could not conceivably cause widespread association with

plaintiffs.  The suggestion that the titles of works by world famous recording artists would cause

the public to associate the works with YoWorld or Mr. Prunte is absurd.

## IV.    COUNT IV, ALLEGING CIVIL RICO, FAILS AS A MATTER OF LAW.

Plaintiffs' civil RICO claim is so wholly unsupported by the factual allegations that it

should be dismissed out of hand.  To survive a motion to dismiss, a RICO claim must allege facts

showing: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering."  *Sedima,*

*S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).  Even under the most liberal

pleading standards, plaintiffs cannot establish the requisite elements of a civil RICO claim.

To assert a claim under Section 1962(c), a plaintiff must allege "two distinct entities:  (1)

a 'person,' and (2) an 'enterprise' that is not simply the same 'person' referred to under a

different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2004).  Mr.

Prunte alleges that all defendants in this case are involved in an "association-in-fact" enterprise.

Amend. Compl. ¶¶ 148, 151, 161.  In order to allege an association-in-fact enterprise, a plaintiff

must allege "a group of persons associated together for a common purpose of engaging in a

course of conduct," and facts regarding the "hierarchy, organization, and activities" of the

alleged enterprise.  *United States v. Coonan*, 938 F.2d 1553, 1560-62 (2d Cir. 1991).

Even under liberal pleading standards, plaintiffs have not begun to allege the existence of

a RICO enterprise.  First, it is well established that a corporation cannot be a RICO defendant

alleged, along with others, to have infiltrated itself.  *See, e.g., Yellow Bus Lines v. Drivers,*

*Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 139-40 (D.C. Cir. 1990).  Here, plaintiffs

allege that Universal and Atlantic both are RICO defendants engaged in criminal activity *and* are

the very legitimate business alleged to have been infiltrated.  *See* Amend. Compl. ¶¶ 146, 160.

The RICO claim, therefore, must be dismissed at least against defendants Universal and Atlantic.

Although Mr. Prunte attempts to plead around this fundamental rule, *see* Amend. Compl. ¶¶ 151-

153, the amended complaint clearly names the Record Companies as RICO defendants who have demonstrated "criminality," *see* Amend. Compl. ¶ 146, and simultaneously alleges that these defendants were "infiltrated" by the RICO defendants.  Under *Yellow Bus*, the amended complaint's assertions fail as a matter of law.

Moreover, while the amended complaint baldly asserts that "[a]ll the named defendants . . . conducted, and/or participated directly and indirectly in the conduct of the enterprise's affairs," Amend. Compl. ¶ 193, it does not allege facts that indicate the existence of an organization or describe its hierarchy.  Rather, the amended complaint's explanation of the organization of the alleged enterprise is vague and hopelessly convoluted.  It alleges that, from Inside Sessions, "songs enter a huge network of decision makers in need of original materials."  Amend. Compl. ¶ 155.  Plaintiffs never explain the organization or links of this alleged network, but merely assert in a conclusory manner that "[l]iability extends to upper management as well as lower level management and so-called 'artist' employees and their handlers, which act solely at the directions of upper management, as well as those persons otherwise associated with this enterprise who exert control over it, and participate in the operation and management of the enterprise's overall purposes."  Amend. Compl. ¶ 159.

Allegations like this say nothing more than "there is a giant conspiracy against me and everyone who is against me is in on the conspiracy."  But "[c]onclusory naming of a string of entities does not adequately allege an enterprise."  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004) (quotation marks omitted).  The amended complaint's "failure to plead facts identifying the common purpose and organizational and decisionmaking structure of the alleged enterprise is fatal to [plaintiffs'] claim."  *Dodd v. Infinity Travel*, 90 F. Supp. 2d 115, 117 (D.D.C. 2000); *United States v. White*, 116 F.3d 903, 924 (D.C. Cir. 1997).

Indeed, other than "providing support" for Inside Sessions and various artists, the Record Companies' alleged role, let alone their alleged "criminality," Amend. Compl. ¶ 146, is wholly unidentified.  In other words, except for the most conclusory allegations of Inside Sessions making YoWorld's works available to the entire industry (they already were available anyway, as anyone could have bought them on the street), plaintiffs do not even attempt to describe how the alleged enterprise is organized and run other than simply how Universal and Atlantic actually run their legitimate businesses.   Because plaintiffs have failed even to begin to allege facts constituting a criminal enterprise, their RICO count must be dismissed.

Finally, and separately, in order to assert a civil RICO claim, a plaintiff also must allege "racketeering activity," in the form of at least two predicate offenses in a ten-year period that are indictable under a list of federal criminal statutes enumerated in 18 U.S.C. § 1961(1)(B).  *See, e.g., Western Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001); 18 U.S.C. § 1961(5).  Plaintiffs do not properly allege any predicate acts of racketeering.  *See United States v. Turkette*, 452 U.S. 576, 583 (1981) (to prove that associates function as a "continuing unit," a plaintiff must show "evidence of the requisite number of acts of racketeering committed by the participants in the enterprise").

In the amended complaint, plaintiffs allege predicate acts sounding in mail fraud and the various criminal statutes that he asserts in Counts V-XI.  The mail fraud allegations can be quickly disposed of here.  The remainder are dealt with seriatim in Section V below.  The amended complaint makes a conclusory allegation that Universal's legitimate correspondence with YoWorld constitutes mail fraud under 18 U.S.C. § 1341.  Specifically, the amended complaint alleges two incidents of mail fraud:  (1) a December 2, 2002, letter from Geoff Siegel to Karen Pate of YoWorld offering suggestions on some of YoWorld's songs, Ex. B; and (2) a

February 11, 2002 letter from Brian Wittmer to Karen Pate of YoWorld, Ex. C.  *See* Amend. Compl. ¶ 171 (citing Exhs. B and C as "the two statutory predicate acts of mail fraud").  But the amended complaint fails to allege how these letters constitute fraud.  Namely, plaintiffs do *not* allege that the author of either letter was involved in the alleged fraud.  *See* Amend. Compl. ¶ 146 (specifically naming defendants involved in unlawful enterprise).  Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Civil RICO claimants must meet this heightened pleading standard.  *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc*., 941 F.2d 1220, 1229 (D.C. Cir. 1991).  Because plaintiffs have not pleaded mail fraud with the requisite particularity, the mail fraud claims cannot serve as the basis for predicate acts under RICO.

As we show, plaintiffs likewise fail to plead the elements of any of the remaining criminal statutes analyzed below.  Accordingly, Count IV of the amended complaint must be dismissed.

**V.    COUNTS V-XI MUST BE DISMISSED BECAUSE ALL BUT ONE IS PREMISED ON A CRIMINAL STATUTE WITH NO PRIVATE RIGHT OF ACTION, AND NONE STATES A CLAIM ON WHICH RELIEF CAN BE GRANTED.**

With the exception of Count VIII, Counts V-XI all are based on federal criminal statutes that do not afford plaintiffs a private right of action.  Moreover, plaintiffs have wholly failed to allege facts necessary to establish the elements of any of the offenses on which Counts V-XI are based.  Accordingly, Counts V-XI must be dismissed with prejudice.

In evaluating whether a federal statute contains a private right of action, either express or implied, the "focus must be on the intent of Congress."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 377 (1982) (internal quotation marks omitted).  In the context of federal criminal statutes that do not expressly provide for private rights of action, courts have

been extremely reluctant to imply a private right of action absent some textual indication of

Congress's intent to do so. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316-17 (1979) (noting

rarity of recognizing implied right of action in criminal statute); *Cort v. Ash*, 422 U.S. 66, 80

(1975) (cautioning against finding implied right of action in "bare criminal statute"); *McDonnell*

*Douglas Corp. v. Widnall*, 57 F.3d 1162, 1164 (D.C. Cir. 1995) (refusing to find private right of

action in criminal statute); *Bhagwanani v. Howard Univ.*, 355 F. Supp. 2d 294, 301 n.5 (D.D.C.

2005) (recognizing that courts should be "especially reluctant" to find implied private right of

action in criminal statute) (citing *Cort v. Ash*, 422 U.S. at 80).  This is true even where, as here,

the plaintiff asserting a private right of action is *pro se*.  *See, e.g., Rockefeller v. U.S. Court of*

*Appeals for the Tenth Circuit*, 248 F. Supp. 2d 17, 22-23 (D.D.C. 2003) (dismissing claims

asserted under federal criminal statutes for failure to state a claim under Fed. R. Civ. P.

12(b)(6)).

    As shown below, only one of the federal criminal statutes on which plaintiffs rely

contains an express private right of action.  The remainder contain no indication whatsoever that

Congress intended the statute to be enforced by private litigants, and courts addressing the

question have ruled that there is no implied private right of action under any of them.  In

addition, for each statute, plaintiffs have wholly failed to allege the essential elements of the

offense.  Accordingly, all must be dismissed with prejudice.

### A.    Count V: Alleged Bank Fraud Under 18 U.S.C. § 1344(2)[10]

    The bank fraud statute on which plaintiffs rely does not contain an express right of action,

*see* 18 U.S.C. § 1344, *et seq.*, nor can one be implied, *see, e.g., Milgrom v. Burstein*, 374 F.

Supp. 2d 523, 528-29 (E.D. Ky. 2005) (finding no implied private right of action under 18

U.S.C. § 1344).  Moreover, on its face, 18 U.S.C. § 1344 expressly applies only to frauds

---

[10] The allegations in Count V all appear to be against defendants other than Atlantic.

perpetrated on "financial institutions" or fraudulent schemes to obtain funds or assets under the custody or control of a financial institution. 18 U.S.C. § 1344. This is a case of copyright infringement. Plaintiffs have pled no facts — nor could they — remotely suggesting that the defendants perpetrated any fraud on any financial institution. That the money YoWorld used to buy its copy of the "Inside Sessions" CD — which it received — had at some point been deposited in a bank, Amend. Compl. ¶ 234, simply does not count. *See, e.g., United States v. Thomas*, 315 F.3d 190, 198 (3d Cir. 2002) ("the requisite criminal intent to victimize *a bank*...is apparent" from the statute and its legislative history) (internal quotation marks omitted) (emphasis added).

**B.     Count VI: Alleged Extortion Under 18 U.S.C. § 1951[11]**

Likewise, the federal criminal extortion statute, 18 U.S.C. § 1951, does not provide for a private right of action, either express or implied. *See, e.g., John's Insulation Inc. v. Siska Construction Co.*, 774 F. Supp. 156, 163 (S.D.N.Y. 1991) (dismissing plaintiff's claim under 18 U.S.C. § 1951 and refusing to find implied private cause of action). Moreover, on its face, Section 1951 requires a showing that the defendant obtained the property of another "by means of actual or threatened force, or violence, or fear of injury." 18 U.S.C. § 1951. Plaintiffs allege no facts suggesting that any defendant in any way threatened them with force, violence or fear of injury. To the contrary, the exhibits attached to the complaint show that the Record Companies were nothing but civil in their communications with YoWorld. *See* Amend. Compl. Exhs. B, C, L. Plaintiffs' references to the Record Companies' superior bargaining power and Mr. Prunte's own anxiety over obtaining a recording contract do not constitute extortion. *See generally Toms v. Pizzo*, 4 F. Supp. 2d 178, 184 (W.D.N.Y. 1998) (existence of economic leverage in ordinary

---

[11] The allegations in Count VI all appear to be against defendants other than Atlantic.

commercial transaction "does not constitute extortion"), *aff'd*, 172 F.3d 38 (2d Cir. 1998) (unpublished table decision).

### C.     Count VII:  Alleged Criminal Copyright Infringement Under 17 U.S.C. § 506(a) and 18 U.S.C. § 2319

As fully discussed in Part II, *supra*, plaintiffs have entirely failed to state a claim for civil copyright infringement.  Absent infringement, there can be no criminal copyright infringement. See 17 U.S.C. § 506(a).  Nor do the criminal copyright infringement statutes provide for a private cause of action beyond the ordinary civil infringement action contained in 17 U.S.C. § 501, on which plaintiffs rely in Counts I and II of the amended complaint.  *See, e.g., Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc*., 785 F.2d 897, 912 (11th Cir. 1986) (affirming the District Court's final judgment that "section 506 is a criminal statute and hence does not permit a private cause of action"); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 39 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994).

### D.     Count VIII:  Trafficking in Counterfeit Labels Under 18 U.S.C. § 2318

Unlike the others, Section 2318 does provide for an express private right of action.  *See* 18 U.S.C. § 2318(a), (f).  Here again, however, plaintiffs have wholly failed to allege the most critical elements of the claim.  Section 2318 prohibits trafficking in "a counterfeit label or illicit label affixed to, enclosing, or accompanying, or designed to be affixed to, enclose, or accompany . . . a phonorecord."  18 U.S.C. § 2318(a)(1)(A).  It also renders unlawful "counterfeit documentation or packaging."  *Id.* § 2318(a)(2).  This statutory provision, designed to redress wholesale counterfeiting of albums *and* their accompanying packaging, is utterly irrelevant to this case.

The statute defines the term "counterfeit label" as "an identifying label or container that appears to be genuine, but is not."  18 U.S.C. § 2318(b)(1).  An "illicit label" by contrast, is a

genuine label, copyright certificate or registration used in connection with a phonorecord for

which it was not intended. 18 U.S.C. § 2318(b)(4). In the context of musical recordings, courts

have construed this definition to refer to products that "are represented to be genuine articles of

particular record companies when, in truth, they are not. The process includes reproducing the

tape itself and also the recognized label of another record company." *United States v. Shultz*,

482 F.2d 1179, 1180 (6th Cir. 1973); *see also United States v. Sow*, No. 02CR610, 2003 WL

1597085 (S.D.N.Y. Mar. 27, 2003) (affirming that, under 18 U.S.C. § 2318, the CD label itself

must be counterfeit) (attached hereto as Exhibit 3). The amended complaint never alleges — nor

could it — that the Record Companies ever affixed or planned to affix a counterfeit or illicit

label to any of their products. In other words, there is no allegation that any of the Record

Companies' CDs are not properly labeled as their own products or that they contain counterfeit

labels or other documents purporting to be plaintiffs'. Plaintiffs' claim that the underlying works

infringe his creative expressions — which they do not — sounds in copyright infringement, not

trafficking in counterfeit labels.

### E.    Count IX:  Interstate Transportation of Stolen Property Under 18 U.S.C. § 2314

18 U.S.C. § 2314 is a bare criminal statute that does not provide for an express private

right of action; nor did Congress intend to provide an implied private right of action. *See, e.g.,*

*Cooper v. North Jersey Trust Co. of Ridgewood*, 250 F. Supp. 237, 243 (S.D.N.Y. 1965)

(dismissing plaintiff's counts under 18 U.S.C. § 2314, noting the statute "does not give rise to a

private federal right of action"). Moreover, the United States Supreme Court has held that

Section 2314 applies only to "physical goods, wares or merchandise that have themselves been

stolen, converted or taken by fraud." *Dowling v. United States*, 473 U.S. 207, 216 (1985)

(internal quotation marks omitted). The Court expressly held that the statute does not apply to

allegedly stolen intellectual property, which is distinct in character and in the limited rights it affords its owners, and is the sole domain of the carefully crafted copyright laws.  *Id.* at 216-28.

F.     **Count X:  Alleged Violation of the Travel Act Under 18 U.S.C. § 1952**[12]

The Travel Act, 18 U.S.C. § 1952, is a bare criminal statute that does not provide for a private right of action, express or implied.  *See, e.g., Bajorat v. Columbia-Breckenridge Development Corp.*, 944 F. Supp. 1371, 1378 (N.D. Ill. 1996) (dismissing plaintiff's claim under 18 U.S.C. § 1952 because the statute "do[es] not carry an implied private right of action").   Nor has Mr. Prunte remotely alleged the elements of the offense.  As the Supreme Court has explained, "[t]he Travel Act was one of several bills enacted into law by the 87th Congress as part of the Attorney General's 1961 legislative program directed against 'organized crime.'" *Perrin v. United States*, 444 U.S. 37, 41 (1979).  By its own terms, the Travel Act applies only to certain specifically enumerated forms of "unlawful activity" involving, *inter alia*, gambling or liquor, narcotics, bribery, extortion, and arson.  18 U.S.C. § 1952(a)-(b).  Copyright infringement is not an enumerated unlawful activity; nor is it remotely analogous to those listed.  The Travel Act simply does not apply here.

G.     **Count XI:  Theft of Trade Secrets Under the Electronic Espionage Act, 18 U.S.C. § 1832**[13]

The federal Electronic Espionage Act, 18 U.S.C. § 1832, is a criminal statute that creates neither an express nor an implied private right of action.  *See, e.g., Boyd v. Univ. of Ill.*, No. 96 Civ. 9327, 1999 WL 782492, at *4 (S.D.N.Y. Sept. 30, 1999) (dismissing plaintiff's claim under the Economic Espionage Act, because "[t]his Act is a criminal statute that affords no standing to any private citizen") (attached hereto as Exhibit 4); *see also* 18 U.S.C. § 1836(a) (expressly assigning civil enforcement to actions brought by the Attorney General).  Nor have plaintiffs

---

[12] The allegations in Count X all appear to be against defendants other than Atlantic.
[13] The allegations in Count XI all appear to be against defendants other than Atlantic.

alleged in the amended complaint the core element of the offense — the existence and theft of a

trade secret.  *See* 18 U.S.C. § 1832(a).  The touchstone of any claim, state or federal, for theft or

misappropriation of a trade secret is that the information allegedly stolen must have been kept, or

intended to have been kept, *secret.  See, e.g., Stromback v. New Line Cinema*, 384 F.3d 283, 305

(6th Cir. 2004) ("the essence of a trade secret is that it derives its value from secrecy").  Here, by

contrast, plaintiffs were seeking broad dissemination of their works.  They claim to have

provided the allegedly infringed lyrics to the Copyright Office, to have allowed them to be

performed publicly by various artists, to have distributed them to the public on CDs, and, most

importantly, to have voluntarily, repeatedly and eagerly sent the lyrics to Inside Sessions

personnel for their review.  Any claim for theft or misappropriation of trade secrets on these facts

is sorely misplaced.

## VI.  COUNT XII OF THE AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND "RESPONDEAT SUPERIOR" FAILS TO STATE A CLAIM AND MUST BE DISMISSED.

The amended complaint's final claim is that Inside Sessions and Universal owed a

fiduciary duty to YoWorld because Inside Sessions "held itself out to possess superior

knowledge and skill in terms of song writing, providing advice and consultations for any authors

who paid the $200 fee."  Amend. Compl. ¶ 304.  The amended complaint thus alleges that a

"confidential and fiduciary relationship" arose "between the defendants and plaintiff," and

defendants breached this duty.  Amend. Compl. ¶ 307.

This claim lacks any merit.  First, because the allegations in Count XII like others, seem

to be directed solely at Inside Sessions, this Count does not appear to be brought against

defendant Atlantic.

Second, Exhibit D to plaintiffs' complaint shows that what YoWorld purchased for $200

was first and foremost a product — the Inside Sessions interactive CD-ROM that contained at-

home educational tutorials about the music industry — not a relationship.  Compl. Exh. D.  In any event, it was YoWorld — not Mr. Prunte individually — that is alleged to have had the relationship with Inside Sessions.  *See* Compl. Exhs. B, C, O, Q.  Such arms-length transactions between two corporate entities cannot give rise to a fiduciary duty.  In fact, in an analogous context, a court recently sanctioned an attorney under Rule 11 for arguing that an ordinary arms length relationship (even one with vastly unequal bargaining power) gave rise to a fiduciary duty.  *See Davis v. MCI Commcn's Servs., Inc.*, 421 F. Supp. 2d 1178, 1187-88 (E.D. Mo. 2006).

The amended complaint cites California law for the proposition that a fiduciary relationship "need not be of a legal nature, it may be moral, social, domestic, or merely personal."  Amend. Compl. ¶ 305.  To the extent that California law applies at all, YoWorld's alleged "relationship" with Inside Sessions — arising from the fact that YoWorld purchased a product and subscribed to a service that critiqued six of YoWorld's songs — clearly fails to qualify as a fiduciary relationship.  There are no moral, social, domestic or personal fiduciary relationships between arm's length corporations or their principals.  Rather the general rule is that a fiduciary relationship "is a recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client."  *Persson v. Smart Inventions, Inc.*, 23 Cal. Rptr. 3d 335, 350 (Cal. Ct. App. 2005) (quotation marks omitted).

California also recognizes a so-called "confidential relationship" that may give rise to fiduciary duties.  *Id.*  To create a fiduciary duty in this way, a confidential relationship must exist in which one party must repose trust in the other, and the other party must "accep[t] the relationship," which "must exist over a period of time."  *Id.*  The amended complaint does not allege — nor could it — that Inside Sessions (much less defendant Universal) "accepted" any

"relationship" with plaintiffs Mr. Prunte or YoWorld other than an ordinary customer relationship.

California courts have rejected claims that commercial relationships between businesses or natural persons — even those with longstanding personal ties — constitute protected "confidential" relationships. *See, e.g., id.* at 351 (rejecting claim that fraudulent concealment by one business partner from another was also a breach of confidential fiduciary duty, because "[i]f that were sufficient to create a fiduciary obligation . . ., virtually every purchase and sale transaction would give rise to fiduciary duties"); *Wolf v. Superior Court*, 130 Cal. Rptr. 2d 860, 864 (Cal. Ct. App. 2003) (rejecting the allegation that a plaintiff's trust in a contractual relationship with defendant created a confidential relationship on the ground that "[e]very contract requires one party to repose an element of trust and confidence in the other to perform").

In this case, plaintiffs have not alleged facts that would be sufficient to support even a claim for breach of contract, let alone breach of fiduciary duty. The amended complaint's claim of breach of fiduciary duty should be dismissed.[14]

---

[14] To the extent that Count XII also invokes *respondeat superior* liability, that doctrine does not constitute a freestanding cause of action. Rather, in limited circumstances, it can serve to extend liability to persons or entities whose own conduct did not directly cause the plaintiff's harm. *See generally Lober v. Moore*, 417 F.2d 714, 717-18 (D.C. Cir. 1969) (recognizing that *respondeat superior* claim is "derivative or secondary" and cannot lie where servant or agent is found not liable). Here, because none of plaintiffs' claims survives to impose liability on any defendant, their invocation of the doctrine of *respondeat superior* is without effect.

## CONCLUSION

For all the foregoing reasons, the amended complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

Dated: May 19, 2006

_/s/  Michael B. DeSanctis_
Steven B. Fabrizio (Bar No. 436482)
Michael B. DeSanctis (Bar No. 460961)
Elizabeth G. Porter  (Bar No. 484335)
JENNER & BLOCK LLP
601 Thirteenth Street, N.W
Suite 1200 South
Washington, D.C. 20005
Tel.: (202) 639-6000
Fax:  (202) 639-6066