**Robert R. Prunté, (pro sé)**
1702 Linden Avenue
Baltimore, Maryland 21217

**RECEIVED**

JUL – **5** 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ROBERT R. PRUNTÉ**<br><br>**Plaintiff,**<br><br>**Vs.**<br><br>**UNIVERSAL MUSIC GROUP RECORDINGS, et al**<br><br>**Defendant (s)** | **CASE NUMBER:  1:06-CV-0048**<br><br>**JUDGE:  (Paul L. Friedman) (PLF)** |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT, AND MOTION TO STRIKE AS WELL AS MEMORANDUM OF LAW AND AFFIDAVIT IN SUPPORT OF PLAINTIFF'S PREVIOUS MOTION FOR PARTIAL SUMMARY JUDGMENT (OMNIBUS MOTION)

Comes now the plaintiff with its opposition to defendant's Motion to Dismiss under **Fed. R. Civ. P. Rule 12(b)(6)** as well as an omnibus-type interpolated Motion to Strike under **Fed. R. Civ. P. Rule 12(f)** and previous Motion for Partial Summary Judgment, since, though eloquent and convincing to a "lay observer", counsel's argument concerning the

Amended Complaint, Copyright Law and the facts of this case, misses the mark by a country mile. The propositions of counsel could actually be construed to be intentionally violative of **F.R.C.P. Rule 11**.

However, and as an initial matter, this pro sé plaintiff would like to express to the court that it read the standards concerning non-moving parties and **Rule 12(b)(6)** motions, literally. Specifically:

> *"A plaintiff's factual allegations must be presumed true and should be liberally construed in his/her favor."* **(See: Leatherman v. Tarrant City Narcotics and Coordination Unit, U.S. 163, 164 (1993); Phillips v. Bureau of Prisons 591, F.2d 966, (D.C. Circuit). Shuer v. Rhodes, 416, U.S. 232, 236 (1974) & Sparrow v. United Van Lines, Inc. F.3d 1111, 1113, D.C. Cir. 2000).**

Thus, plaintiff, as the "non-moving party" had no idea it was arguably "trying the courts patience" by literally, *"not moving"* timely to the Motion to dismiss, assuming all the amended complaints factual allegations would be taken as true, as a matter of law.

Instead, plaintiff filed a *Motion for Partial Summary Judgment* and a *Motion to Strike.*

No disrespect or gamesmanship on the part of the plaintiff was intended. Please allow plaintiffs earnest apologies for any inconvenience plaintiff's inadvertence and rudimentary knowledge of the Law may have caused the court or the defendants. Before embarking upon the opposition to the Motion to Dismiss, plaintiff feels it interesting to note that although the defendants stated that "*Sturdza v. United Arab Emirates*" is the case "upon which they "chiefly rely"…The Sturdza Court strongly frowned upon summary adjudication of copyright cases. Yet, counsel "chiefly" applied a

dispositive/summary judgment type motion while claiming (howbeit disingenuously); that it relies "chiefly" upon *Sturdza*. Counsel's entire legal basis and position papers are pure contradiction wrapped within controversy and cloaked in deceit and blatant madness.

To these deceptive efforts of counsel, it is slowly becoming more and more evident: *"Deceptis non decipientibus, jura subveniunt…or…the law helps persons who are deceived, not those deceiving"…*

This being said, plaintiff will now address the blatantly dilatory and frivolous Motion to Dismiss, which lacks sufficient legal basis to overcome the plain, short and simple factual allegations already occupying the Amended Complaint.

First of all, counsel is hilarious in claiming the 90 plus page Amended Complaint seeks to allege a *"simple" (albeit unfounded) claim of copyright infringement,"* **(See Mot. To Diss. Pg. 1)**.

Counsel's opening statement is wrong and deceptive from the outset, since this is indeed a complex copyright case involving the mystical, magical independent creation by plaintiff, of the (10) ten original songs at issue in the operative Amended Complaint, with plaintiff planning to seek leave to add (8) eight more the defendants allegedly stole.

Indeed, this is the most complex of copyright cases, involving music and words. If this were not so, then hardly would the likes of Mr. Desantis and crew be so bent on keeping

plaintiff's previous works "by hook or crook", and the profits and damages in question would not reach into the billions, literally.

This plaintiff vehemently disagrees with these recalcitrant and allegedly mega-thieves. Plaintiff appears to be like a lone pariah representing myriad authors against these giants of the present and future, who will not be preyed upon so quickly and high-handedly by such corporate ruffians.

## PLAINTIFF ROBERT R. PRUNTÉ IS PROPERLY BEFORE THIS COURT

In one breath, counsel claims the plaintiffs are not properly before this court, **(See Mot. Diss at 1 & at 5)**, and then, in another breath says, "but Mr. Prunté may proceed pro se before the court"...What real relief does counsel seek or speak of?  Releasing YoWorld, as a plaintiff is as artificial a statement as the one claiming YoWorld is a corporation. Neither is based on reality.  Yoworld is merely the name of a company, plain and simple.

This sinister argument about YoWorld being a corporation when it was never alleged to be one is laughable.  Now counsel wants to make plaintiffs claims in its place by spewing semantics from the mouths of this nobly disjointed legal team.  Even that speculative relief will not provide solace for the alleged crimes of these defendants.

Counsel's argument here is confusing.  At no time has YoWorld, or Rowdy City Records been alleged to be corporations, artificial or otherwise), in any part of the complaint.

Counsel's argument is purely rhetorical, since:

4

> *A corporation is a fictitious legal entity/person which has rights and duties independent of the rights and duties of real persons, and which is legally authorized to act in its own name through duly appointed agents. It is owned by shareholders and usually created under the authority of state law.*

In this case, only counsel alleges YoWorld is a corporation, and no state law action, or shareholders exist or duly appointed agents or other operation of law has occurred, ever. Counsel's argument sounds similar to one of its client's fantastical movie plots.

Accordingly, in the case of *Dartmouth College v. Woodward, 4 Wheat Rep. 626*, Chief Justice Marshall describes a corporation to be *"an artificial being, invisible, intangible and existing <u>only</u> in contemplation of law. Being the mere creature of law, continues the judge, it possesses only those properties, which the <u>charter</u> of its creation confers upon it, either <u>expressly</u> or as <u>incidental</u> to its very existence…*

YoWorld and Rowdy City Records are mere named entities that co-relate to plaintiff's company name recognition in the crowded music marketplace. The correct designation of YoWorld and Rowdy City, as extensions and alter egos of Mr. Prunté, would best be described as a "strategic alliance" between Mr. Prunté and his common law wife of nearly 23 years, Ms. Karen Pate.

Robert R. Prunté is still, and always will be, the sole author and claimant whose proprietary works are at issue in this case, as the copyright registration reflects. *(See: Exhibit A1A, <u>line 2</u>, words, music, performance, recording and arrangement of music and <u>line 4</u>, copyright claimants, Robert R. Prunté 1702 Linden Ave., Baltimore, MD 21217).*

However, perhaps counsel is confused as are many concerning the terminology of the words "corporation" and "incorporation", which are frequently confounded. The distinction between them is obvious, one is the institution itself and the other the act by which the institution is created.

Plaintiff is neither, nor has it alleged the same. Nor does counsel's argument advance the Motion to Dismiss, since Prunté is still the sole author and claimant.

As concerns any so-called *rights assignments* of songs to "YoWorld" the company, those were mere legal protectionary measures taken by author/publisher/producer/manager Prunte' to automatically vest all product created by himself, in himself, since Mr. Prunte actually assigns songs to performers and casts them in such songs  in such a managerial capacity, that such song rights are meant to vest in himself, (the publisher) ultimately anyway, since he is the actual designer of the songs arrangements and chorus lines of the songs, as well as the performer of many of these chorus lines, and songs as well as being the publisher, producer, arranger, graphic artist, musician and song caster, just to name a few.

Counsel loosely implies it is against the law for Mr. Prunté to own and name a small business/company, and that the integrity of Mr. Prunte' concerning the official Copyright Registration must be analyzed. Counsel merely wishes to avoid the uncontroverted fact that: Mr. Prunté is, into perpetuity, the legal and beneficial owner of the copyrights at issue. Congress' explicit listing of who may sue for copyright infringement should be understood as an exclusion of others from suing for copyright infringement. Prunte, as original and present copyright owner, can vest a license in himself, or be the sole owner,

7

and even sue without a licensee's permission. **(See: Silvers v. Sony Pictures Entertainment, Inc. No. 01-56069 (9th Cir. Mar. 25, 2005)**.

Even if counsel's argument were liberally construed "Prunte" is still the creator and originator of the articles in question, and as such… Mr. Prunte'

> *"…Is the person for whom the copyright system is designed to protect and provide incentives for more creations"… Judges Berzon and Judge Bea, In Dissent, Silvers v. Sony, Supra).*

Plaintiff has already alleged and shown ownership, registration and copying of constituent elements of the works that are original, which are *especially* the chorus lines, which have been *universally* known to be "the most commercial part of any song". Therefore, and as a matter of fact and law, music chorus lines are the very "heart of the song", and highly protected by copyrights.

*(See: Salinger v. Random House, Inc. 811 F.2d 90, 98 (2d. Cir. 1986), Universal City Studios v. Kaman Industries, Inc. 217 U.S.P.Q. (BNA) 1165 (SD Tex 1982), Kitzner Industries v. H.K. James & Co., 535 F. Supp. 1249 (E.D. P.A. 1982), Brilliant v. W.B. Productions, Inc. and Nichols v. Universal Pictures corp. 45 F.2d, 119, 122 (2nd Cir. 1930) cert. Denied 282 U.S. 902, 51, St. 216, 75 L. Ed 795 (1931) & Especially; Bell v. Blaze Magazine, 58 U.S.P.Q. 2d 1464 \*S.D.N.Y. 2001).*

Hence, original and unique chorus lines of original songs are indeed copyrightable subject matter containing 100% protected literal expression.

## OVERWHELMING EVIDENCE OF DIRECT ACCESS TO PLAINTIFF'S SONG COLLECTIONS

Inside Sessions, supposedly critiques songs for a fee, nurturing plaintiff for over a year until they obtained many songs owned by plaintiff. *(See Amended Complaint, pg 8 par., pg. 26, par. (a), (b), (c))*. Thus, the defendant persons, solely for the sake of the enterprise, gained Direct Access to plaintiff's entire vault of original works in the following manners:

   a. **Inside Sessions**, for a fee, allows artists and authors to send in original songs in return for a professional critique from some high-level industry icon. **(See Exhibit A)**

   b. Plaintiff sent Inside Sessions several demo type CD's as well as a double CD set with (38) thirty-eight songs we were using to travel the country with and sell via street teams. **(See Exhibit B).**

   c. Executives at the enterprise, Rich Christina of Atlantic, Adam Fischell of Atlantic, Geoff Siegel of Universal and Brian Wittmer of Universal, as employee/defendant persons, all encouraged plaintiff to continue to send in original songs. **(See Exhibit C)**

   d. Plaintiff has given concerts where original cd's were given away and/or sold to members of certain targeted audiences, as well as street team events where major cities were exposed to plaintiff's expressions. **(See Street Team and concert: Exhibit(s) F & H).**

Counsel's argument borders on the fantastical when it claims this plaintiff's amended complaint fails to allege "by what acts and during what time" defendants infringed

plaintiffs works.  This is yet another semantically disingenuous statement made by counsel. The Amended Complaint is clear:

## By What Acts:

**Amended Complaint pg. 10, par. 5:**

*"Defendants have unlawfully made derivative works of the chorus lines of plaintiffs works…*

**Complaint, pg 10, par. 7:**

*"Thus, after creating the unlawful derivative work, defendants then designate certain or fledgling superstars to perform and or produce these coveted but stolen works…*

**Amended Complaint, pg. 24, par. 77:**

*"Plaintiff Robert R. Prunté has the exclusive rights, among other things, to reproduce make derivative works of, adapt and distribute, as well as publish the resultant creations which are proprietary to him"…*

**Amended Complaint pg. 24, par. 77:**
*"The defendants did acts of paraphrasing to create derivative works of plaintiffs original works, merely to unlawfully exploit…"*

**Amended Complaint, pg. 25, par. 83:**

*"Defendant enterprise and defendant persons, without the permission or consent of plaintiff, have re-created unlawful derivative works from plaintiff's original works, and reproduced them, adapted them, and distributed and exploited the works unlawfully...*

**During What Times:**

**Amended Complaint, pg. 20, par. 64:**

*"The alleged songs are believed to have been infringed during the years of 2004, 2005 and into 2006...*

For further acts, please see Second claim for relief, ***Amended Complaint, pgs 41, par. 122 thru 130.***

Counsel's trivial analysis of the substantial similarity test concerning experts is a poor proposition. Counsel's a summation or restatement of the state of the law concerning expert testimony in copyright cases, and especially this one, is misguided and inaccurate.

According to the Court of Appeals *in Kohus v. Marriott, 328 F.3d 848 (6th Cir. 2003),* the standard for evaluating substantial similarity in copyright cases was announced precedentially.

In that case, the trial court had previously granted the defendants motion for summary

adjudication, finding that the defendants "drawings" were not substantially similar to the

plaintiffs, and that accordingly, there was no infringement. The sixth circuit reversed,

remanding the case back to the district court.

In *Kohus*, the Sixth circuit's analysis began with an intense review of the "leading" tests

on *substantial similarity*.

According to the Sixth Circuit Court of Appeals in *Kohus*, the traditional approach had

been the "*ordinary observer*" or "*audience*" test, which required the trier of fact to gauge

the similarities of the two works solely on the basis of the "*net impression*" made upon

them and without relying on expert analysis or dissection. *(Quoting Ellis v. Diffie, 177*

*F.3d 503, 506 n. 2 6th Cir. 1999)*.

To address the obvious shortcomings of this test, some courts had added an additional

step, which permitted expert testimony, on an ad hoc basis. *(Citing Arnstein v. Porter,*

*154 F.2d 464, 468 (2d Cir. 1946) & Sid and Marty Kroft Television Props v.*

*McDonalds Corp., 562 F.2d 1157, 1163 – 64 (9th Cir. 1977).*

Thus, the two leading tests on substantial similarity came from courts on both coasts.

The Second circuit's test required a showing **(a)** that the defendant copied, from

plaintiff's copyrighted work and **(b)** that the copying… went so far as to constitute

improper appropriation… *(Quoting Arnstein, 154 F.2d at 468)*. Expert testimony was

deemed permissible in the first step, but not in the second, since substantial similarity ultimately must be judged according to the perceptions of the ordinary reasonable person.

Then, the Ninth circuit articulated a similar test in *Sid & Marty Kroft Tele. Prop. Inc., 562 F.2d at 1163 – 64.* The first step was known as the "Extrinsic" test. Experts were permitted to assist the trier of fact or jury in determining whether the defendant copied the plaintiff's work, (as opposed to merely using the ideas reflected in it). In the second half of the analysis, known as the "Intrinsic" test, the Court/Jury must determine if an ordinary reasonable person would find the works substantially similar, without expert assistance.

Thus, Counsels whimsical and naïve argument against expert testimony in this complex copyright case is like the argument for lobotomies in days gone by. Counsels careful sidestepping of the fact that experts are always used in the first prong of the substantial similarity analysis is obvious. Accordingly, in *Kohus*, and also in order to reconcile the obvious competing approaches to analysis of the substantial similarity issue with regards to experts, *Kohus* turned to the D.C. Circuit, a fact which counsel has, with a recalcitrant stance, intentionally ignored as well.

*At no place in the Motion to Dismiss* or in the Opposition to Partial Summary Judgment has Counsel even uttered this precedent setting case scenario. Thus, and in turning to the D.C. Circuit for guidance, the *Kohus* court chose ***Sturdza v. United Arab Emirates, 281 F.3d 1287, 1295, 1296 (D.C. Cir. 2002)***, because that Court had also adopted the "two prong analysis".

Counsel's casual utterance of the *Sturdza* case to support lying propositions is not being well taken. Tellingly, the chorus lines of defendants songs <u>closely matches</u> and <u>tracks the expression</u> of plaintiff's chorus lines in a manner so plain and intentional, that copying may be presumed, and any reasonable person is immediately struck by the strikingly similar "<u>overall look and feel</u>, as well as identical and near identical expressions of <u>verbatim vernacular</u> found in common with and between the literal expressions of both songs chorus line elements. **(See: Sturdza v. United Arab Emirates 281, F.3d 1287 (D.C. Cir. 2002). Hamil America Inc. v. GFI, 193 F.3d 92, 100 (2d Cir. 1999).**

**CHORUS LINE EXPRESSIONS OF ORIGINAL AND ALLEGEDLY PURLOINED SONGS CREATED BY PLAINTIFF WHICH CONTAIN 100% COPYRIGHT PROTECTION AGAINST PARAPHRASING, MAKING OF DERIVATIVE WORKS, ADAPTATIONS, MODIFICATIONS, OR ABRIDGEMENTS.** *(See: Baker v. Seldon, 101 U.S. 99 (1879).*

| Original | **Chorus line 1: "Smoke, Drink, Cuss, Fight"** |
|---|---|
| | We gone smoke, drink, cuss, fight, stab, shoot, cuz we wildin tonight… We gon roll the dice, wit cash in the pot, somebody gettin ducked somebody gettin dropped. |
| **Allegedly Stolen** | **Chorus line 1(a) -** I smoke by ma self, drink by ma self, f**k these hoes by my got damn self …(Ying Yang Twins) **Chorus line 1(b)** – I smoke, I drink, I'm sposed ta stop but I can't, I'm a dog, I love hoes, and I'm addicted to money cars and clothes |

14

| Original | **Chorus line 2: "Everybody's Talkin Bout Us"** |
| | Everybody's talking bout us, they say its only lust, but I am your and you are mine, this love will last out whole lifetime…Every bodys talking bout us, they see its me you trust, and guys be tryin ta get with you but they cant do a thing for you"… |
| Allegedly Stolen | **Chorus line 2(a) – "Lets Talk About Our Love"** |
| | The more they talk about our love, the more they make it obvious, the more they seem so envious, how can they talk about us, when they don't know one thing about, they're just runnin their mouth, so all we do is tune them out… |
| Original | **Chorus line 3 – "Shoot To Kill"** |
| | "If I gotta shoot I shoot ta kill, gotta keep it real, send dem threats, gonna get wet, me and ma homeys packin steel…If I gotta shoot I shoot ta kill, glock is concealed, loose lips sink ships, leavin em slumped behind tha wheel, if I gotta shoot I shoot ta kill, dey wont I will, keep a clip, neva slip, gotta make sure they pay them bills".. |
| Allegedly Stolen | **Chorus line 3(a) – "Eminen Battle Song"** |
| | If I can't shoot you, I ma hafta kill you by spittin, ballin motha fuckas ma ruckus ain't written, when ma bullets miss, ma words keep on hittin, if you like pain, then that's what you're getting… |
| Allegedly Stolen | **Chorus line 3(b) – "Welcome to the South"** |
| | Gold grills, Coupe DeVilles, sittin on 20 20's, the dirty dirty baby, show em how the south do, we pop pills, shoot to kill, you know what we bout, and on behalf of G Unit, welcome to the south… |
| Original | **Chorus line 4 – "I'm A Maniac"** |

"I'm a maniac, can't keep outta the zone, I spend my nights on the phone, my trigga fingas on the chrome… I'm a maniac, ma mind is almost gone, dese streets is ma home, da only thing dat I own, im a maniac, nobody knows but me, and everywhere that I go, there be demons callin me…im a maniac, and quick ta lose control, I got a hole in ma soul, its filled wit diamonds and gold"….

| Allegedly Stolen | **Chorus line 4(a) – "Break Bread"** |
| --- | --- |
| | Hey, I'm a maniac, go and tell the whole world Mr. Pain is back, so go get them thangs out, you better lock up your house, and tell the cops they let the animals out… |
| Original | **Chorus line 5 – "Tear the Roof Off"** |
| | Lets tear the roof off… make it jump, make it pump, make it crunk through the trunk… |
| Allegedly Stolen | **Chorus line 5(a) – "We On Fire"** |
| | Tear the roof off this mutha fucka; light the roof on fire, we getting loose up in the mutha fucka, light the roof on fire… |
| Original | **Chorus line 6 – "Kings In The City"** |
| | We the kings in the city, rock the block and the club, and everywhere that we go, they be showin us love.  We the kings in the city, sportin hoodies as crowns, from a long line of hustlers, and we all get down, we they kings in the city, makin money wit mikes, cruising through your town on fancy motor bikes.  We the kings in the city, crushin lords and princes, makin midnight moves in Mercedes Benzes… |
| Allegedly Stolen | **Chorus line 6(a) – "I'm A King"** |
| | "I'm a king, bank rolls in the pockets of my jeans, you pussy niggas couldn't see me in ya dreams, I'm a king, top topic of all your magazines, I'm a king, remember I can get your block knocked off.  I'm a king, Bentley Coupe with the top chopped off.  I'm a king, I'm connected nationwide, but in the south I'm a king, just respect it and keep my name out your mouth… |
| Original | **Chorus line 7 – "I'm So High"** |

I'm so high, higher than the clouds in the sky, so high I could kiss the clouds in the sky…

| | |
|---|---|
| Allegedly Stolen | **Chorus line 7(a) – "So High"** <br><br> Ohhh, this feels so crazy, how this love is blazin, baby we are so high, my shoes are scraping the sky, so high, you got me so high, my shoes are scraping the sky… |
| Original | **Chorus line 8 – "Slow Neck"** <br><br> Can you slow neck, to your knees will you drop take the wood in ya hands lick it like a lollypop, can you slow neck, sixty eight, sixty nine, drink it dry to the bone, like your favorite wine, give me slow neck, strawberries on ice, if you go down once, will you go down twice, give me slow neck, and don't move too fast, make me feel so good that I want it to last. |
| Allegedly Stolen | **Chorus line 8(a) – Skull** <br><br> Skull, slow motion for me, slow motion for me, move it slow motion for me, slow motion for me, slow motion for me, move it slow motion for me.  Oh, I like it like dat, she working dat back, I don't know how to act, slow motion for me, slow motion for me, slow motion for me, move it slow motion for me…. |
| Original | **Chorus line 9 – "Wish A Motha Fugga Would"** <br><br> We with dem motha fuggahs would, try to come on this block, cause we them real thugs thas hard to stop, we wish them motha fuggas would, try to come to this table, runnin a stable, just beause they think they strong and they able, we wish them motha fuggahs would…try statin dey case, in ma face, I make em disappear witout a trace…we wish dem motha fuggahs would… |
| Allegedly | **Chorus line 9(a) – "The Heat"** |

| Stolen | I shoot arm, leg, arm, head, the heater burner, bruiser on my hip this year.  I shoot arm, leg, leg, arm, head.  I wish a motha fugga would trip this year… |
|---|---|
| Original | **Chorus line 10 – "We Got It Poppin"**<br>Who got it poppin, we got it poppin, shorty on the dance floor, and she ain't stopping.  Who got it poppin, we got it poppin, all the way to Brooklyn shorty got it locked down.  Who got it poppin, we got it poppin… |
| Allegedly Stolen | **Chorus line 10(a) – "Lets Get It Poppin"**<br>Its 2 up in the morning girl, and the DJ playin that song, now what chu gon do, I'm gone get it poppin, what chu gone do, I'm gone get get get it poppin… |

# AFFIDAVIT IN SUPPORT OF PREVIOUS MOTION TO STRIKE

Counsels repeated claim that all but one of counts V thru XI are causes of action with no remedies for the private citizen is flat out wrong. **18 U.S.C. 1964(c)** already provides relief for any person injured in its business or property…. and goes on to describe which causes of action are available due to any violations of **18 U.S.C. 1961**.  Counsel's semantical propositions have no basis in fact and are being interposed for improper purposes.  **18 U.S.C. 1964** and **18 U.S.C. 1961** give this Court jurisdiction over the defendants, <u>any</u> defendant who allegedly injures <u>any</u> person in its business or property.  Counsel's argument is nonsensical and should be stricken as immaterial, scandalous and insufficient under **Fed. R. Civ. P. Rule 12(f).**

Partial Summary Judgment on the following issues is thus available to plaintiff as a matter of fact and law:

1. Plaintiff, Robert Prunte' can indeed lawfully own a private property interest in a "strategic alliance/partnership" entity called "YoWorld" and still be properly before this court.

2. Mr. Prunte' is the only person recognized by the United States Copyright Office as the sole claimant/author of Collection (1) one and (2) of YoWorld Music's Purloined Songs.

3. Mr. Prunte' is the sole author of the on file song history evidence and the original maker of the same.

4. Mr. Prunte' owns the registration in all the works in question, and defendants songs are merely suspect derivatives of the originals.

5. Counsel for defendants has already conceded Direct Access to plaintiff's coveted works by failing to controvert such proof of direct access.

6. As such, it can reasonably be inferred, due to the probative evidence exhibited by the record, that defendants used plaintiffs highly valuable and commercial works as the starting point for its own unlawful expressions.

7. Likewise, Counts V thru XI of the Amended Complaint do indeed contain causes of action for which relief is available to private plaintiffs.

Wherefore, the above issues are deemed to be issues that present no genuine issue for trial and judgment should be had for the plaintiff on those issues, and defendants Motion to Dismiss should be denied out of hand, and for any other and further relief this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY DECLARE, UNDER PENALTY OF PERJURY, THAT THE FOREGOING IS A TRUE AND CORRECT ACCOUNT OF THE HEREIN ALLEGED MATTERS AND EVENTS, AND THAT THE FOLLOWING ENTITIES REPRESENT THE INDIVIDUAL DEFENDANT PERSONS NAMED IN THE CAPTION AS INTERESTED PERSONS, AND WERE MAILED A TRUE AND CORRECT COPY OF THIS COMPLAINT ON OR ABOUT** SUNDAY JULY 2ND 2006.

BY: Robert R. Prunte'

**JENNER & BLOCK**, C/O MR. MICHAEL B. DESANCTIS, 601 THIRTEENTH STREET, N.W. SUITE 1200 SOUTH, WASHINGTON, D.C. 20005; & **THE UNITED STATES COURTHOUSE** OF THE DISTRICT OF COLUMBIA, F. BARRETT PRETTYMAN BUILDING, 333 CONSTITUTION AVENUE, N.W. WASHINGTON, D.C. 20001, C/O CLERK'S OFFICE.

BY:

ROBERT R. PRUNTE'

1702 LINDEN AVENUE

BALTIMORE, MARYLAND 21217

1.410.225.9940  / 1.301.514.4028