UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
ROBERT R. PRUNTÉ,               )
                                )
   and                          )
                                )
YOWORLD MUSIC COMPANY,          )
                                )
        Plaintiffs,             )
                                )
   v.                           )    Civil Action No. 06-0480 (PLF)
                                )
UNIVERSAL MUSIC GROUP, et al.,  )
                                )
        Defendants.             )
_____)


OPINION

        This matter is before the Court on the motion of defendants UMG Recordings, Inc. ("UMG" or "Universal") and Atlantic Recording Corporation ("Atlantic") to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.[1] Plaintiffs, proceeding *pro se*, assert a number of claims against approximately 45

---

[1] "Universal Music Group dba UMG Recordings" and "Warner Music Group dba Atlantic Recording Corporation" are recording companies listed on the face of the amended complaint in this action. In defendants' motion, they explain:

> The amended complaint misnames the appropriate recording company defendants as "Universal Music Group dba UMG Recordings" and "Warner Music Group dba Atlantic Recording Corporation." The initial complaint named only "Universal Music Group" and "Warner Music Group," and was served only on those misnamed entities. The appropriate Universal entity appears to be "UMG Recordings, Inc." and the appropriate Warner entity appears to be "Atlantic Recording Corporation." Because plaintiff Mr. Prunte is appearing *pro se* in this action, defendants Universal and Atlantic have not contested service of process.

named defendants, ranging from major recording companies, and their chairmen and boards of directors, to high profile recording artists. The 101-page amended complaint largely pertains to copyright infringement, while also asserting claims for breach of fiduciary duty, violations of the Lanham Act, and civil RICO claims, as well as a number of criminal claims such as extortion and bank fraud. Upon consideration of the motion, the opposition, and the reply, the Court grants in part and denies in part defendants' motion to dismiss the amended complaint.

I.  BACKGROUND

Plaintiffs are Robert R. Prunté and YoWorld Music Company, doing business as Rowdy City Records. Mr. Prunté is the President of YoWorld Music Company, which produces music and sells compact discs to the public on the streets. See Amended Complaint ("Am. Compl."), Exs. F, M.[2] Mr. Prunté and his business partner, Karen Pate, took part in a service defendant Universal provides, whereby Mr. Prunté and his associates sent samples of their musical work to a division of Universal known as Inside Sessions, and received written feedback on those musical samples. See Am. Compl. ¶ 89, Exs. B-D, O. Mr. Prunté submitted 38 songs to Inside Sessions in 2001 and received written critiques from Inside Sessions in 2002. See id. ¶ 89, Exs. B-C. Between the time he filed his original complaint and his amended complaint, Mr. Prunté pre-registered a volume of musical works with the United States Copyright Office for

---

Motion to Dismiss at 1.

[2]   Mr. Prunté is a frequent litigator in the federal court system. As defendants note, his last copyright infringement actions targeted the Walt Disney Company and involved six suits in three different federal courts, including this Court. See Def. Mot. at 2; Prunté v. Walt Disney Co., Civil Action No. 04-0629 (JDB), Memorandum Opinion at 2-4 (D.D.C. Mar. 31, 2005) (detailing Mr. Prunté's litigation history).

copyright protection. See id., Ex. T; Motion to Dismiss Filed By Defendants UMG Recordings, Inc. and Atlantic Recording Corporation ("Def. Mot.") at 6.

Plaintiffs allege that various recording artists have infringed upon lyrics Prunté produced while doing business as YoWorld. Plaintiffs further allege a conspiracy among the major recording labels named in the amended complaint to steal the lyrics and artistic expressions that Mr. Prunté provided to Inside Sessions and to use those lyrics and expressions in songs produced for their own artists. See Am. Compl. ¶¶ 48, 51, 59-61, 89, 101. Plaintiffs allege that the following are participants in the conspiracy: Universal Records, doing business as UMG Recordings, Inc., Atlantic Recording Corporation, Warner Music Group, Viacom International, Interscope Records, Cash Money Records, Ted Turner, Kanye West, Sean (Jay-Z) Carter, Fat Joe, Ludacris, 50 Cent, and numerous others. See Am. Compl. ¶¶ 20-47 (listing defendants). In all, there are approximately 45 defendants in this action. See id. Summonses have been issued only as to defendants Universal Music Group, Inc., Warner Music Group, and Viacom International, Inc. Counsel for defendants Universal and Atlantic entered an appearance by filing the instant motion to dismiss, but plaintiffs have failed to provide proof of service as to Viacom or any other defendants.

In addition to claiming direct and contributory civil copyright infringement against the defendants, plaintiffs assert ten other claims. Plaintiffs allege that "all defendants" engaged in unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, and an "unlawful Civil RICO Enterprise," in violation of 18 U.S.C. § 1961, and that "Inside Sessions" breached a fiduciary duty to plaintiff. See Am. Compl. ¶¶ 133, 136 (detailing the Lanham Act claim), 141-241 (describing the civil RICO claim), 301-07 (asserting a breach of fiduciary duty).

3

Plaintiffs further assert seven claims based on criminal statutes: (1) bank fraud, in violation of 18 U.S.C. § 1344; (2) extortion, in violation of 18 U.S.C. § 1951; (3) criminal copyright infringement, in violation of 17 U.S.C. § 506 and 18 U.S.C. § 2319; (4) trafficking in counterfeit labels, illicit labels, counterfeit documentation or counterfeit packaging, in violation of 18 U.S.C. § 2318; (5) interstate transportation of stolen property, in violation of 18 U.S.C. § 2314; (6) a violation of the Travel Act, 18 U.S.C. § 1952, which deals with interstate and foreign travel or transportation in aid of racketeering enterprises; and (6) theft of trade secrets in violation of the Electronic Espionage Act, 18 U.S.C. § 1832. See Am. Compl. ¶¶ 232-37 (asserting 18 U.S.C. § 1344 violation), 238-48 (asserting 18 U.S.C. § 1951 violation), 250-58 (asserting 17 U.S.C. § 506 violation), 258-65 (asserting 18 U.S.C. § 2318 violation), 266-69 (asserting 18 U.S.C. § 2314 violation), 270-81 (asserting 18 U.S.C. § 1952 violation), 284-300 (asserting 18 U.S.C. § 1832 violation).

## II.  DISCUSSION

*A. Standard of Review*

On a motion to dismiss for failure to state a claim, the Court must assume the truth of the facts alleged in the complaint and may grant the motion only if it appears beyond doubt that the plaintiff will be unable to prove any set of facts that would justify relief. Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991); Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint is construed liberally in plaintiff's favor, and the Court must grant plaintiff the benefit of all reasonable inferences that can be derived from the facts alleged. Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); accord Andrx Pharms. v.

Biovail Corp. Int'l, 256 F.3d 799, 805 (D.C. Cir. 2001). Nonetheless, the Court need not accept inferences suggested by the plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions. See Western Associates, Ltd. v. Market Square Associates, 235 F.3d 629, 634 (D.C. Cir. 2001); National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16 F.3d at 1276.

While *pro se* complaints are held to a less stringent standard than complaints drafted by attorneys, see Gray v. Poole, 275 F.3d 1113, 1116 (D.C. Cir. 2002); Amiri v. Hilton Washington Hotel, 360 F. Supp.2d 38, 41-42 (D.D.C. 2003), a *pro se* plaintiff's inferences "need not be accepted 'if such inferences are unsupported by the facts set out in the complaint.'" Caldwell v. District of Columbia, 901 F. Supp. 7, 10 (D.D.C. 1995) (quoting Henthorn v. Dept. of Navy, 29 F.3d 682, 684 (D.C. Cir. 1994)). "'A *pro se* complaint, like any other, must state a claim upon which relief can be granted by the court.'" Id. (citing Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981)). Moreover, the Court need not await a formal motion under Rule 12(b)(6), but may, on its own initiative, dismiss a complaint for failure to state a claim. See Best v. Kelly, 39 F.3d 328, 331 (D.C. Cir. 1994) (quoting Baker v. Director, United States Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990) (per curiam); 5B CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 at 409 n. 4 (3d ed. 2004).

### B. YoWorld is Unrepresented

The Court agrees with defendants that YoWorld is an artificial entity rather than a natural person, and therefore must be represented by counsel to pursue claims in this Court. See

Def. Mot. at 5-6.  Regardless of the particular type of business association YoWorld might be, it is clear that any artificial entity, whether a corporation, partnership or association, cannot proceed in federal court without counsel.  See Rowland v. California Men's Colony, 506 U.S. 194, 202 (1993) (only natural persons may appear *pro se* in federal court).  Because YoWorld is not represented by counsel, the Court will dismiss all of YoWorld's claims against all defendants, and address the claims as brought by *pro se* plaintiff Robert Prunté in his individual capacity.

C.  *Motion to Dismiss for Failure to State a Claim*

1.  Counts I and II

Mr. Prunté alleges direct and contributory copyright infringement in the first two counts of his amended complaint.  See Am. Compl. ¶¶ 63, 122.  To establish copyright infringement, a plaintiff must prove (1) "ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); see Sturdza v. United Arab Emirates, 281 F.3d 1287, 1295 (D.C. Cir. 2002); Stenograph L.L.C. v. Bossard Assoc., Inc., 144 F.3d 96, 99 (D.C. Cir. 1998). Defendants have moved to dismiss these claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief can be granted, stating that (1) Mr. Prunté has not pleaded facts showing ownership of a valid copyright, and (2) even if valid ownership can be shown, a substantial similarity does not exist between the allegedly protected works and the allegedly infringing works.  See Def. Mot. at 6-7, 11.  Defendants' first argument, that plaintiffs have not pleaded facts showing ownership of a valid copyright, is not properly the subject of a motion to dismiss for failure to state a claim under Rule 12(b)(6).

Defendants' challenge to ownership of a valid copyright is a challenge to the Court's subject matter jurisdiction over plaintiffs' claim; the argument therefore should have been made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(b)(1); see also La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195, 1201 (10th Cir. 2005) (ownership of a valid copyright is a subject matter jurisdiction question). The Court, however, is able to address subject matter jurisdiction *sua sponte*. See Doe by Fein v. District of Columbia, 93 F.3d 861, 871 (D.C.Cir.1996) (noting that, because subject matter jurisdiction "goes to the foundation of the court's power to resolve a case, [] the court is obliged to address it *sua sponte*").

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dispose of the motion on the basis of the complaint alone or may consider certain materials beyond the pleadings. "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. National Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). This Court has interpreted Herbert to allow a court to "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing Herbert v. National Academy of Sciences, 974 F.2d at 197), aff'd, Scolaro v. D.C. Bd. of Elections and Ethics, No. 00-7176, 2001 U.S. App. LEXIS 2747, at *1 (D.C. Cir. Jan. 18, 2001); see also Erby v. United States, 424 F. Supp. 2d 180, 182-83 (D.D.C. 2006).

*a. Ownership of a Valid Copyright*

Mr. Prunté offered a copy of a copyright preregistration form for "Collection (2) Two of YoWorld Music's Purloined Songs," as well as an e-mail response from the United States Copyright Office noting the receipt of Mr. Prunté's application and fees, as an exhibit to his Amended Complaint.  See Am. Compl. Ex. T.  There is a split of authority among the courts as to whether such evidence is sufficient to allow one to bring a suit for copyright infringement.  Some courts hold that valid ownership attaches after the Copyright Office, upon inspection of the completed copyright application, *registers* the copyright, while others hold that valid ownership attaches upon *submission* of the completed application, together with a copy of the work in question and the necessary fee, to the Copyright Office.[3]

---

    3    Compare La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d at 1205 ("[W]e reject the proposition that § 411 confers federal court jurisdiction for an infringement action upon mere submission of a copyright application to the Copyright Office."); M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1488 (11th Cir. 1990) ("The registration requirement is a jurisdictional prerequisite to an infringement suit."); Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co., 260 F.2d 637, 640-41 (2d Cir. 1958) ("[W]e can think of no other added condition for 'registration' but acceptance by the Register."); Mays & Assocs. v. Euler, 370 F. Supp. 2d 362, 368 (D. Md. 2005) ("This Court finds that 17 U.S.C. § 411(a) when read to give the words their ordinary, contemporary, and common meaning, clearly evidences Congress' intent to require something more than application for a copyright prior to filing suit."); Loree Rodkin Mgmt. Corp. v. Ross-Simons, 315 F. Supp. 2d 1053, 1055 (C.D. Cal. 2004) ("[A] close reading of the Act indicates that registration does not occur until after the Copyright Office issues a certification of registration"); and Strategy Source, Inc. v. Lee, 233 F. Supp. 2d 1, 6-7 (D.D.C. 2002) (Walton, J.) ("The Court is in agreement with those courts that have found that permitting an infringement lawsuit to go forward in the absence of a registration certificate or denial of the same is in tension with the langue of section 411(a) of the Copyright Act.") with Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345, 1349 (8th Cir. 1994) ("When a copyright owner has established a threat of continuing infringement, the owner is entitled to an injunction regardless of registration."); Apple Barrel Productions, Inc. v. Beard, 730 F.2d 384, 386 (5th Cir. 1984) ("In order to bring suit for copyright infringement . . . one need only prove payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of the registration application."); Iconbazaar, L.L.C. v. America Online, Inc., 308 F. Supp. 2d 630, 634 (M.D.N.C. 2004) ("the overall statutory scheme governing the

This Court joins Judge Kennedy, the leading copyright treatise, and those courts that have held that an infringement suit may be brought when a copyright application is completed and submitted to the United States Copyright Office. The more common practice is for courts to allow suit to go forward as soon as the application has been completed and submitted to the Copyright Office, along with the deposit of the work in question and the fee. See 2 NIMMER ON COPYRIGHT § 7.16[B][1][a][i] (1999). According to Professor Nimmer, this approach "represents the better point of view, given that the claimant at that juncture has done all that it can do, and will ultimately be allowed to proceed regardless of how the Copyright Office treats the application." Id. This Court also believes that this approach is the correct one and is in harmony with the language of the Copyright Act.

---

institution of infringement actions supports the position that Congress intended for registration to be complete on application."); Foraste v. Brown Univ., 248 F. Supp. 2d 71, 77 n.10 (D.R.I. 2003) (the requirement that the application be examined by the Copyright Office as prerequisite to sue "ignores the statute's mandate that the merits of the application materials are 'later determined,' that is, determined sometime after the right to sue comes into being"); International Kitchen Exhaust Cleaning Ass'n v. Power Washers of North America, 81 F. Supp. 2d 70, 72 (D.D.C. 2000) (Kennedy, J.) ("To best effectuate the interests of justice and promote judicial economy, the court endorses the position that a plaintiff may sue once the Copyright Office receives the plaintiff's application, work, and filing fee."); and Havens v. Time Warner, Inc., 896 F. Supp. 141, 142-43 (S.D.N.Y. 1995) (quoting the Fifth Circuit's decision in Apple Barrel Productions, Inc. v. Beard).

Some courts in the registration camp have held that a potential plaintiff must have an actual paper certificate of registration before commencing suit. See Loree Rodkin Mgmt. Corp. v. Ross-Simons, 315 F. Supp. at 1055; Strategy Source, Inc. v. Lee, 233 F. Supp. 2d at 6-7. Others in the same camp reject that approach. See La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d at 1203 n.7 (criticizing the paper certificate requirement because of the delay that could arise between registration and receipt of the certificate and the possibility that a paper certificate could be lost).

> Section 411(a) of the Act reads, in relevant part:
>
> In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been *refused*, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. § 411(a) (emphasis added). Because the language of this provision allows a party to file an infringement suit regardless of whether the Copyright Office actually registers the copyright upon examination of the party's application, "it makes sense under the 1976 Act to refer to *application for registration* as a condition to filing an infringement action." 2 NIMMER ON COPYRIGHT § 7.16[B][1][a][i] (1999) (emphasis in original); see also Foraste v. Brown Univ., 248 F. Supp. 2d at 77 n.10.

Two other provisions of the Copyright Act lend support to the application approach and the notion that "registration" in the Act means submission or receipt of a completed application, as opposed to actual registration by the Register of the Copyright Office. First, 17 U.S.C. § 408(a) states that a claimant "may obtain registration of the copyright claim by delivering to the Copyright Office the deposit . . . together with the application and fee." 17 U.S.C. § 408(a); see also Iconbazaar, L.L.C. v. America Online, Inc., 308 F. Supp. 2d at 634 (agreeing with this view). Second, 17 U.S.C. § 410(d) provides that the "effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined . . . to be acceptable for registration, have all been received." 17 U.S.C. § 410(d); see also Iconbazaar, L.L.C. v. America Online, Inc., 308 F. Supp. 2d at 634 (finding that Section 410(d) can be read to support the notion that a copyright is "registered" within the meaning of the

Act when a completed application is received); but see Strategy Source, Inc. v. Lee, 233 F. Supp. 2d at 10-11 (interpreting Section 410(d) as stating that after a copyright is officially registered, the "remedies in a successful lawsuit will relate back to the date when the application was filed"). As noted, supra at 9-10, the application approach also is in harmony with the purpose of Section 411(a) and the overall statutory scheme.

The Court concludes that Mr. Prunté has satisfied the first element of his infringement claims by showing that his complete copyright application was submitted and received by the United States Copyright Office. See Am. Compl., Ex. T. The Court therefore finds that it has subject matter jurisdiction over Mr. Prunté's infringement claims.

*b. Substantial Similarity*

With respect to the second element, in the absence of direct evidence of copying, a plaintiff may prove copying by establishing (1) that defendants had access to the copyrighted work, and (2) the substantial similarity between the protectible material in plaintiff's and defendants' works. See Whitehead v. Paramount Pictures Corp., 53 F. Supp. 2d 38, 46 (D.D.C. 1999); 4 NIMMER ON COPYRIGHT § 13.03[A] (1999). Access is not at issue in this case because Mr. Prunté voluntarily provided the lyrics at issue to Inside Sessions. See Am. Compl. ¶ 89. Therefore, the sole remaining issue is substantial similarity, which requires a two-step analysis. First, the Court must identify which parts of the artist's work are protectible by copyright, which involves distinguishing protectible artistic expressions from unprotectible ideas or *scenes a faire* – a term encompassing "incidents, characters, or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." Sturdza v. United Arab

Emirates, 281 F.3d at 1295. Second, after excluding the unprotectible ideas, the Court must determine whether the allegedly infringing work is substantially similar to the protectible ideas and expressions in the artist's work. See id. at 1296. "An allegedly infringing work is considered substantially similar to a copyrighted work if the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." Id. (quoting Boisson v. Banian, Ltd., 273 F.3d 262, 272 (2d Cir. 2001).

Substantial similarity is a question that should be decided either by a factfinder at trial or, in some cases, in the context of a motion for summary judgment, not on a motion to dismiss for failure to state a claim under Rule 12(b)(6). See Sturdza v. United Arab Emirates, 281 F.3d at 1299. Accordingly, with respect to Counts I and II of the Amended Complaint, defendants' motion to dismiss is denied.

2. Count III

Mr. Prunté alleges that defendants used his "titles and accompanying expressions" in a manner that continues to "deceive the general public as to the origin, sponsorship and or approval of defendants activities by plaintiff," thereby violating Section 43(a) of the Lanham Act, 15 U.S.C. § 1125. Am. Compl. ¶¶ 133, 136. This claim is without merit, as the Supreme Court has held that the Lanham Act, which prohibits the use of "false designations of origin," applies only to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept or communication embodied in those goods." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 37 (2003). The Court further noted that concepts and communications are protected by copyright and patent laws, not by the Lanham Act. See id.; see

also Whitehead v. CBS/Viacom, Inc., 315 F. Supp. 2d at 14 ("The gravamen of plaintiff's complaint is one based in copyright and recognizing plaintiff's ostensible marks under the Lanham Act would be an unwarranted extension by the Lanham Act into an area already protected by copyright law.") (internal quotations omitted).  Mr. Prunté has not stated a claim for which relief can be granted under the Lanham Act.  Count III therefore will be dismissed.

3.  Count IV

Mr. Prunté asserts claims based on the Racketeer Influenced and Corrupt Organizations Act ("RICO").  See Am. Compl. ¶¶ 141-241.  Plaintiff alleges that the defendants are involved in an association-in-fact enterprise.  See id. ¶¶ 148, 151, 161; see also 18 U.S.C. § 1961(4) (stating that an enterprise includes "a group of individuals associated in fact").  Mr. Prunté further alleges that "the aforementioned association in fact enterprise conducts the business of unlawfully making derivative works of original copyrighted works that do not belong to them, for the sake of the enterprise, and through a pattern of racketeering predicates of mail fraud and other federal crimes, accomplishes unlawful copyright infringement . . . ."  Am. Compl. ¶¶ 147-48.

In order to survive defendants' motion to dismiss his RICO claim, Mr. Prunté must allege facts showing "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering."  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted).  A corporation may be either a "person" or an "enterprise" under RICO but the same corporation or association cannot be both the person and the enterprise.  A RICO claim necessarily involves "two distinct entities: (1) a person, and (2) an enterprise that is simply not the same person

referred to under a different name" – that is to say, there must be "some distinctness between the RICO defendant and the RICO enterprise." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161-62 (2004) (internal quotations omitted); see also United States v. Turkette, 452 U.S. 576, 583 (1981). Plaintiff's complaint does not make the necessary distinction between the two distinct entities. Proof of one does not necessarily establish the other. See Reves v. Ernst & Young, 507 U.S. 170, 185 (1993) (liability "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs."). Plaintiff's complaint does not satisfy this test.

In addition, Rule 9(b) of the Federal Rules of Civil Procedure mandates that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This heightened pleading standard is applicable to civil RICO claims such as those asserted here. See Danielsen v. Burnside-Ott Aviation Training Ctr., Inc., 941 F.2d 1220, 1229 (D.C. Cir. 1991). Mr. Prunté has not properly alleged any particularized facts showing that defendants have committed any fraud or other predicate acts against him, and thus he fails to properly plead his RICO claim against those same defendants. See id.; see also Am. Compl. ¶ 148 (alleging "mail fraud and other federal crimes").

### 4. Counts V–XI

The Court now turns to Counts V through XI of the Amended Complaint, in which Mr. Prunté attempts to bring claims pursuant to a variety of criminal statutes. With one exception, 18 U.S.C. § 2318, none of the criminal statutes at issue expressly allows for a private right of action. While it is possible in some cases for courts to imply private rights of actions

into statutes not expressly providing for them, in recent decades the Supreme Court has "retreated from [its] previous willingness to imply a cause of action where Congress has not provided one." Corr. Serv. Corp. v. Malesko, 534 U.S. 61, 67 n.3 (2001). The Supreme Court has "responded cautiously to suggestions that [implied private rights of action] be extended into new contexts," even when declining to do so means that injuries would go unredressed. See Sweiker v. Chilicky, 487 U.S. 412, 425 (1988). More specifically, in the criminal context, the Supreme Court has refused to imply a private right of action in "a bare criminal statute." Cort v. Ash, 422 U.S. 66, 79-80 (1975).

This Court therefore will not imply a private right of action into any of the criminal statutes alleged by Mr. Prunté that do not provide an express private right of action. See id. As there are no private rights of action available, except under 18 U.S.C. § 2318, it is impossible for Mr. Prunté to set forth claims based on these statutes. Moreover, even if private rights of actions were available under the applicable criminal statutes, Mr. Prunté fails to plead facts required to state claims as a matter of law under any of them, including under 18 U.S.C. § 2318, as explained below.

18 U.S.C. § 2318 pertains to trafficking in counterfeit labels, illicit labels, counterfeit documentation and counterfeit packaging. A private right of action is available under this criminal statute. See 18 U.S.C. § 2318(f)(1) ("Any copyright owner who is injured, or is threatened with injury . . . may bring a civil action in an appropriate United States district court."). Mr. Prunté, however, fails to allege the facts necessary to state a claim under this statute as a matter of law. The defendants correctly note that the amended complaint contains "no allegation that any of [defendants'] CDs are not properly labeled as their own products or that

they contain counterfeit labels or other documents purporting to be plaintiff's." Def. Mot. at 28; see Am. Compl. ¶¶ 258-65. Therefore, Mr. Prunté fails to state a claim under 18 U.S.C. § 2318.

### 5. Count XII

Finally, Mr. Prunté appears to claim that this Court should hold defendants liable for breach of fiduciary duty. See Am. Compl. ¶¶ 301-07. For a fiduciary duty to exist between parties, there must be a special relationship of trust or confidence. See Overseas Private Investment Corp. v. Industria de Pesca, N.A., 920 F. Supp. 207, 210 (D.D.C. 1996). Mr. Prunté alleges that Inside Sessions "held itself out to possess superior knowledge and skill in terms of song writing, providing advice and consultations for any authors who paid the $200 fee." Am. Compl. ¶ 304. Mr. Prunté further alleges that because of the services that Inside Sessions provided to YoWorld, a "confidential and fiduciary relationship" arose "between the defendants and plaintiff," which was subsequently breached. Am. Compl. ¶ 307. Inside Sessions provided a service to YoWorld – it provided feedback on certain music tracks which YoWorld sent it. See Am. Compl. ¶ 65; Def. Mot. at 3. The record indicates that Inside Sessions provided two such critiques during a four month period in 2002. See Am. Compl. Exs. B-C. Such ordinary and intermittent transactions to a service provider cannot give rise to the special relationship of trust and confidence required for fiduciary duty to be present. See Overseas Private Investment Corp, v. Industria de Pesca, N.A., 920 F. Supp. at 210.

To the extent that Mr. Prunté has raised the issue of *respondeat superior* liability, the Court advises him that *respondeat superior* is a doctrine used to attach liability to an "employer or principal for an employee or agent's wrongful acts committed within the scope or


employment or agency." BLACK'S LAW DICTIONARY at 1338 (8th ed. 2004). *Respondeat superior* is not itself a cause of action or a cognizable legal claim. See, e.g., Brooks v. District of Columbia, Civil Action No. 05-0362, 2006 WL 3361521, *6 (D.D.C.,Nov. 20, 2006) ("It is clearly-established law that *respondeat superior* is not a separate cause of action."); Jones v. Servellon, Civil Action No. 94-1038, 1996 WL 554513, *3 (D.D.C.,Sept. 18, 1996) ("a claim under *respondeat superior* does not allege a separate and distinct tort by the employer, but rather holds the employer vicariously liable for torts of the employee.").

### III.  CONCLUSION

For the reasons stated herein, defendants UMG and Atlantic's motion to dismiss plaintiff's amended complaint will be granted with respect to all counts except for Counts I and II. In addition, because the claims against all the defendants are identical and premised on the same theories, it would be illogical and inefficient to require each defendant to brief and argue the same issues – in the event that they were ever properly served with process and therefore were defendants in this matter. The Court therefore *sua sponte* dismisses all of Mr. Prunté's claims except for Counts I and II with respect to all defendants in this case. See Best v. Kelly, 39 F.3d 328, 331 (D.C. Cir. 1994); Whitehead v. Paramount Pictures Corp., 53 F. Supp. 2d 38, 48 (D.D.C. 1999); 5B CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE § 1357 at 409 n. 4 (3d ed. 2004).  All of YoWorld's claims against all defendants will be dismissed, although its claims under Counts I and II will be dismissed without prejudice, subject to YoWorld retaining representation before this Court.

      An Order consistent with this Opinion shall issue this same day.

      SO ORDERED.

                                                  /s/_____
                                                  PAUL L. FRIEDMAN
                                                  United States District Judge

DATE:  March 30, 2007