ROBERT R. PRUNTE', (APPEARING PRO SE')
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218
410.323.2483 or 301.514.4028

RECEIVED

MAY 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

ROBERT R. PRUNTE,                           )
                                            )
            Plaintiff,                      )
                                            )
      vs.                                   )
                                            )
UNIVERSAL MUSIC GROUP, ET AL, ATLANTIC      )     Case No.: No. 1:06-cv-00480-PLF
                                            )
RECORDING CORP. ET AL & VIACOM              )
                                            )
INTERNATIONAL ET AL,                        )
                                            )
            Defendant                       )
_____ )

# MOTION IN LIMINE TO PREVENT EXTREME PREJUDICE TO THE PRO SE
# PLAINTIFF AND HIS CONSTITUTIONALLY PROTECTED WRITINGS.
# OVERWHELMING PROOF OF DIRECT ACCESS IGNORED.  PROBATIVE
# EVIDENCE OF SIMILARITIES/ACCESS SHOWN & RESTATED HERE.  HIGHLY
# PREJUDICIAL MISCHARACTERIZATIONS OF PLAINTIFFS ORIGINAL
# EXPRESSIONS BY DEFENDANTS AS A MATTER OF FACT AND LAW. RULING ON
# EVIDENCE REQUESTED AND MEMORANDUM OF LAW

Comes now the plaintiff with its Motion in Limine requesting defendants to refrain from

trivializing plaintiff's expression as part of the public domain or scenes a faire without

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

submitting evidence that plaintiff's works are indeed such trivialities or that there is motive for making such a blanket statement concerning such complex and coveted literary expressions.

As an initial matter, plaintiff seeks a ruling on any and all evidence proffered by defendants relating to the "Scenes a Faire" Doctrine, "The Merger Doctrine" or "Public Domain allegations".

Already, defendants have allegedly flimsily claimed, in a blanket manner, that plaintiff's songs are mere scenes a faire, without specifying what component of plaintiffs work it was referring to. *(See: American Law Reports, Annotations: "Pretrial or Preliminary Motion to Secure Exclusion of Prejudicial Evidence which it is Anticipated May Be Offered" 94 ALR 2d 1087. & Fed. R. Evid. 103.1, 103.6, 103.6, 103.7, 104.1, 104.2 104.3, 301.1, 301.2, 301.4, 301.5, 301.6, 301.7 & 401.1, 401.2, 401.3, 401.4, 401.6 & 402.1*

Such a bald premise lacks foundation and is inadmissible as evidence in this case without a ruling from this Court concerning the admissibility of defendants proffer or without a ruling whether any alleged "scenes a faire" are actually plaintiffs protected expression or not.

For the following reasons, defendant's future proffering of evidence should be monitored by the Court as referee protecting the rights of this plaintiff as well as the defendants and the Institution of Copyrights:

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

1.) Defendant's loose identification of coveted and original expressions in such a manner as scenes a faire is not relevant for the issue sought to be certified and identified by them. I.e. proof of copying.

2.) Also, such blanket and unfounded statements work harm and unfair prejudice on the rights of plaintiff when it comes to identification of his protected expression as it relates to the written chorus lines of plaintiffs work and are thus irrelevant.

3.) Such unfounded statements going toward dispositive issues, tends to confuse, rather than clarify and crystallize the issues before the jury or fact finder.

4.) Such a premise misleads the Court and the plaintiff, who merely seeks a restatement of the law, and not new fangled propositions offered by the recalcitrant defendants.

5.) Such statements are also cumulative and repetitive and compounding of other evidence of importance, in that they create needless argument which barely scratches the surface of "the letter of the law".

6.) Such blanket statements about public domain or scenes a faire, without showing any song from the public domain or a scene a faire present or common to both works and allegedly found in plaintiffs chorus line, is weak, has utterly no probative value relative to the issues of this case, and

7.) Such antics are made merely for the purposes of delay and dilatoriness.

This plaintiff bitterly objects to counsel for the defendants trivialization of plaintiffs protected expression by loosely claiming the chorus lines of plaintiff are mere scenes afaire, while failing to identify what song and failing to speak about whether its own works are original or mere scenes a faire as well. Counsel for the defendants has even failed to mention that plaintiff's case

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

in chief relates to the chorus lines only, and not the conglomeration of words counsel throws together for its biased and unfair rudimentary analysis.

As a matter of fact and law and as Counsel is well aware, in *Holmes v. Hurst, 174 U.S. 82 (1899)* the Court stated:

> *"The right thus secured by the copyright act is not a right to the use of certain words, because they are the common property of the human race, and are as little susceptible of private appropriation as air and sunlight; nor is it the right to ideas alone, since in the absence of means of communicating them they are of value to no one but the author. But the right is to that arrangement of words which the author has selected to express his ideas.*

The court then quoted from Lord Mansfield, who observed that the copyright is "an incorporeal right to print a set of intellectual ideas or modes of thinking, communicated in a set of words and sentences and modes of expression. It is equally detached from the manuscript, or any other physical existence whatsoever." *(See Millar v. Taylor, 98 Eng. Rep. 201 (K.B. 1769), cited in Holmes, 174 U.S. at 86.*

The Court summarized by quoting from *Jefferys v. Boosey, 10 Eng. Rep. 681 (H.L. 1854).*

> *"The subject of property is the order of words in the authors composition, not the words themselves, they being analogous to the elements of matter, which are not appropriated unless combined, not the ideas expressed by those words, they existing in the mind alone, which is not capable of appropriation".*

By failing to even utter the sole basis of plaintiffs complaint, i.e. "*chorus lines allegedly infringed*", or "the *most meritorious parts*" of plaintiffs copyrighted songs being allegedly found

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

within the body of defendants songs, a dangerous and highly prejudicial proposition is being set up which ultimately could damage this plaintiffs case in chief, especially in light of regimes like the "scenes a faire" doctrine and the "merger doctrine" being subtly and semantically recognized as if there were only a few ways of expressing plaintiffs coveted and copyright protected written expressions.

This plaintiff strongly objects to his work or this case being trivialized in such a manner. Of a certainty, _every work ever created_ by the human imagination contain scenes a faire. Unless a fact finder or other officer of the Court identifies with distinct specificity the parts of an allegedly infringing work deemed to be mere "scenes a faire" and what parts are original, then any loose statement about such a topic is mere rhetoric and a waste of paper as well as this Courts hallowed time.

Fairness would dictate anyone considering such a doctrine as relevant to also recognize that only an authors "writings" are protected. The defendants, whether inadvertently, or due to lack of appreciation of the depths of plaintiff's copyright protection, have utterly failed to consider the plaintiffs "writings" as the original works of coveted art that they are.

When one views the defendant's failed motions to dismiss, it would appear that plaintiff's entire "writings" are trivialities containing little or no originality, a thin copyright protection or mere "Scenes a faire", which would totally negate or obliterate any copyright protection in plaintiffs original expressions, as a matter of law.

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

Counsel speaks quite disingenuously concerning the limiting scenes a faire doctrine. Although it is indeed true that the 2nd Circuit has made clear that some stock themes may be so universal that they cannot be considered original for copyright purposes, and it has also made clear that "unoriginal elements", when combined, may constitute an original copyrightable work, in *Knitwaves, Inc., v. Lollytogs Ltd., Inc., 71 F. 3d 996, 1004 (2nd Cir. 1995)*, the court concluded that a sweaters commonplace visual elements such as leaves and squirrel, a "fall palette" of colors, and a design that combined these images and colors—were sufficiently original in combination to warrant copyright protection.

The Second Circuit rejected the defendant's contention that, in comparing designs for copyright infringement, we are required to dissect them into their separate components, and compare only those elements which are in themselves copyrightable.

This is far from the case. Such limiting doctrines have no place in a decision when works are coveted and original "writings" and no particular song or song segment is identified as a possible target motive for scenes a faire determination. (See: *Ets-Hokin vs. Skyy Spirits, Inc.*, where scenes a faire were declared to be mere inevitable "situations in which there is essentially no other way to express a particular idea except by using certain elements, and in such instances, those elements will often be termed 'scenes a faire".)

There is NO such narrow range of artistic expression existing within plaintiffs works since they are indeed "original creative writings', and as such, can hardly be compared in the same light as a "Blue Vodka Bottle", as in the case of *Ets-Hokin*.

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

Scenes a faire are often viewed together with the Merger doctrine, since there are only so many ways in which something like a mere **Blue bottle of Vodka** can be expressed photographically. However, plaintiff feels it would be advisable to at least point out what part of plaintiffs work is questionable and a mere scene a faire instead of making blanket scenes a faire statements where (10) ten individual and copyrighted songs are at issue, without pointing out any scene or delineating which parts of a written chorus line are original to plaintiff and which parts or elements belong to the public domain.

Even the defendants took a stab at claiming that the entire hip hop music market is based on stereotypical scenes of drug life, partying, sex, free love, protecting turf, engaging in street talk, demanding respect, male bravado etc., and that all these scenes are a part of typical hip hop scenes a faire. Perhaps, but plaintiffs creative and protected expressions contain little if any of the above described "scenes a faire".

Even so, counsel for defendants even mischaracterizes the actual "scenes a faire" traditionally found in hip hop music. **(See: Wikipedia, the free encyclopedia, Hip Hop, below** :

> **"Hip hop is an entire lifestyle that consistently incorporates diverse elements of ethnicity, technology, art and urban life. Hip hop has often been credited with helping to reduce inner city gang violence by replacing physical violence with hip hop rap battles, and hip hop music has begun to appeal to a broader demographic. Many hip hop artists today like Talib Kweli, Mos Def, Dilated Peoples, Dead Prez, Blackalicious, and Jurassic 5 emphasize messages of verbal skill, unity, or activism instead of messages of violence, material wealth and misogyny. (See: Wikipedia.org)**

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

Indeed, hip hop is much more than mere 'gangster rap", and this plaintiffs songs are not all gangster rap songs.  Hip hop and Gansta Rap are vastly different as a matter of fact and law.  For instance,

1.) There is a love song, (Everybody's Talking),

2.) A party song, (Smoke, Drink),

3.) A violent song, (Shoot Ta Kill),

4.) A song about an addict, (I'm A Maniac),

5.) Another party song, (Tear the Roof Off),

6.) A battle song, (I'm A King),

7.) Another drug addict song, (I'm so High),

8.) A sexy party song, (Slow Neck),

9.) Another battle song, (Wish a Mutha Fugga Would)

10.) And a Club hype song, (We Got it Poppin).


However, every schoolchild knows that more music genres than just Hip hop or rap exploit "party songs", "violence songs", "drug addiction songs", "sexually provocative songs", etc. Thus, in no case is there *only one way* of expressing any or all the above works, as a matter of fact and law.

This plaintiffs chorus lines and every word that proceedeth from this plaintiffs mouth and emanates from his pen, is highly protected copyright expression. *(See: Harper & Row v. Nation Enterprises, 471 U.S. 539 (1985).*

*"Mr. Ford's verbatim reflections are original expression protected by copyright". The majority in that court noted that "Copyright attaches to*

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

*expression, not facts or ideas". It concluded that, to avoid granting a copyright monopoly over the facts underlying history and news, "expression" in such works must be confined to its barest elements,--"the ordering and choice of words themselves". The Court determined that defendant; Nation had taken "what was essentially the heart of the book". (See Nation, supra). Likewise, in Meerpol v. Nizer, 560 f. 2d 1061, 1071 (CA2 1977), infringement was found when only 1% (one-percent) of the infringing work was prominently featured.*

Also in the Nation case, the Court reiterated that "infringement of copyright must be based on a taking of literary form, as opposed to ideas or information contained in a copyrighted work". This plaintiff's chorus line, sequence and word selection are indeed considered "literary form". The question here is: how much of plaintiff's chorus lines can be found within the body of the allegedly infringing chorus lines of the defendants.

In protecting literary works/form, it takes more than a word for word appropriation of substantial portions of an authors work. Otherwise a plagiarist could avoid infringement by immaterial variations. *(See Nichols v. Universal Pictures Corp., 45 F. 2d 119, 121 (CA2 1930).* It is the particular selection and arrangement of ideas, as well as a given specificity in the form of their expression, which warrants protection. *(See 1 Nimmer 1.10B, at 1-73-1-74 & Chafee Reflections on The law of Copyright, 1 45 Colum. L. Rev. 503, 513 (1945).*

This plaintiff is the sole maker and sole inventor of the entire songs at issue. As such, these ideas that are contained within the body of said chorus lines reflect "genuine novelty and invention" and are fully protected against unauthorized uses. *(See: Educational Sales Programs, 317 N.Y.S. 2d at 844.)*

-motion in Limine 1

1  The uniqueness of plaintiff's expressions mandates this treatment, since no part of this record
2  compares any of plaintiff's coveted works with any work found in the public domain.
3
4  ## THE WORKS ARE ALL SIMILAR IN IDEAS, MOOD, DETAILS AND
5  ## CHARACTERIZATIONS
6
7  Probative similarity can be found within the body of all the allegedly infringing works.  See
8  below:
9  **Original Song 1: Everybody's Talking Bout Us" (plaintiff chorus line)**
10 "Everybody's talking bout us, they see its me you trust, and guys be tryin ta get with
11 you but they cant do a thing for you, Everybodys talkin bout us, they say its only lust,
12 but I am yours and you are mine, this love will last our whole lifetime"...
13
14
15 **Offending Song 1 "Let's Talk About Our Love". (Defendants chorus line)**
16 "The more they talk about our love, the more they make it obvious, the more they seem
17 so envious, how can they talk about us, when they don't know one thing about, theyre
18 just runnin their mouf, so all we do is tune them out"...
19
20 Song 1 Probative Similarities.  Both works are about a couple in love who are being
21 discussed by unknown others. This reality is expressed in the chorus lines of both
22 works. Both works talk about how the lovers ignore the unknown others. The titles are
23 virtually identical.  Thus, the mood is identical.  The details are identical since both
24 works speak of 'unknown people talking about' their love affair.  The characterizations
25 are also the same.  Same ideas.  Same theme.  Probative of Derivation.

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

**Original Song (2) "Smoke, Drink, Cuss, Fight".  Performed By The Rowdy Boyz**

"We gone smoke, drink, cuss, fight, stab, shoot cuz we wildin tonight, we gone roll the dice, wit cash in the pot, somebody getting rocked, somebody gettin dropped".

**Offending Song (2) "I Smoke, I Drink".  Performed By Roy Jones and The Body Head Bangers**

"I smoke I drink, Im supposed to stop but I cant, Ima dog, I love hoes, and Im addicted to money cars and clothes"

**Offending Song (2a) "Smoke By Maself".  Performed By The Ying Yang Twins.**

"I smoke by myself, drink by myself, fuck these hoes by ma gotdamn self".

Song 2 & 2a Probative Similarities : Both works are directly about smoking and drinking and being wild in general.  The titles are virtually identical.  The identical expression occurs in the chorus lines of both works.  The same words are used in expressing this chorus line.  These occurrences appear in offending song 2 and 2a. Therefore, the mood, details and characterizations are virtually identical and appear in both allegedly infringing works as paraphrase which is evident. Same ideas are present here.  Probative of Derivation.

**Original Song (3) "Shoot To Kill".  Performed by The Rowdy Boyz**

-motion in Limine 1

"If I gotta shoot I shoot ta kill, gotta keep it real, send them threats, gonna get wet, me and ma homeys packin steel, If I gotta shoot I shoot ta kill, glock is concealed, loose lips sink ships, leavin em slumped behind the wheel, If I gotta shoot I shoot ta kill, up on the hill, thugs die, mamas cry, people always tryin to steal, If I gotta shoot I shoot ta kill, dey wont I will, keep a clip, neva slip, gotta make sure they pay them bills"...

**Offending Song (3) "Eminems Battle Song" Performed By Eminem**"If I cant shoot you, Ima hafta kill you by spittin, ballin motha fuckas, my ruckas aint written, when my bullets miss, ma words keep hittin, if you like pain, then that's what your getting"...

**Offending Song (3) "Welcome To The South".  Performed By YoungBuck**

"Gold grills, coupe devilles, sittin on 20 20's, the dirty dirty baby, show em how the south do, we pop pills, shoot to kill, you know what we bout, and on behalf of g-unit, welcome to the south".

Song 3& 3a Probative Similarities: Both works employ the idea of shooting to kill in the chorus lines.  Song 3 however declares a slight twist by implying that bullets are lyrics. Song 3 & 3a both appear to be based on plaintiff's earlier work.  Songs3 & 3a, although expressing the same idea of "shooting to kill", whether it be lyrics or bullets, have entirely different and seemingly unrelated titles.  Both works carry virtually the same expression.  The mood is the same.  The details are the same in that the chorus line phrase of "shooting to kill", whether by lyrics or bullets, is only a slight deviation from the main idea of plaintiffs chorus, and appears in both works; therefore the characterizations are the same as well.  Same ideas.  Probative of Derivation.

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

**Original Song Title (4) "I'm A Maniac" Performed By The Rowdy Boyz**

Ima maniac, I cant keep out of the zone, I spend my nights on the phone, my triger fingas on the chrome, Ima maniac, nobody knows but me, and everywhere that I go, there be demons callin me, Im a maniac, my mind is almost gone, these streets is my home, the only thing that I own, Ima maniac, and quick to lose control, I got a hole in my soul, its filled with diamonds and gold."

**Offending Song (4) "Break Bread" Performed By Ludacris**

"Heyyy, Im a maniac, go and tell the whole world mr. pain is back, so go get them thangs out, you better lock up your house, and tell the cops they let the animals out".

Song 4 Probative Similarities: Both works are about a man who is a maniac for certain reasons. Both works contain virtually the same expression. Offending song 4 however, uses n entirely different title than plaintiffs, even though the literal expression is the same. Both expressions occur in the chorus lines of the works. However, the details, mood and characterizations are virtually the same. Ideas are the same. Probative of Derivation.

**Original Song Title (5) "Tear The Roof Off". Performed By The Rowdy Boyz"**

"Lets tear the roof off, make it jump, make it pump, make it crunk through the trunk".

**Offending Song (5) "We On Fire" Performed By Lloyd Banks**

"Tear the roof off this mothafucka, light the roof on fire, we getting loose up in this mothafucka, light the roof on fire"...

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

<u>Song 5 Probative Similarities</u>:  both songs express the act of tearing the roof off in a party atmosphere.  Both songs employ the same words/phraseology.  Song 5 uses an entirely different title than the original, while retaining the same chorus line expression. Both expressions occur in the chorus lines of the works.  The mood, details and characterizations are identical in both works. Ideas are the same as well.  Probative of Derivation.

**Original Song (6) "Kings In The City" Performed By The Rowdy Boyz**

"We the kings in the city rock the block and the club, and everywhere that we go, they be showin us love, we the kings in the city, sportin hoodies as crowns, from a long line of hustlers, and we all get down, we the kings in the city, makin money wit mikes, cruisin through your town, on fancy motor bikes, we the kings in the city, crushin lords and princes, makin midnight moves with mercedes benzes".

**Offending Song (6) "Im A King" Performed By T.I.**

"Im a king, bank rolls in the pockets of my jeans, you pussy niggas couldn't see me in your dreams, im a king, top topic of all your magazines, im a king, rememberI can get your block knocked off, im a king, bentley coupe with the top chopped off, im a king, im connected nationwide, but in the south im a king, just respect it and keep my name out your mouth".

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

<u>Song 6 Probative Similarities</u>: The titles to the two songs are virtually identical.  The chorus lines are virtually identical and expressed using different words to paraphrase the original version.  Both songs talk about expensive automobiles in the chorus lines.  Both songs speak about "the block" within both chorus lines. Both songs talk about certain types of clothing worn while so-called 'being a king".  The expressions of both works are virtually identical.  The mood, details and characterizations are the same. Same ideas.  Probative of Derivation.

**Original Song (7) "Im So High".  Performed By The Rowdy Boyz**

"Im so high, higher than the clouds in the sky, so high I could kiss the clouds in the sky".

**Offending  Song (7) "So High".  Performed By John Legend**

"Ohh this feels so crazy, how this love is blazing, baby we are so high, walkin on cloud nine, you got me up so high, so high, my shoes are scraping the sky, so high, you got me so high, my shoes are scraping the

Sky"...

<u>Song 7 Probative Similarities</u>: Both Titles are virtually identical.  Both songs speak about not only being high as the sky, literally, but figuratively imply that in both songs, they are high on a drug of some type.  Offending song 7 however makes his version more expressive of a love affair as the main difference in the two expressions.  Same mood although the details are different in places.  Same ideas.  Probative of Derivation.

**Original Song (8) "Slow Neck" Performed By The Rowdy Boyz**

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

"Can you slow neck, to your knees will you drop, take the wood in yo hands lick it like a lollypop, can you slo neck sixty eight sixty nine, drink it dry to the bone like yo favorite wine, gime slow neck strawberrys on ice, if you go down once will you go down twice, gime slow neck, and don't move too fast, make me feel so good that I want it to last".

**Offending Song (8) "Slow Motion". Performed By Juvenile**

"Skull, slow motion for me, slow motion for me, move it slow motion for me, slow motion for me, slow motion for me, move it slow motion for me, uh, I like it like that, she workin that back, I don't know how to act, slow motion for me, slow motion for me, slow motion for me, move it slow motion for me".


Song 8 Probative Similarities: Both songs use the word "slow" in the title. Skull is an Ebonics word for a woman going down on a male. The original songs entire idea is based on this theory, and so is defendants offending version. The expressions of both works are virtually the same idea wise. The word "slow" appears several times within the body of defendant's chorus line. The Chorus lines are also virtually identical. Same ideas. Same mood. Same details. Same characterizations. Probative of Derivation.


**Original Song (9) "Wish a MuthaFugga Would." Performed By The Rowdy Boyz**

"We wish dem muthafuggas would, try ta come on this block, cause we them real thugs thas hard to stop, we wish dem motha fuggas would, try to come to tha table runnin a

-motion in Limine 1

1   stable, just because they think they strong and they able, we wish them mothafuggas

2   would."

3   **Offending Song (9) "The Heat". Performed By Lil Wayne**

4   "I shoot arm leg, leg, arm head, the heater burner bruiser on my hip this year, I shoot,

5   arm leg, leg, arm head, I wish a motha fugga would trip this year".

6

7

8   <u>Song 9 Probative Similarities</u>: Both works employ the phrase "wish a mutha fugga

9   would" within the chorus lines of both works. Both works speak of how a gang of

10  thugs or gangsters would protect their turf in any situation, culminating this thought to

11  declare how much they "wish a mutha fugga would"...The expression of both works is

12  virtually the same as a direct paraphrase, as are the others. A different title is used by

13  defendants in masking the allegedly offending chorus line. Same ideas. Same mood

14  and details as well as characterizations. Probative of Derivation.

15

16  **Original Song (10) "We Got It Poppin". Performed By The Foundation**

17  "Who got it poppin, we got it poppin, shorty on the dancefloor an she aint stoppin, who

18  got it poppin, we got it poppin, all the way to brooklyn shorty got it locked down, who

19  got it poppin, we got it poppin"...

20

21

22

23  **Offending Song (10) "Lets Get It Poppin". Performed By Fat Joe**

24  "Its 2 up in the mornin girl, and the dj playin that song, now what chu gone do, im gon

25  get it poppin, what chu gone do, Im gon get get get it poppin"...

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

<u>Song 10 Probative Similarities</u>: Both songs contain the exact same title. Both songs speak about a club atmosphere, dancing, and girls. Both works are virtually the same expression, only paraphrased to mask the infringement. Same mood is present, along with details and characterization. Ideas the same. Probative of Derivation.

## MEMORANDUM OF LAW

Although all the above song expressions may appear to be mundane or average or commonplace to the outside viewer, they are still, as a matter of fact and law, original to this plaintiff.

The surreptitious and highly prejudicial propositions of the defendants which claims plaintiffs works to be mere "common place" expressions or scenes a faire, utterly fail to restate the law.

Originality may *indeed* be found in taking the commonplace and making it into a new combination or arrangement. *(See: Apple Computer, Inc. vs. Microsoft Corp., 35 F. 3d 1435, 1446 (9th Cir. 1994) United States v. Hamilton, 583 F. 2d 448, 451 (9th Cir. 1978), (Kennedy, J.)*

As that court stated:

> *"The particular sequence in which an author strings a significant number of unprotectible elements can itself be a protectible element". Each note in a scale, for example, is not protectible, but a pattern of notes in a tune may earn copyright protection. But it is not true that any combination of unprotected*

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

*elements automatically qualifies for copyright protection.    Our case law suggests, and we hold today, that a combination of unprotectible elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work". (See: Satava v. Lowry, (9th Cir. 3/20/2003) & (Feist v. Rural Tel.)*

The United States copyright does not issue Copyright registrations for unoriginal works or "short phrases", as defendants have attempted to imply in their motion papers. Defendants imply that perhaps plaintiff's songs and chorus lines are merely short phrases like *"I Love New York",* which would be the type of short phrase ineligible for protection by U.S. Copyright laws, as a matter of fact and law.  In fact, that's all the phrase says is *"IIIIIIIIIII love New York".*

Not one of plaintiff's chorus lines contains this type of short phrase.  If they did, The United states Copyright Office would never have issued a Registration Certificate. Such antics have no place in this litigation. *(See: Copyright Circulars 32 & 34).*

"The question, therefore, is whether defendant took from plaintiffs works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such popular music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff." *(See: Arnstein v. Porter).*

If two works are indeed dissimilar enough to be termed "different ideas", then presumably, a Court would have little difficulty concluding that they were.

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

1   However, plaintiff's expression of ideas exactly mirrors defendant's expression of

2   ideas, as a matter of fact and law.    Written and fixed lyrics of chorus lines are original

3   expression, as a matter of fact and law as well. *(See: 1 M. Nimmer, supra note 23,*

4   *1.08).* "An idea, if it is reduced to written form, is sufficiently a writing to be eligible

5   for protection as such".

6

7

8   Furthermore, "Substantial Similarity is ultimately defined as "substantial similarity not

9   only of the general ideas, but of the expression of those ideas as well.    *(See: Gaye v.*

10  *Gillis, 167 Supp. 416 (D. Mass. 1958).*

11

12  For example, in *Nutt v. National Inst. Inc. For the Improvement of Memory, 31 F. 2d*

13  *236 (2nd cir. 1929),* the Second Circuit held that a copyright in a series of lectures on

14  memory improvement was infringed by the defendants similar series of lectures.

15

16  The Court stated:

17

18      *"A comparison of appellant's lectures with the copyrighted lectures shows*
        *similarity and copying of the association, presentation, and combination of*
19      *the ideas and thought which go to make up the appellees literary*
        *composition.    Such appropriation and use of them is an unlawful*
20      *infringement.    The infringement need not be a complete or exact copy.*
        *Paraphrasing or copying with evasion is an infringement, even though there*
21      *may be little or no conceivable identity between the two".*

22  Likewise, the Court thus found a copyright infringement even <u>without</u> an analysis of the

23  substantial similarity in the actual language of the lectures, thereby coming close to

24  protecting ideas themselves.    The court merely emphasized the similarity in the

25  underlying theme of the lectures, similar treatment of ideas and topics and identical

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

associations and key words as well s the use of the same manner of approach and general treatment. *(See: Harper House Inc., v. Thomas Nelson, Inc., Copyright L. Dec. (CCH) P26, 203 (C.D. Cal. 1987).*

Likewise, in *Boissan v. Banian, decided 12/3/ 2001*, that Court frowned upon any narrow tests for copyright infringement. It instructed courts to actuallly account for the protectible elements of works as well as the overall look and feel brought about by the creators arrangement of unprotectible elements.

## HIGH DEGREE OF ACCESS SHOWN

At least one Court has stated that "where a high degree of access is shown, we require a lower standard of proof of substantial similarity. *(See: Three Brothers Music Corp. v. Bolton, 212 F. 3d 477, 485 (9th Cir. 2000).* The "Inverse Ratio Doctrine" applies to this case. *(See: 2 Nimmer 143.4 at 634 quoted in Kroft, 562 F. 2d at 1172.*

These defendants have not conceded such access in the face of overwhelming evidence. *(See Amended Complaint, par. 89, pg. 25 thru 26).*

## ANY PHRASE IS PROTECTED IF IT IS ORIGINAL TO THE MAKER AND CREATIVELY WRITTEN AND ARRANGED

The Phrase *"UH OH"*, a short phrase, garnered copyright protection in *Santrayll v. Burrell.* The mere utterance of the phrase '*Uh Oh"*, by the defendant in *Santrayll v.*

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

*Burrell* caused a finding of infringement since *"Uh Oh"* was copyrighted expression of the plaintiff and the offending work repeated it 4 times in a repetitive rhythm for one measure.

Literary works are defined in *17 USC 101* of the *1976 Copyright Act* as works "expressed in words, numbers, or other verbal or numeric symbols or indica, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied.

Accordingly, with titles, the Courts are clear. "We agree that the title, in itself, is not subject to copyright protection. We think, however, that the title of a copyrighted work should be taken into account when the same title is applied to a work copied from it". *(See: Withol v. Wells, 231 F. 2d 550 (7th Cir. 1956).*

In this case, probative similarities have been shown as well as overwhelming proof of direct access to plaintiff's works. Plaintiff will seek a ruling and an evidentiary hearing on these matters.

In conclusion, it is become clear that this plaintiff will not receive a fair and equitable hearing unless the defendants recognize that Music, like computer software programs and art objects, is not capable of ready classification into only five or six constituent elements; music is comprised of a large array of elements, some combination of which is protectible by copyright.

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

In Three Boys, the Court upheld a jury finding of substantial similarity based on the combination of five otherwise unprotectible elements:

(1.) The Title Hook phrase, (including the lyric, rhythm, and pitch).

(2.) The shifted cadence,

(3.) The instrumental figures,

(4.) The verse chorus relationship; and

(5.) The fade ending. *(See: Three Boys 212 F. 3d at 485).*

Other Courts have taken into account *additional* components of musical compositions, including melody, harmony, rhythm, pitch, tempo, phrasing, structure, chord progressions, and lyrics. *(See Ellis v. Diffie, 177 F. 3d 503, 506 (6th Cir. 1999) & Cottrill v. Spears* where the Court analyzed and compared the idea, phraseology, lyrics, rhythm, chord progressions, melodic contours, structures and melodies. *(But See Also: Tisi v. Patrick, 97 F. Supp. 2d 539, 543 (S.D.N.Y. 2000); Damiano v. Sony Music Ent., Inc. 975 F. Supp. 623, 631 (D. N.J. 1996); Sylvestre v. Oswald, 1993 WL 179101, at 4 (S.D.N.Y. May 18, 1993); Inter-song-USA v. CBS, Inc., 757 F. Supp. 274, 280 (S.D.N.Y. 1991) & Stephanie J. Jones, Music Copyright in Theory and Practice: An Improved Approach for Determining Substantial Similarity, 31 Duq. L. Rev. 277, 294-95 (1993).*

Furthermore, before a Court or a defendant can unilaterally declare any parts of the plaintiff's expression "scenes a faire", the Court or defendant must examine whether "motive" similarities that plaintiff attributes to copying could actually be explained by

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

the commonplace presence of the same or similar "scenes a faire" motives within the relevant field of defendants allegedly infringing works. Copyright is reserved only for "originators' or "makers' or he to whom anything owes its origins. *(See: The Trademark Cases and Burrow-Giles).*

Wherefore, plaintiff seeks a ruling from this Court that a "high degree" of Direct Access has been shown by overwhelming facts, and an order explaining how the "inverse ratio doctrine" is to be applied in this case, and a ruling that plaintiff's chorus lines are indeed protected by the United States Copyright Act Registration as a literary work of original expression.

Plaintiff also seeks a ruling concerning which parts of his chorus lines do not belong to the plaintiff as original expression and are instead mere "scenes a faire", on a song by song basis, by outlining the scenes a faire "motives" and comparing the same or similar scene a faire, if found within the body of defendants chorus lines and any other and further relief this Court deems just and proper.

RESPECTFULLY SUBMITTED;

CERTIFICATE OF SERVICE

I HEREBY DECLARE UNDER PENALTY OF PERJURY, THAT THE FOREGOING IS A TRUE AND CORRECT ACCOUNT OF THE HEREIN STATED ALLEGED MATTERS AND EVENTS,

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218

AND THAT THE FOLLOWING ENTITIES WERE MAILED A CORRECT COPY OF THE

AFFOREMENTIONED ON OR ABOUT _____ 11th _____ MAY, 2007

BY: _____

ROBERT R. PRUNTE' (APPEARING PRO SE)

JENNER & BLOCK C/O MR. MICHAEL DESANCTIS, 601 THIRTEENTH STREET, N.W. SUITE

1200 SOUTH, WASHINGTON, D.C. 20005 & CLERK'S OFFICE, THE UNITED STATES

COURTHOUSE OF THE DISTRICT OF COLUMBIA, F. BARRETT PRETTYMAN BUILDING, 333

CONSTITUTION AVENUE, N.W. WASHINGTON, D.C. 20001

Dated this 11th day of May, 2007

By: _____

ROBERT R. PRUNTE'

(APPEARING PRO SE')

614 WYANOKE AVENUE

BALTIMORE, MARYLAND

21218

-motion in Limine 1

ROBERT R. PRUNTE'
614 WYANOKE AVENUE
BALTIMORE, MARYLAND 21218