1  ROBERT R. PRUNTE' (APPEARING PRO SE')
   614 WYANOKE AVENUE
2  BALTIMORE, MARYLAND 21218
   410.323.2483  301.514.4028
3

4                    UNITED STATES DISTRICT COURT

5                    FOR THE DISTRICT OF COLUMBIA

6

7  ROBERT R. PRUNTE,                    )    Case No.: No. 1:06-cv-00480-PLF
                                        )
8            Plaintiff,                 )
                                        )
9       vs.                             )
                                        )
10 UNIVERSAL MUSIC GROUP, ET AL, ATLANTIC )
                                        )
11 RECORDING CORP. ET AL, SONY (BMG) &  )
                                        )
12 VIACOM INTERNATIONAL ET AL,          )
                                        )
13          Defendant                   )
                                        )

RECEIVED

JUL 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

14

15        **PLAINTIFF'S MEMORANDUM OF LAW REGARDING THE**

16   **INAPPROPRIATENESS OF SUMMARY JUDGEMENT ON THE ISSUE**

17              **OF SUBSTANTIAL SIMILARITY**

18

19  Comes now the plaintiff with this Memorandum of Law regarding the inappropriateness of

20  Summary Judgment on the issue of Substantial Similarity. As an initial matter however, plaintiff

21  feels it necessary to briefly describe the "inappropriateness" of defense counsel's gross

22  misrepresentations of the law as well as the nature of this case. For instance, in counsel's

23  moving paper's, no mention is ever made of "the chorus lines", only lyrics, when plaintiff has

24  never alleged mere lyrics to be at issue. Plaintiff's complaint alleges copying of "Chorus Lines".

25

1   Counsel always refers to mere "lyrics" in its moving papers while failing to mention the

2   "smoking gun" chorus line" elements of this case which they have not and cannot directly face.

3   The facts are too glaring. Facts of direct access among top ranking record industry executives &

4   facts probative of copying plaintiff's works.

5

6   This line of reasoning or legal proposition being made by the defendants concerning mere

7   "lyrics" is cryptic and evil since this case is NOT about mere lyrics, but is instead about the

8   "original chorus lines" of high-powered commercial songs which have netted the recalcitrant

9   defendants multiple millions.

10

11  Their "lyrics" proposition presented to this Court is bogus and self-serving in that it opens

12  plaintiff up to be victimized by the courts. If this plaintiff and this Court allows these defendants

13  to mischaracterize the nature of the case and trivialize the issues by speaking about mere "verse

14  lyrics", then the real issues concerning the "chorus lines", "sound recordings" and "music" will

15  be blurred and overshadowed by the improper cases Counsel cites which were based on mere

16  "verse lyrics".

17

18  Mis-labeling and trivializing this case as being about mere lyrics is being objected to presently,

19  since this plaintiff has never alleged one word about mere lyrics, but instead, the carefully

20  crafted chorus lines of each song being sued about. (See First Amended Complaint as well as

21  initial Complaint).

22

23  Defendants can not ignore the myriad suspect "chorus line" elements and semantically trivialize

24  the case by speaking about mere "lyrics", without speaking about and analyzing at least (1) one

25  offending song. Every Copyright Jurist knows that lyrics are usually mere verse surplusage and

1  hardly worthy of any cognizable copyright protection, since all words are, as a matter of fact and

2  law, "as free as the air".  Counsel's constant irrelevant rants about mere lyrics is another

3  frivolous tactic being used by the desperate defendants to attempt to aid in stealing plaintiff's

4  proprietary works not for "limited times" but "for all times"..  Counsel's moving papers are

5  made patently disingenuous and off point.

7  These defendants are also well aware that as a matter of fact and law, they must allege and prove

8  independent creation as well as whatever source they claim their songs came from.  *(See:*

9  *Arnstein v. Porter)*.  These genuine and material issues of fact are not going anywhere.

10  Likewise, neither have the defendants mentioned or alleged as a defense to this action, that

11  plaintiff's works are mere public domain matter and thereby made "scenes a faire".

## PLAINTIFF'S SONG EXPRESSIONS ARE RARITIES IN HIP HOP R&B MARKETPLACE

16  In order to exhibit the rarity of the unique expressions created by the plaintiff, attached as

17  Exhibit A is the "*Public Domain Search Record*" of all titles created by the plaintiff and

18  compared against the registered songs of The United States Copyright Office.  A brief look at the

19  public domain will inform the Court of the value of plaintiff's expressions as well as provide

20  facts concerning why these defendants can not allege plaintiff's works came from another

21  source.  *(See: United States Copyright Office Registered Tiles and Songs, Exhibit A)*.

23  No scenes a faire motives have been shown and no co-relation to the public domain has been

24  alleged.  Instead, counsel chooses to speak about senseless and irrelevant matters like

25  "*Whitehead v. Paramount Pictures*, which surreptitiously seeks to inflame the Judge in this case

1  against the plaintiff instead of reaching the merits with integrity and honor.  The plaintiff is

2  certain that this Judge, in this case, was highly angered by *Whiteheads* frivolous actions in that

3  case.

4

5  Thus, plaintiff and it's case resembles *Whitehead* in no way whatsoever.  This Judge isn't being

6  sued, as in *Whitehead*.  Universal, Atlantic, Viacom and Sony (BMG) are however.  *Whitehead*

7  sued people and institutions frivolously and prolifically.  This plaintiff has not.  *Whitehead* not

8  only sued "this sitting judge", but also President Bill Clinton, Janet Reno & the Central

9  Intelligence Agency (just to name a few).  *Whitehead* was even enjoined from filing suit.  What

10  in the world does *Whitehead* have to do with the "*Substantial Similarity Analysis*" of this action?

11

12  This plaintiff is suing about the unlawful use of (14) fourteen of plaintiff's 100% original songs.

13  Counsel is merely wasting paper trying to cast *Prunte'* in a *Whitehead* light.

14

15  Counsel's memorandum supporting the Summary Judgment proposition, fails to mention even

16  (1) one song outside of "Smoke, Drink, Cuss Fight".  This will never do.  Each work is a

17  separate and distinct unit/entity and bound by the same Constitutional protections and

18  enforcement procedures.

19

20  Abundant probative evidence exists between the works that shows the defendant's copied

21  plaintiff's works indeed and that plaintiff's coveted works were the "starting point" for

22  defendants when their works were created.  There has been no independent creation alleged by

23  the defendants, nor can there be. The "idiosyncratic" presence and expression of plaintiff's

24  protected elements within the "chorus lines" of defendant's works is inexplicable and

25  inexcusable.  *(See Song list below :)*

1.  "Fire In Tha Hole" By Plaintiff &  "Fire In a Hole" By Defendants

2.   "God Pick Up The Phone" By Plaintiff & Lord, Give me a Sign, By Defendants

3.   "Im So High" By Plaintiff & "So High" By Defendants

4.   "Smoke, Drink, Cuss Fight" By Plaintiff & I Smoke, I Drink & I Smoke by Maself

5.   "Kings In The City" By Plaintiff & "I'm A King" By defendants

6.   "We Got It Poppin" By Plaintiff & "Gon Git Git Git It Poppin" By Defendants

7.    "Wish A Mutha Fuggah Would" By Plaintiff & "The Heat" By Defendants.

8.   "Strippa Girl" By Plaintiff & "In Love Wit A Stripper" By Defendants

9.   "Slow Neck" By Plaintiff & "Slow Motion" & "Getting Some" By Defendants

10.  "Everybody's Talkin Bout Us" By Plaintiff & "Talk about Our Love"—

11.  "Shoot To Kill" By Plaintiff & Battle Song & "Welcome To The South" By Defendants

12.  "Im A Maniac" By Plaintiff & "Break Bread" By Defendants

13.  First Blood By Plaintiff & "One Blood" By Defendants.

14.  "That's What's Up" By Plaintiff & "That's What's Up" By Defendants

## PLAINTIFF'S PROTECTED ELEMENTS FOUND WITHIN LYRICALLY DERIVATIVE EXPRESSIONS OF DEFENDANT'S LYRICS, MUSIC AND SOUND RECORDINGS TO CREATE UNLAWFUL DERIVATIVE WORKS

A simple side by side examination of the lyrical content of the chorus lines is essential to an understanding of how defendants targeted plaintiff's company merely to re-express highly original songs which plaintiff has been selling across the U.S.A. since 2000.  Full expert reports are being prepared presently for the first prong of the *Substantial Similarity Test*.

1   Counsel appears to be of the mistaken impression that discovery is not needed in this case and

2   neither are experts. Plaintiff disagrees and intends to address those matters as soon as possible.

3   However, such positions work to prejudice the plaintiff, who deserves his day in Court the same

4   way as the defendants do when there proprietary rights are infringed.

5   Defendants in those cases don't usually win Summary Judgments, especially when someone like

6   *Mickey Mouse* for instance needs a term extension or one of the Top Five record companies feels

7   their own precious song catalog is being infringed by *Napster* or blue collar workers from

8   Michigan.

9

10   For this reason alone, this plaintiff will not allow his works or this case to be trivialized by

11   gargantuan legal dream teams' sinister legal theories that perform as if they could work for O.J.

12   Simpson or Tony Soprano on or off TV.

13

14   All jokes aside, as the sole author of the proprietary works in question, this plaintiff's interest

15   doesn't stop there, because this level of chicanery has already allowed the defendants to steal

16   songs totaling massive dollar amounts. Such levels of theft will undoubtedly, in the long run,

17   work to stifle creativity and subdue any Constitutional Mandate to allow authors to be creative

18   and monopolize their unique expressions, for limited times.

19

20   These defendants seek to monopolize even the poor authors works, "for all times", and

21   manipulate the laws and procedures in order to achieve high levels of wicked madness and

22   unlawful exploitations.

23

24   Counsels argument and position in this entire case has been hogwash for all the reasons

25   previously stated. If counsel can't allege or prove ownership of the works its clients have been

selling so prolifically for the past 3 years, hardly can they themselves withstand a motion for Summary Judgment. Surely, Summary Judgment is a tool used in many cases by truly high-powered criminals who seek to use more criminal tactics to evade responsibility for their actions. Even so, this plaintiff is not of the opinion that Summary Judgment is Constitutional and that it violates a parties 7th Amendment right to a trial.

For this reason, surely, Summary Judgment has sometimes been a tool used in many cases by truly high-powered criminals who seek to use more quasi-legal court tactics to evade responsibility for their actions. Counsel's case in chief is frivolous and dilatory on it's face, and only the generous mercy of this Court allowed them to file such a motion prior to their ultimate demise by the hands of fate and the same mercy-laden scales of Justice.

# SIDE BY SIDE ANALYSIS EXHIBITING EVIDENCE PROBATIVE OF COPYING

In this search for probative evidence of copying, fact issues shown below must be decided. It is with a view to the Court's statements in *Nichols*, that this preliminary analysis was devised.

> *"Likewise, when a study of (2) two writings is made, and it is plain from the study  that one of them is not in fact the creation of the putative author, but instead has been copied in substantial part exactly or in transparent re-phrasing to produce essentially the story of the other writing, it infringes". (See: Nichols v. Universal Pictures Corp., 11930, 45 F. 2d 119 & Warner Brothers Pictures v. Majestic Pictures Corp, 2 Cir. 70 F. 2d 310, 311).*

## SONG ONE: "FIRE IN THE HOLE"

TITLE: *"FIRE IN THE HOLE"*- (PLAINTIFF, ARTISTS, ROWDY BOYZ)

**TITLE: "*FIRE IN THE HOLE*"-(DEFENDANTS, ARTIST, BLACK ROBB)**

**PLAINTIFF**: <u>FIRE IN THA HOLE</u>-- <u>FIRE IN THA HOLE</u>--- <u>FIRE IN THA HOLE</u>-----
...OHH..<u>TAKE COVER</u>....(REPEATED OVER AND OVER AGAIN FOR 8 BARS)

**DEFENDANT(S):** NUTTIN BUT FLESH AND FRAGMENTS—YOU CANT ESCAPE—
<u>THE FIRE IN THA HOLE</u>—LOUD TALK DON'T MOVE ME, YOU AINT UNRULY—
PUNK YOU SCARED TA DEAF A DAT---<u>FIRE IN THA HOLE</u>—YOU AIN AFRAID TA
DIE, OH MY MY MY---YOU FRONTIN YOU SCARED TA DEAF A DAT---<u>FIRE IN THA
HOLE</u>—YO BOYS SCOPE IS DOPED OUT, YO WE RIDE NO WAY OUT—YALL
NIGGAS BOUT TA SEE---<u>THE FIRE IN THA HOLE</u>—LIKE CANCER BABY, YALL GON
GET TURNED INSIDE OUT WIT DAT---<u>FIRE IN THA HOLE</u>—BETTA STOP DROP AND
ROLL---AND WATCH <u>THAT FIRE IN THA HOLE</u>---

Therefore, as a matter of fact and law, it can be presumed that the probative value here points not
only to the identical expression and verbatim titles, but more directly, the plaintiff's "take cover"
chorus line ending also appearing in the ending of the defendants chorus line, but stated as "stop
drop and roll", which literally means the same thing as "taking cover". Same aesthetic appeal.
As of this writing, experts are being consulted to serve in this matter, both musically and
lyrically.

*Dr. Robert Walser* is a world renowned musicologist and highly visible in the Copyright cases.
He is a person of serious interest to plaintiff at this point, and is analyzing the songs presently.
However, plaintiff does not object to a Court selected expert as well for the purpose of this phase
of analysis, and fairness to the defendants.  However this Court can see from the side by side

comparisons, identical beginnings and endings, and verbatim expressions, what the experts will say concerning the words.

It is further alleged that the defendants made a video out of plaintiff's song and mass marketed and distributed the video as well as thousands of the Black Robb Report CD which sold tremendously.

## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK INCLUDE:

1. Title to chorus line "Fire in the Hole".

2. Sampled music transposed and time stretched to create derivative.

3. Entire expression of plaintiff's "Fire in the Hole".

4. Entire dialogue, including plaintiff's "take cover" statement at end of chorus. Defendants work states: "stop, drop and roll".

5. Rhythm, Melody, Harmony, Chords, Phraseology, Motif, Time Signature. Sound recording sampled.

6. Chorus line in its entirety, as well as the hook, "Fire in the Hole".

7. Same Aesthetic appeal.

8. Sentiment

9. Imagery

10. Identical personification, Allusion, Symbolism---Gothic Elements—Allegory—Ambiguity

11. Same Assonance—Diction—Hyperbole—Syntax—Tone

12. Repetition of same Theme

1    13. Same Climax same Resolution.

2    14. Same figurative language.

3    15. Idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

4    16. Reasonable jurors would find substantial similarity of ideas and expression.

5

6    ## SONG TWO: ""GOD, PICK UP THE PHONE"

7

8    **TITLE:** *"GOD PICK UP THE PHONE"-* (PLAINTIFF, ARTISTS, ROWDY BOYZ)

9    **TITLE:** *"LORD, GIMME A SIGN"-*(DEFENDANTS, ARTIST, DMX)

10

11   **PLAINTIFF**: "GOD—PICK UP THE PHONE. LOVE IS ALMOST GONE—EVERYTHING

12   WOULD CHANGE TODAY IF YOU WOULD JUST PICK UP THE PHONE---GOD, PICK

13   UP THE PHONE WE IN THE DANGER ZONE, MAMAS CRYIN OUT AT NIGHT

14   BECAUSE THEIR BABIES IS GONE---GOD, PICK UP THE PHONE, IF WE THE PEOPLE

15   YOU OWN—REMEMBER WHAT YOU SAID ABOUT THAT FIELD OF DRY BONES---

16   GOD---PICK UP THE PHONE, YOU HEAR THESE MOANS AND GROANS, WE

17   GETTING BEAT DOWN DAILY WIT STICKS AND STONES"...

18

19   **DEFENDANTS**: LORD GIMME A SIGN—LET ME KNOW WHATS ON YO MIND—LET

20   ME KNOW WHAT IM GONNA FIND—ITS ALL THE TIME—SHOW ME HOW TA

21   TEACH THA MIND---SHOW ME HOW TO REACH THE BLIND---LORD GIMME A SIGN-

22   --SHOE ME WHAT I GOTS TO DOTO GET ME CLOSER TO YOU—CAUSE IMA GO

23   THROUGH WHATEVER YOU WANT ME TO---JUST LET ME KNOW WHAT TO DO---

24   LORD GIMME A SIGN----

25

1   Therefore, as a matter of fact and law, it can be presumed that the probative value here points not

2   only to the identical expression and near-verbatim titles, but more directly, both works are asking

3   God to do something for the speaker—howbeit while speaking to a hip hop audience---and not a

4   gospel one. Such a reality is too idiosyncratic to be mere coincidence.  Defendants work is

5   nothing more than a mere derivative of plaintiff's original expression.

7   In reality, the literal expression of "God, Pick up the Phone" is the exact same as "Lord, Gimme

8   A Sign", both metrically and sonically, musically and aurally.  Also, God, Pick Up The Phone

9   and Lord, Gimme a Sign" both share 5 syllables each as well as the same aesthetic appeal.

11  It is further alleged that the defendants made a video out of plaintiff's song and mass marketed

12  and distributed the video as well as the album of DMX, which sold tremendously.

## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK
## INCLUDE:

1.  Closely Paraphrased song titles.

2.  Sampled music transposed and time stretched to create derivative.

3.  Entire expression of plaintiffs "God, Pick up the Phone" is found within the "Lord,
    Gimme a Sign" expression.

4.  Entire dialogue, especially the idiosyncratic appearance of this expression found within
    the body of defendant's song which is not coincidence.

5.  Same Melody, Phraseology, Motif. Sampled sounds.

6.  Chorus line in its entirety, as well as the hook, expressed the same.

7.  Exact Same Aesthetic appeal.

8. Identical Sentiment

9. Imagery

10. Identical personification, Allusion, Symbolism---Gothic Elements—Allegory—Ambiguity

11. Same Assonance—Diction—Hyperbole—Syntax—Tone

12. Same Repetition of same Theme

13. Same Climax same Resolution.

14. Same Figurative language. Both refer to a supernatural being.

15. Identical syllables. "God, Pick up the Phone" is 5 syllables and so is "Lord, Gimme a Sign".

16. Reasonable jurors would find substantial similarity of ideas and expression.

## SONG THREE: "IM SO HIGH"

**TITLE: *"IM SO HIGH"*- (PLAINTIFF, ARTISTS, ROWDY BOYZ)**

**TITLE: *"SO HIGH"* – (DEFENDANT, ARTIST, JOHN LEGEND)**

**PLAINTIFF**: "IM SO HIGH—HIGHER THAN THE CLOUDS IN THE SKY—SO HIGH I COULD TOUCH THE SKY---SO HIGH I COULD KISS THE SKYY

**DEFENDANT(S)**: "YOU'VE GOT ME UP SO HIGH, SO HIGH MY SHOES ARE SCRAPING THE SKY, SO HIGH –YOU'VE GOT ME UP SO HIGH—OHH...MY SHOES ARE SCRAPING THE SKY"...

Therefore, as a matter of fact and law, it can be presumed that the probative value here points not only to the identical expression and verbatim titles, but more directly, the defendants "shoes are scraping the sky" while the plaintiff is so high it could "kiss the sky".

It is further alleged that the defendants made a video out of plaintiff's song and mass marketed and distributed the video as well as thousands of the John Legend CD which sold tremendously.

## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK INCLUDE:

1. Title is verbatim to plaintiffs "I'm So High".

2. Entire expression of plaintiffs "I'm So High".

3. Entire dialogue, including plaintiff's "touch the sky" and "kiss the sky" statements paraphrased.

4. Phraseology, Motif, Time Signature. Sampled sound recording.

5. Chorus line in its entirety, as well as the hook, "I'm so High".

6. Same Aesthetic appeal.

7. Sentiment

8. Imagery

9. Identical personification, Allusion, Symbolism--Allegory—Ambiguity

10. Diction—Hyperbole—Syntax—Tone

11. Repetition of same Theme

12. Same Climax same Resolution.

13. Same figurative language.

14. Idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

15. Reasonable jurors would find substantial similarity of ideas and expression.

## SONG FOUR: "SMOKE, DRINK, CUSS FIGHT"

**TITLE:** *"SMOKE, DRINK, CUSS FIGHT"*- (PLAINTIFF, ARTISTS, ROWDY BOYZ)

**TITLE:** *"I SMOKE, I DRINK & SMOKE, DRINK"*-(DEFENDANTS, ARTISTS, YING

**YANG TWINS—ROY JONES JR).**

**PLAINTIFF**: <u>WE GONE SMOKE, DRINK CUSSS FIGHT, STAB SHOOT, CUZ WE</u>

<u>WILDIN TONIGHT---WE GONE PASS THE DICE—ITS MONEY IN THE POT---</u>

<u>SOMEBODY GETTING DROPPED—SOMEBODY GETTING ROCKED"..(REPEAT 2 X)</u>

**DEFENDANT(S):** *YIN YANG TWINS VERSION*: I SMOKE BY MYSELF---DRINK BY

MYSELF---FUCK THESE HOES BY MY GOTDAMN SELF"..

**DEFENDANT,** *ROY JONES JR. VERSION*: " I SMOKE, I DRINK, IM SUPPOSED TO STOP

BUT I CANT—IM A DOG---I LOVE HOES---AND IM ADICTED TO MONEY CARS AND

CLOTHES---

Therefore, as a matter of fact and law, it can be presumed that the probative value here points not

only to the identical expression and verbatim titles, but more directly, the plaintiff's entire literal

expression of "Smoke, Drink, Cuss Fight", has been supplanted by defendants mere derivative

creations.

It is further alleged that the defendants made videos out of plaintiff's song and mass marketed and distributed the video as well as thousands of the CD released on Roy Jones Jr. and the Yin Yang Twins, which sold tremendously.

## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK INCLUDE:

1. Title and expression of plaintiff's "smoke, drink, cuss fight" song.
2. Sampled music transposed and time stretched to create derivative.
3. Entire expression of plaintiff's "Smoke, Drink" song.
4. Entire dialogue, as expressed in chorus line.
5. Chorus line in its entirety, as well as the hook.
6. Same Aesthetic appeal.
7. Sentiment
8. Imagery
9. Identical personification, Allusion, Symbolism---Allegory---Ambiguity
10. Same Assonance—Diction—Hyperbole—Syntax—Tone
11. Repetition of same Theme
12. Same Climax same Resolution.
13. Same figurative language.
14. Idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.
15. Reasonable jurors would find substantial similarity of ideas and expression.

## SONG FIVE: "KINGS IN THE CITY"

**TITLE: - (PLAINTIFF "KINGS IN THE CITY, ARTISTS, ROWDY BOYZ)**

1  **TITLE: - (DEFENDANTS, "IM A KING" ARTIST, T.I.)**

2

3  **PLAINTIFF**: "WE THE KINGS IN THE CITY, ROCK THE BLOCK AND THE CLUB AND

4  EVERYWHERE THAT WE GO THEY BE SHOWIN US LOVE—WE THA KINGS IN THA

5  CITY—SPORTIN HOODIES AS CROWNS—FROM A LONG LINE A HUSTLAS THAT

6  ALL GET DOWN----WE DA KINGS IN THA CITY MAKIN MONEY WIT MIKES—

7  CRUISIN THRU YO TOWN—ON FANCY MOTORBIKES----WE DA KINGS IN THA

8  CITY---CRUSHIN LORDS AN PRINCES---MAKIN MIDNIGHT MOVES IN MERCEDES

9  BENZES".....

10

11 **DEFENDANT(S)**: "IM A KING—BANK ROLLS IN THE POCKETS OF MA JEANS—IM A

12 KING---YOU PUSSY NIGGAS COULDN'T SEEE ME IN YO DREAMS—IM A KING—

13 TOP TOPIC OF ALL YO MAGAZINES---IM A KING---REMEMBER I CAN GET YOUR

14 BLOCK KNOCKED OFF---IM A KING—A BENTLEY COUPE WIT THA TOP CHOPPED

15 OFF---IM A KING---IM CONNECTIN NATIONWIDE BUT IN THE SOUTH---IM A KING---

16 JUST RESPECT IT AND KEEP MA NAME OUTTCHA MOUTH"...

17

18 Therefore, as a matter of fact and law, it can be presumed that the probative value here points not

19 only to the identical expression and near- verbatim titles, but more directly, the plaintiff's "Kings

20 In The City" appears to have become a derivative work in the fore of the defendants "Im A

21 King", which was made the theme song of a major Motion Picture distributed by Paramount

22 Pictures. Also, a video was published and distributed worldwide as well. The sales of the CD

23 relating to the motion picture and the artist T.I. were astronomical.

24

25

## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK
## INCLUDE:

1.  Title and expression to chorus line "Kings in the City".

2.  Sampled music and transposed notes time stretched to create derivative.

3.  Entire expression of plaintiff's "Kings in the City" found in "I'm A King".

4.  Entire dialogue, including plaintiff's statement about "cars" which supposedly is a sign of "urban kingship"..I.e. Plaintiff: "Makin midnight Moves in Mercedes Benzes". Defendants: "Bentley coupe with the top chopped off".

5.  Phraseology, Motif. Chorus line in its entirety, as well as the hook, "Kings in the City".

6.  Same Aesthetic appeal. Sentiment. Imagery

7.  Identical personification, Allusion, Symbolism—Allegory—Ambiguity

8.  Same Assonance—Diction—Hyperbole—Syntax—Tone

9.  Repetition of same Theme

10. Same Climax same Resolution.

11. Same figurative language.

12. Idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

13. Reasonable jurors would find substantial similarity of ideas and expression.


## SONG SIX: "WE GOT IT POPPIN"

TITLE: *"WE GOT IT POPPIN"*- (PLAINTIFF, ARTISTS, THA DELEGATION)

TITLE: *"WE GONE GET GET IT POPPIN"*-(DEFENDANTS, ARTIST, FAT JOE).

**PLAINTIFF**: "WHO GOT IT POPPIN---WE GOT IT POPPIN—BROOKLYN GOT IT LOCKED IN—WE GOT IT POPPIN—SHORTY WIT THA NICE THIGHS—I KNOW YOU WANNA STOP US BUT WE AIN STOPPIN---WHO GOT IT POPPIN---WE GOT IT POPPIN---MA PEOPLES IN ST LOUIS—MA PEOPLE OUT IN DETROIT----WHO GOT IT POPPIN---SHORTY ON THA DANCE FLOOR—BUT SHE AINT STOPPIN"....

**DEFENDANTS**: "IT'S 2 UP IN THA MORNIN—GURL—AND THE DJ PLAYIN THAT SONG---NOW WHATCHA GON DO---IMA GET GET GET IT POPPIN---WHATCHA GON DO---IM GON GET GET GET IT POPPIN----ITS 2 UP IN THA MORNIN NOW—AND IM TRYIN TO GO WITCHU---GURL WHAT CHU GON DO---IM GON GET GET GET IT POPPIN---WHATCHA GON DO---IM GON GET GET GET IT POPPIN"....

Therefore, as a matter of fact and law, it can be presumed that the probative value here points not only to the identical expression and completely verbatim titles, but more directly, both songs speak of being in a club environment and both songs speak of women in their respective chorus lines.

It is further alleged that the defendants made a video out of plaintiff's song and mass marketed and distributed the video as well as thousands of the Fat Joe CD's which sold tremendously.

## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK INCLUDE:

1. Identical Title to chorus line "Get It Poppin".

2. Sampled music and transposed notes time stretched to create derivative.

3. Entire expression of plaintiff's "Who Got It Poppin".

4. Entire dialogue, including plaintiffs words describing club life as well as a girl or a woman of a promiscuous nature.

5. Phraseology, Motif.

6. Chorus line in its entirety, as well as the hook, "Who Got It Poppin".

7. Same Aesthetic appeal.

8. Sentiment

9. Imagery

10. Identical personification, Allusion, Symbolism—Allegory—Ambiguity

11. Same Assonance—Diction—Hyperbole—Syntax—Tone

12. Repetition of same Theme

13. Same Climax same Resolution.

14. Same figurative language.

15. Idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

16. Reasonable jurors would find substantial similarity of ideas and expression.

## SONG SEVEN: "WISH A MUTHA FUGGA WOULD"

**TITLE: "WISH A MUTHA FUGGA WOULD"- (PLAINTIFF, ARTISTS, ROWDY BOYZ)**

**TITLE: "*THE HEAT*"-(DEFENDANTS, ARTIST, LIL WAYNE)**

**PLAINTIFF**: "<u>WE WISH DEM MUTHA FUGGAS WOULD</u>—TRY TA SET UP A SHOP—ON THIS BLOCK—CUZ WE DEM REAL THUGS THAS HARD TA STOP—<u>WE WISH DEM MUTHA FUGGAS WOOULD</u> TRY TA COME TO THA TABLE RUNNIN A STABLE—JUS BECAUSE THEY THINK THEY STRONG AN THEY ABLE—<u>WE WISH</u>

1  DEM MOTHA FUGGAS WOULD---TRY TA FUCK WIT OUR SKRILLA—WE GOT THAT

2  THRILLA---U BOUT TA MAKE A DATE WIT A KILLA---<u>WE WISH DEM MUTHA</u>

3  <u>FUGGAS WOULD</u>---TRY STATIN DEY CASE—IN OUR FACE---WE MAKE EM

4  DISAPEAR –WITOUT A TRACE—<u>WE WISH DEM MUTHA FUGGAS WOULD</u>---

5

6  **DEFENDANT(S):** "I SHOOT YOUR ARM, LEG, LEG ARM HEAD—THE HEATER

7  BURNER BRUISER ON MA HIP THIS YEAR---I SHOOT YOUR ARM, LEG, LEG, ARM

8  HEAD---<u>I WISH A MUTHA FUGGA WOULD</u> TRIP THIS YEAR"---

9

10  Therefore, as a matter of fact and law, the expression of the defendants is a mere "condensation"

11  of the threat that the speaker "wishes a mutha fugga would".   It can thus be presumed that the

12  probative value here points only to the identical expression and aesthetic value found within the

13  defendant's chorus lines and plaintiff's.

14  It is further alleged that the defendants made a video out of plaintiff's song and mass marketed

15  and distributed the video as well as thousands of the Lil Wayne Carter Album CD which sold

16  tremendously.

17

18  ## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK

19  ## INCLUDE:

20

21  1. Titles are totally different in the two songs; however, the punch lines of "Wish a Mutha

22     Fugga Would" occur in both songs as a chant.

23  2. Sampled music transposed and time stretched to create derivative.

24  3. Entire expression of plaintiff's *Wish a Mutha Fugga Would*.

25

4. Entire dialogue which speaks in a threatening manner to all listeners that the speaker *"Wishes a Mutha Fugga Would"* do anything the speaker doesn't like and will retaliate with gun play if forced.

5. Same Aesthetic appeal. Sentiment. Imagery

6. Identical personification, Allusion, Symbolism—Allegory—Ambiguity—Alliteration.

7. Same Assonance—Diction—Hyperbole—Syntax—Tone

8. Repetition of same Theme

9. Same Climax same Resolution.

10. Same figurative language.

11. Idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

12. Reasonable jurors would find substantial similarity of ideas and expression.

13. Minor deletion employed to mask the theft.

## SONG EIGHT: "STRIPPER GIRL"

**TITLE: *"STRIPPER GIRL"*- (PLAINTIFF, ARTISTS, ROWDY BOYZ)**

**TITLE: *"IM IN LOVE WIT A STRIPPER"*-(DEFENDANTS, ARTIST, T-PAIN)**

**PLAINTIFF**: "STRIPPER GIRL STRIPPER GIRL KEEP STRIPPIN—STRIPPER GIRL—YOURE WELL KNOWN AROUN THA TOWN---STRIPPER GURL STRIPPER GIRL –BIG TIPPIN---STRIPPER GURL---YOU SLANG BOODY BY THE POUND----STRIPPER GURL STRIPPER GIRL---SLOW STRIPPIN—STRIPPER GIRL-----MAKE IT BOUNCE TO THA SOUND...STRIPPER GURL STRIPPER GIRL---- POLE SWINGIN---STRIPPER GURL—ROLL IT ROUND AND AROUND"....

**DEFENDANTS**: "<u>IM IN LOVE WIT A STRIPPER</u>—SHE POOPIN---SHE ROLLIN---SHE CLIMBIN THAT POLE---<u>IM IN LOVE WIT A STRIPPER</u>---SHE TRIPPIN SHE PLAYIN--- IM NOT GOIN NOWHERE GIRL IM STAYIN---<u>IM IN LOVE WIT A STRIPPER</u>

Therefore, as a matter of fact and law, it can be presumed that the probative value here points not only to the identical expression and verbatim titles, but more directly, the plaintiff's love affair with a stripper girl followed closely by defendants claim to love the same stripper type girl. Defendants even describe her as she manipulates the "pole", as do the plaintiff's in their expression of "pole swingin", versus defendants "pole climbin".

It is further alleged that the defendants made a video out of plaintiff's song and mass marketed and distributed the video as well as thousands of the T-Pain CD which sold tremendously.

## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK INCLUDE:

1. Verbatim titles and expressions to both songs about loving an appreciating a "Stripper Girl".
2. Sampled music transposed and time stretched to create derivative.
3. Entire expression of plaintiff's "Stripper Girl".
4. Entire dialogue, including plaintiff's reference to the stripper girls agility on "the pole".
5. Rhythm, Melody, Harmony, Chords, Phraseology, Motif, Time Signature.
6. Chorus line in its entirety, as well as the hook, "Stripper Girl".
7. Same Aesthetic appeal.
8. Sentiment

9. Imagery

10. Identical personification, Allusion, Symbolism---Gothic Elements—Allegory—
   Ambiguity

11. Same Assonance—Diction—Hyperbole—Syntax—Tone

12. Repetition of same Theme

13. Same Climax same Resolution.

14. Same figurative language.

15. Same idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

16. Reasonable jurors would find substantial similarity of ideas and expression.

## SONG NINE: "SLOW NECK"

**TITLE: *"SLOW NECK"*- (PLAINTIFF, ARTISTS, ROWDY BOYZ)**

**TITLE: *"SLOW MOTION &*-(DEFENDANTS, ARTIST'S JUVENILE & SHAWNNA).**

**PLAINTIFF**: "<u>CAN YOU SLOW NECK</u>, TO YOUR KNEES WILL YOU DROP, TAKE THA

WOOD IN YA HANDS LICK IT LIKE A LOLLYPOP---<u>CAN U SLO NECK</u> –WIT 68  69---

DRINK IT DRY TO THA BONE LIKE YA FAVORITE WINE---<u>GIMMME SLO NECK</u>—

WIT STRAWBERRIES ON ICE---IF YOU GO DOWN ONCE WILL YOU GO DOWN

TWICE----<u>GIMME SLO NECK</u>----AN DON'T MOVE TOO FAST---YOU MAKE ME FEEL

SO GOOD THAT I WANT IT TO LAST"....

**DEFENDANTS**: JUVENILE: "SKULLL----<u>SLOW MOTION FOR ME</u>—<u>SLOW MOTION</u>

<u>FOR ME</u>—MOVE IT SLOW MOTION FOR ME----<u>SLOW MOTION FOR ME</u>—<u>SLOW</u>

<u>MOTION FOR ME</u>---MOVE IT SLOW MOTION FOR ME---UHHHH----I LIKE IT LIKE

DAT---SHE WORKIN DAT BACK....I DON'T KNOW HOW TO ACT---<u>SLOW MOTION</u>

<u>FOR ME---SLOW MOTION FOR ME---SLOW MOTION FOR ME---SLOW MOTION FOR</u>

<u>ME---MOVE IT SLOW MOTION FOR ME</u>"...

**DEFENDANT**: SHAWNNA: "I WAS GETTING SOME HEAD---GETTING GETTING

SOME HEAD---I WAS GETTING SOME HEAD---GETTING GETTING SOME HEAD---I

WAS GETTING SOME HEAD—GETTING SOME HEAD---I WAS GETTIN SOME HEAD—

GETTING GETTING SOME HEAD---I WAS WITH THA KINDA GIRL THAT MAKE

YOUR TOES CURL"...

Therefore, as a matter of fact and law, both songs by the defendants depict XXX sexual

situations, where one merely states that it prefers "slow motion" sex from a doggy style position-

--while the other chooses to state bluntly, without use of the simile of "Slow Neck", that the

speaker was having oral sex, ebonically, by "gettin some head"—"gettin gettin some head",

instead of mere "Slow Neck".

It is further alleged that the defendants made videos out of plaintiff's song and mass marketed

and distributed the video as well as thousands of the Juvenile and Shawnna albums where the

songs "Slow Motion" and "Getting Some" appear on the CD's, which sold tremendously.

## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK
## INCLUDE:

1. Title to chorus line "Slow Neck", is only expressed a subtle 50% as defendants song is

   entitled "Slow Motion", yet it expresses scandalous sexual situations in the same candid

manner as plaintiff's work, "Slow Neck", yet suggests the sexual position is "doggy style", since defendants stated "She's work-in that back", in a feeble effort to mask the initial taking of "Slow Neck" relating to oral sex maneuvers and not rear-entry type sexual positions.  However, Shawnna's "Getting Some"—bluntly expresses the concept of having oral sex---by stating the speaker was "getting some head".

2. Sampled music transposed and time stretched to create derivative.

3. Entire expression of plaintiff's song about oral pleasures captured within expression of defendants song titled "Slow Motion", yet changed to reflect a doggy style sexual position---while retaining the utterance of "Skull", where the published lyrics exclaim the speaker says: "UUhhhhh" and sometimes the word "Skulll", in the chorus chant.  The word "Skull", ebonically, means oral sexual pleasures. Shawnnas "Getting Some" bluntly expresses the "Slow Neck" concept of oral sex by merely stating "I was getting some Head"…

4. Entire dialogue, including plaintiff's wish that the female sexual participant do whatever she does---in a slow manner---.

5. Rhythm, Melody, Harmony, Chords, Phraseology, Motif, Time Signature.

6. Chorus line in its entirety, as well as the hook, partially, but meant to express the same thing.

7. Same Aesthetic appeal. Sentiment. Imagery

8. Identical personification, Allusion, Symbolism—Allegory—Ambiguity

9. Same Assonance—Diction—Hyperbole—Syntax—Tone

10. Repetition of same Theme

11. Same Climax same Resolution.

12. Same figurative language.

13. Same idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

14. Reasonable jurors would find substantial similarity of ideas and expression.

## SONG TEN: "EVERYBODIES TALKIN BOUT US"

**TITLE:** *"EVERYBODIES TALKIN BOUT US"*- (PLAINTIFF, ARTISTS, ROWDY BOYZ)

**TITLE:** *"TALK ABOUT OUR LOVE"*-(DEFENDANTS, ARTIST, KANYE WEST & BRANDY NORWOOD)

**PLAINTIFF**: "EVERYBODIES TALKIN BOUT US—THEY SEE ITS ME YOU TRUST AN GUYS BE TRYIN TA GET WITH YOU BUT THEY CANT DO A THING FOR YOU— EVERYBODIES TALKIN BOUT US—THEY SAY ITS ONLY LUST—BUT I AM YOURS AND YOU ARE MINE—THIS LIVE WILL LAST OUR WHOLE LIFETIME"....

**DEFENDANTS**: "THE MORE THEY TALK ABOUT OUR LOVE—THE MORE THEY MAKE IT OBVIOUS---THE MORE THEY SEEM SO ENVIOUS---HOW CAN THEY TALK ABOUT OUR LOVE—WHEN THEY DON'T KNOW---WHEN THEY DON'T KNOW ONE THING ABOUT (US)—AND THEN THEY JUST RUNNIN THEY MOUTHS—ALL WE DO IS TUNE THEM OUT".....

Therefore, as a matter of fact and law, it can be presumed that the probative value here points not only to the identical expression and near-verbatim titles, but more directly, the plaintiff's song and its attendant expression, appears perfectly within the chorus line of defendants song as well. Both songs appear to speak about the "other" people who choose to talk and gossip about the love affair being had by the speaker and some unknown other person.  The video really

personifies the total expressive meaning of the work by showing crowds of gossipers being faded in and out of scenes.

It is further alleged that the defendants made a video out of plaintiff's song and mass marketed and distributed the video as well as thousands of the Kanye West/ Brandy CD's which sold tremendously.

## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK INCLUDE:

1. Both Titles mean the same thing and are thus synonymous with each other.".

2. Sampled music transposed and time stretched to create derivative.

3. Entire expression of plaintiff's "Everybodies Talkin Bout Us" appears as a perfect paraphrase within the chorus line of defendant's work entitled "Talk About Our Love".

4. Entire dialogue, including plaintiff's expression about the nature of the gossipers who surround these lovers.  Both songs achieve this same expressive message.

5. Rhythm, Melody, Harmony, Chords, Phraseology, Motif, Time Signature.

6. Chorus line in its entirety, as well as the hook, "Everybodies Talkin Bout Us" versus "Talk About Our Love".

7. Same Aesthetic appeal. Sentiment. Imagery

8. Identical personification, Allusion, Symbolism—Allegory—Ambiguity

9. Same Assonance—Diction—Hyperbole—Syntax—Tone

10. Repetition of same Theme

11. Same Climax same Resolution.

12. Same figurative language.

13. Idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

14. Reasonable jurors would find substantial similarity of ideas and expression.

## <u>SONG ELEVEN: "SHOOT TO KILL"</u>

**TITLE: *"SHOOT TO KILL"*- (PLAINTIFF, ARTISTS, ROWDY BOYZ)**

**TITLE: *"WELCOME TO THE SOUTH & EMINEM BATTLE SONG"*-(DEFENDANTS,**

**ARTISTS, YOUNGBUCK & EMINEM)**

**PLAINTIFF**: "<u>IF I GOTTA SHOOT I SHOOT TA KILL</u>—GOTTA KEEP IT REAL---SEND

THEM THREATS—GONNA GET WET---ME AN MA HOMEYS PACKIN STEEL---<u>IF I

GOTTA SHOOT I SHOOT TA KILL</u>---GLOCK IS CONCEALED—LOOSE LIPS SINK

SHIPS—LEAVIN EM SLUMPED BEHIND THE WHEEL---<u>IF I GOTTA SHOOT I SHOOT

TA KILL</u>----UP ON THA HILL---THUGS DIE, MAMAS CRY—PEOPLE ALWAYS TRYIN

TA STEAL---<u>IF I GOTTA SHOOT I SHOOT TA KILL</u>---DEY WONT I WILL---KEEP A

CLIP, NEVA SLIP, GOTTA MAKE SURE DEY PAY DEM BILLS"---

**DEFENDANT**:  ("EMINEM'S BATTLE SONG") "IF I CANT SHOOT YOU, IMA HAFTA

KILL YOU BY SPITTIN---BALLIN MOTH FUCKAS MY RUCKAS AINT WRITTEN---

WHEN MY BULLETS MISS, MA WORDS KEEP HITTIN---IF YOU LIKE PAIN, THEN

THAT'S WHAT YOURE GETTING"—(REPEAT 2X)

**DEFENDANT**: "WELCOME TO THE SOUTH" PERFORMED BY YOUNGBUCK: "GOLD

GRILLS, COUPE DEVILLES, SITTIN ON 20-20---IT'S THE DIRTY DIRTY BABY---SHOW

EM HOW THE SOUTH DO—WE POP PILLS---SHOOT TO KILL---YOU KNOW WHAT
WE BOUT---AND ON BEHALF OF G-UNIT---WELCOME TO THE SOUTH"---

Therefore, as a matter of fact and law, it can be presumed that the probative value here points
directly to defendants using plaintiff's work as a starting point for their own since the same
"aesthetic appeal" has been achieved in both works, effectively lifting the coveted expression of
plaintiff for unlawful purposes.

It is further alleged that the defendants made a video out of plaintiff's song and mass marketed
and distributed the video as well as thousands of the Youngbuck & Eminem CDs which sold
tremendously.

## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK
## INCLUDE:

1.  Different titles used in order to mask the "Shoot to Kill" motif surreptitiously lifted from
    plaintiffs "Shoot to Kill" song.
2.  Sampled music transposed and time stretched to create derivative.
3.  Entire expression of plaintiff's song "Shoot to Kill".
4.  Dialogue, all relating to the "Shoot to Kill" motif.
5.  Rhythm, Melody, Harmony, Chords, Phraseology, Motif, Time Signature.
6.  Chorus line expression in its entirety, as well as the hook, "Shoot to Kill".
7.  Same Aesthetic appeal. Sentiment.  Imagery
8.  Identical personification, Allusion, Symbolism—Allegory—Ambiguity
9.  Same Assonance—Diction—Hyperbole—Syntax—Tone
10. Repetition of same Theme

11. Same Climax same Resolution.

12. Same figurative language.

13. Same idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

14. Reasonable jurors would find substantial similarity of ideas and expression.

## SONG TWELVE: "I'M A MANIAC"

**TITLE: *"I'M A MANIAC"*- (PLAINTIFF, ARTISTS, ROWDY BOYZ)**

**TITLE: *"BREAK BREAD"*-(DEFENDANTS, ARTIST, LUDACRIS)**

**PLAINTIFF**: "IM A MANIAC—I CANT KEEP OUT OF THE ZONE, I SPEND MA NITES ON THE PHONE, MA TRIGGA FINGAS ON THE CHROME---CUZ IM A MANIAC—MA MIND IS ALMOST GONE—THESE STREETS IS MA HOME, THE ONLY THING THAT I OWN---IMA MANIAC---AND NOBODY KNOWS BUT ME, EVERYWHERE THAT I GO, THERE BE DEMONDS CALLIN ME----IMA MANIAC, AND QUICK TO LOSE CONTROL—GOT A HOLE IN MA SOUL---FILLED WITH DIAMONDS AND GOLD"—

**DEFENDANT**: "HEYYY---IMA MANIAC---GO AND TELL THE WHOLE WORLD MR. PAIN IS BACK---SO GO GET THEM THANGS OUT---YOU BETTER LOCK UP YOUR HOUSE---AND TELL THE COPS THEY LET THE ANIMALS OUT"---(REPEAT 2X)

Therefore, as a matter of fact and law, it can be presumed that the probative value here points not only to the identical expression, but more directly, the plaintiff's "Maniac" motif, which is repeated by defendants in the offending work.  Both works contain allusions to weapons. Plaintiff: "Ma trigger fingers on the chrome" versus Defendants: "Go and get them thangs out".

It is further alleged that the defendants made a video out of plaintiff's song and mass marketed and distributed the video as well as thousands of the Ludacris CD containing the song "Break Bread", which sold tremendously.

## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK INCLUDE:

1. Titles to chorus lines are entirely different "I'm a Maniac", versus "Break Bread".

2. Sampled music transposed and time stretched to create derivative.

3. Entire expression of plaintiff's "I'm a Maniac" is found in "Break Bread" song.

4. Similar dialogue, including plaintiff's statements about guns.

5. Rhythm, Melody, Harmony, Chords, Phraseology, Motif, Time Signature.

6. Chorus line expression in its entirety, as well as the hook, "I'm a Maniac", since "Break Bread" opens with the statement, "Heyyy—I'm a Maniac", repeatedly and in the chorus lines.

7. Same Aesthetic appeal. Sentiment. Imagery

8. Identical personification, Allusion, Symbolism—Allegory—Ambiguity

9. Same Assonance—Diction—Hyperbole—Syntax—Tone

10. Repetition of same Theme

11. Same Climax same Resolution.

12. Same figurative language.

13. Same idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

14. Reasonable jurors would find substantial similarity of ideas and expression.

# SONG THIRTEEN: "FIRST BLOOD"

**TITLE: *"FIRST BLOOD"*- (PLAINTIFF, ARTISTS, ROWDY BOYZ)**

**TITLE: *"ONE BLOOD"*-(DEFENDANTS, ARTIST, THE GAME)**

**PLAINTIFF**: "IMA DRAW FIRST BLOOD---IMA SAY MA FLOW—GIVIN YOU WHAT YOU NEED---LEADIN YOU TO THA FLOOR—IMA DRAW FIRST BLOOD—IMA SPIT MA FLOW---IMA FINISH WHAT THEY STARTED---DEN LEAVE EM WIT DEY ARMS BARELY DEPARTED"---(REPEAT 2X)

**DENENDANTS:** "ONE BLOOD—ONE BLOOD---ONE BLOOD (REPEAT 17X)

Therefore, as a matter of fact and law, it can be presumed that the probative value here points not only to the identical expression and verbatim titles, but more directly, the plaintiff's decision to use the phrase "first blood" in its chorus line while defendants decided to use only the word "Blood", replacing the word First with One, resulting in the One Blood chanting of defendants song. In any event, the two expressions mean the same thing. One Blood---First Blood--- obviously a veiled attempt to mask the theft.

It is further alleged that the defendants made a video out of plaintiff's song and mass marketed and distributed the video as well as thousands of The Game CD's, which sold tremendously.

# PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK INCLUDE:

1. Verbatim title to chorus line "First Blood", slyly replacing it with "One Blood".

2. Sampled music transposed and time stretched to create derivative.

3. Entire expression of plaintiff's "First Blood".

4. Entire dialogue, having the audacity to chant repeatedly the hookline of "First Blood" paraphrased but still having the same force and effectiveness.

5. Rhythm, Melody, Harmony, Chords, Phraseology, Motif, Time Signature and Tempo.

6. Chorus line in its entirety, as well as the hook, "First Blood".

7. Same Aesthetic appeal. Sentiment. Imagery

8. Identical personification, Allusion, Symbolism—Allegory—Ambiguity

9. Same Assonance—Diction—Hyperbole—Syntax—Tone

10. Repetition of same Theme

11. Same Climax same Resolution.

12. Same figurative language.

13. Same idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

14. Reasonable jurors would find substantial similarity of ideas and expression.

15. Deletion employed to mask the theft.

## SONG FOURTEEN: "THAT'S WHATS UP"

TITLE: *"THAT'S WHATS UP"*- (PLAINTIFF, ARTISTS, ROWDY BOYZ)

TITLE: *"THAT'S WHATS UP" DEFENDANTS,* ARTIST, YO GOTTI/YOUNG GOTTI)

**PLAINTIFF**: "IF YOU REALLY GUCCI DOWN—THAS WHUS UP..WELL KNOWN ROUN TOWN'THAS WHATS UP--COP WEED BY THE POUND—THAS WHUS UP— GOT 24S ON THA GROUN…THAS WHUS UP----AN IF U RECOGINIZE GAME…THAS WHUS UP--TOAST TOP CHAMPAGNE—THAS WHUS UP---FLUSH HATAS DOWN THA DRAIN…THAS WHUS UP---EVERYDAY GETTING BRAIN"---

**DENENDANTS**: "YOU SEE ME NIGGA SAY WHUS UP---WANNA BE ME NIGGA---SAY WHUS UP---BOUT YO DOLLA—POP YA COLLA---DEN YOU HOLLA---DATS WHUS UP----SEE ME SHAWTY---SAY WHUS UP---WANA FUCK ME SHAWTY –THAS WHUS UP THAS WHUS UP

Therefore, as a matter of fact and law, it can be presumed that the probative value here points not only to the identical expression and verbatim titles, but more directly, the plaintiff's decision the phrase "That's What's Up" in its chorus line has been closely followed by defendants as both works speak about money and girls.

It is further alleged that the defendants made a video out of plaintiff's song and mass marketed and distributed the video as well as thousands of Yo Gotti's CD's, which sold tremendously.

### PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK INCLUDE:

1.  Verbatim title to chorus line *"That's What's Up"* ".

2.  Sampled music transposed and time stretched to create derivative.

3.  Entire expression of plaintiff's *"That's What's Up"* chorus line.

4.  Entire dialogue.

5.  Rhythm, Melody, Harmony, Chords, Phraseology, Motif, Time Signature and Tempo.

6. Chorus line in its entirety, as well as the hook, *"That's What's Up"*.

7. Same Aesthetic appeal. Sentiment. Imagery

8. Identical personification, Allusion, Symbolism—Allegory—Ambiguity

9. Same Assonance—Diction—Hyperbole—Syntax—Tone

10. Repetition of same Theme

11. Same Climax same Resolution.

12. Same figurative language.

13. Same idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

14. Reasonable jurors would find substantial similarity of ideas and expression.

The above examples of derivative versions of plaintiff's original songs, namely, the chorus lines allegedly re-created into derivative works by the defendants, did not occur by mere accident, chance, or independent creation, since a high degree of access has been shown, and because the songs occupy the <u>same hip hop marketplace</u>, targeted for the <u>same hip hop audience</u> and because the defendants have taken "<u>*the very heart of plaintiff's original songs*</u>", merely to exploit their success without compensating plaintiff.  This is unacceptable.

# COUNSEL INTENTIONALLY MISREPRESENTS CASES IT CITES IN ITS MOVING PAPERS

Counsel for the defendants has the gall and audacity to espouse a so-called Memorandum on the Appropriateness of Summary Judgment, claiming their proposition is supported by *Sturdza v. United Arab Emirates*.  Such a proposition is supported by *Sturdza* only if there are "no" similarities of "protected elements" found within the two works.

1   Surely, counsel's elementary attempt to use semantics to blur the real issues is not being well-

2   taken. For example, counsel mischaracterizes the issues by stating the case is about mere lyrics.

3   This case is about *"the very heart of plaintiff's works"* being taken unlawfully and not mere song

4   lyrics, but the sound recording and sample as well as the music.

5

6   Counsel forgets the timeless rule and founding principle which must be applied before

7   embarking upon any substantial similarity analysis:

> *"The test for infringement is of necessity vague. In the case of*
> *"verbal works" it is well settled that although the "proprietors"*
> *monopoly extends beyond an exact reproduction of the words, there*
> *can be no copyright in the "ideas" disclosed but only in their*
> *"expression". Obviously, no principle can be stated as to when an*
> *imitator has gone beyond copying the "idea" and has borrowed its*
> *"expression". Decisions must inevitably be ad hoc."...*

13   *See: Arnstein v. Porter, 1946*

14

15   Counsel also forgot to mention *Sturdza's* ultimate declaration concerning "Summary Judgment".

16   (See Sturdza below:

17

18

> *("[S]ummary judgment*
> *... is a practice to be used sparingly in copyright infringement*
> *cases."). Of course, summary judgment for a copyright defendant*
> *remains appropriate if the works are so dissimilar as to protectible*
> *elements that no reasonable jury could find for the plaintiff on the*
> *question of substantial similarity. See Tao v. Freeh, 27 F.3d 635, 638*
> *(D.C. Cir. 1994) (setting forth general summary judgment rule);*
> *Williams v. Crichton, 84 F.3d 581, 589 (2d Cir. 1996) (affirming*
> *grant of summary judgment for copyright defendant because "any*
> *similarity in the theme of the parties' works relates to the*
> *unprotectible idea of a dinosaur zoo," and "[o]nce one goes beyond*
> *this level of abstraction, the similarity in themes disappears").*
> *Finally, and of particular importance to this case, "[b]ecause*

*substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation." A.A. Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 977 (2d Cir. 1980);  see also Wickham v. Knoxville Int'l Energy Exposition, Inc., 739 F.2d 1094, 1097 (6th Cir. 1984)...*

Sturdza also said, with regard to the test for substantial similarity:

*To sum up, we think Demetriou's design, though different in some ways from Sturdza's (as the district court thought), is sufficiently similar with respect to both individual elements and overall look and feel for a reasonable jury to conclude that the two are substantially similar.  Unless the jury "set out to detect the disparities" between the two works, it might well "be disposed to overlook them, and regard their aesthetic appeal as the same." Boisson, 273 F.3d at 272 (internal quotation marks and citation omitted).  Because Sturdza's copyright claim presents an extremely close question, and because "summary judgment has traditionally been frowned upon in copyright litigation," A.A. Hoehling, 618 F.2d at 977, we will reverse the grant of summary judgment and remand for trial.*

It doesn't take much imagination for one to co-relate the meaning of the Sturdza Court with the realities of this case.


## TOLIVER V. SONY MUSIC ENTERTAINMENT. INC.,


In its Memorandum, Counsel cites Toliver v. Sony Music Entertainment, Inc., and claimed it cited the *Toliver* case because summary judgment was supposedly granted due mainly to the fact that the "lyrics were set forth in the complaint" and because "the lyrics were dissimilar in structure and substance". Although this may be a truism, it has no bearing on this case, which reaches beyond mere lyrics and into the realms of the expression of the *"heart of the work"*.

1

2   Perhaps this is the reason why counsel for defendants disingenuously continues to speak about

3   mere "lyrics".  In *Toliver*, that case was about mere "Lyrics" and not the actual chorus lines,

4   where protected expression is more strongly expressed. (See Toliver's so-called *lyrics* below:

5

6           Lucy Liu . . . with my girl, Drew . . . Cameron D. and Destiny

7           Charlie's Angels, Come on

8           Uh uh uh

9           Question: Tell me what you think about me

10          I buy my own diamonds and I buy my own rings

11          Only ring your cell-y when I'm feelin lonely

12          When it's all over please get up and leave

13          Question: Tell me how you feel about this

14          Try to control me boy you get dismissed

15          Pay my own fun, oh and I pay my own bills

16          Always 50/50 in relationships

17          The shoes on my feet

18          I've bought it

19          The clothes I'm wearing

20          I've bought it

21          The rock I'm rockin'

22          'Cause I depend on me

23          If I wanted the watch you're wearin'

24          I'll buy it

25

1    The house I live in

2    I've bought it

3    The car I'm driving

4    I've bought it

5    I depend on me

6    (I depend on me)

7    All the women who are independent

8    Throw your hands up at me

9    All the honeys who makin' money

10    Throw your hands up at me

11    All the mommas who profit dollas

12    Throw your hands up at me

13    All the ladies who truly feel me

14    Throw your hands up at me

15    Girl I didn't know you could get down like that

16    Charlie, how your Angels get down like that

17    Girl I didn't know you could get down like that

18    Charlie, how your Angels get down like that

19    Tell me how you feel about this

20    Who would I want if I would wanna live

21    I worked hard and sacrificed to get what I get

22    Ladies, it ain't easy bein' independent

23    Question: How'd you like this knowledge that I brought

1    Throw your hands up at me

2    Girl I didn't know you could get down like that

3    Charlie, how your Angels get down like that

4    (repeat until fade)

5

6

7    Counsels argument about *Toliver* is disingenuously cited indeed.

8

9    # DAMIANO V. SONY

10

11    Likewise, Counsel for the defendants cite *Damiano v. Sony* for the proposition that "lyrics which

12    are scattered throughout a song are not "substantially similar". This instant case is far from

13    being about "scattered lyrics", but is instead about the chorus line section of plaintiff's coveted

14    works. Such chorus lines are repeated constantly by defendants and are not expressed in any

15    scattered manner.

16

17    In *Damiano*, the plaintiff in that case unilaterally and intentionally altered the **Legendary Bob**

18    **Dylan's lyrics** and manipulated his own lyrics merely to institute an infringement action, and

19    also in order to manipulate the Court. In that case, Rule 11 sanctions proceedings were

20    commenced against that plaintiff. This plaintiff's case has nothing to do with fraud of any type.

21    Counsel merely chooses to play "games of danger" with this Court by espousing cases which

22    offer nothing towards the merits of this case.

23

24    At this juncture plaintiff feels it appropriate to remind Counsel of F.R.C.P. Rule 11(b) as it

25    embarks on its dilatory journey of frivolity. Counsel is hereby admonished to cite cases for their

     relevancy to this case, with a view to the spirit of those cases in connection with this one, and

Memorandum of summary judgment inappropriateness

ROBERT R. PRUNTE' (PRO SE')
Page 42 7/6/2007

1   SUITE 1200 SOUTH, WASHINGTON, D.C. 20005; **LEVINE, SULLIVAN, KOCH & SCHULTZ**, C/O

2   MICHAEL D. SULLIVAN, 1050 SEVENTEENTH STREET, N.W., SUITE 800, WASHINGTON, D.C.

3   20036-5514 & **THE UNITED STATES COURTHOUSE** OF THE DISTRICT OF COLUMBIA, F.

4   BARRETT PRETTYMAN BUILDING, 333 CONSTITUTION AVENUE, N.W. WASHINGTON, D.C.

5   20001, C/O, CLERK'S OFFICE.

6

7   BY:

8   ROBERT R. PRUNTE'

9   614 WYANOKE AVENUE

10  BALTIMORE, MARYLAND 21218

11  1.410.323.2483   / 1.301.514.4028

12

13

14

15

16

17

18

19

20

21

22

23

24

25