O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY J. ZELLA and ROSS CRYSTAL, individuals, ) ) ) | CASE NO.: CV 06-7055 ABC (JTLx) |
| Plaintiffs, ) ) | **ORDER RE: CBS DEFENDANTS' MOTION TO DISMISS** |
| v. ) ) | |
| THE E.W. SCRIPPS COMPANY, an ) Ohio Corporation, SCRIPPS ) NETWORKS, INC., a Delaware ) corporation, TELEVISION FOOD ) NETWORK G.P., a general ) partnership, HARPO PRODUCTIONS,) INC., an Illinois corporation, ) KING WORLD PRODUCTIONS, INC., a) Delaware Corporation, CBS ) TELEVISION DISTRIBUTION GROUP, ) a unit of CBS Corporation, ) which is a Delaware ) corporation, WATCH ) ENTERTAINMENT, INC., a New York) Corporation ) ) | |
| Defendants. ) ) | |

1    Pending before the Court is Defendants CBS Television

2    Distribution, King World Productions, Inc. and Harpo Productions,

3    Inc.'s (collectively the "CBS Defendants'") Motion to Dismiss

4    Plaintiffs' Jeffery J. Zella and Ross Crystal ("Plaintiffs'") First

5    Amended Complaint, filed on August 24, 2007.  Plaintiffs opposed on

6    December 3, 2007, and the CBS Defendants replied on December 10, 2007.

7    The Court finds this matter appropriate for resolution without oral

8    argument and VACATES the January 7, 2008 hearing date.  See Fed. R.

9    Civ. P. 78; Local Rule 7-15.  The Court GRANTS Defendants' motion and

10   DISMISSES the CBS Defendants from this case as discussed below.

11   **I.    INTRODUCTION AND FACTUAL BACKGROUND**

12       Plaintiffs work in the television and radio media.  (Compl. ¶

13   25.)  In November 2001, Plaintiff Crystal contacted Judy Girard, then

14   the president of the Food Network, about a television show Plaintiffs

15   had created.  (Id. ¶ 26.)  Plaintiff Crystal sent Ms. Girard a letter

16   on November 30, 2001, submitting for her consideration a copy of a

17   one-page treatment and three-page script for a television show

18   entitled Showbiz Chefs (the "Work").  (Id. ¶ 28.)  Plaintiffs obtained

19   a federal copyright registration for this treatment on December 10,

20   2001.  (Id. ¶ 29, Ex. B.)  On December 13, 2001, Ms. Girard rejected

21   Plaintiffs' idea, but did not return the copy of the treatment and

22   script to them.  (Id. ¶ 30, Ex. C.)  On November 5, 2004, the Food

23   Network launched a show called Inside Dish, with host Rachael Ray.

24   (Id. ¶ 34.)[1]  Plaintiffs believe that the success of this show sparked

25   interest in creating a syndicated talk show called Rachael Ray.  (Id.

26   ¶ 44.)  The show Rachael Ray is a one-hour show distributed by the CBS

27   _____

28       [1]Inside Dish is not the subject of the instant motion.

1  Defendants that has become a "monster hit" according to Plaintiffs.

2  (Id. ¶ 45.)

3      Plaintiffs' treatment of Showbiz Chefs indicates that it is

4  a 30-minute interview/cooking show featuring celebrities cooking
   their favorite dishes in their own kitchens.  In addition to
5  sharing their favorite recipes, celebrity guests will open their
   homes to the viewer providing a glimpse into their lifestyles.
6  Along the way, we will gain insights into their latest projects –
   books, films, television series, etc.
7
   Showbiz Chefs will be filmed on location in and around the Los
8  Angeles area and will feature a host/interviewer who will
   participate with the celebrity guest in the cooking experience.
9  A typical episode may include a quick tour of the home/grounds –
   a few surprises (such as appearances of another celebrity or
10 family member who may not necessarily be scheduled to appear on
   the episode) – or a clandestine grocery shopping trip to the
11 local market with the celebrity guest.  We inevitably adjourn to
   the kitchen where the celebrity (with the help of the host turned
12 inept but well meaning sous chef) prepares his/her favorite
   recipe.  The mood is relaxed, informal and fun.  We discuss the
13 specific ingredients as well as the history (perhaps a family
   story) behind the recipe.
14
   Showbiz Chefs final segment will feature an interview with the
15 celebrity about his/her latest project in a comfortable setting
   (somewhere on the grounds) while the host and celebrity enjoy the
16 celebrity-prepared dish.

17 (Compl. ¶ 35, Ex. A.)  Plaintiffs' also submitted to the Food Network

18 a three-page sample script for an episode that hypothetically includes

19 Ray Romano.  (Compl., Ex. A.)

20     Rachael Ray is a talk-style show that featured some episodes with

21 celebrities.  For example, Plaintiffs' Complaint mentions: (1) Episode

22 1161R with Chris Meloni in Ray's kitchen making Bloody Mary Burgers

23 and discussing Meloni's role on Law and Order: Special Victims Unit;

24 (2) Episode 1143R featuring former President Bill Clinton discussing

25 childhood obesity as he and Ray prepare a meal in Ray's kitchen; (3)

26 Episode 1154 with cook Paula Deen, the star of her own show on the

27 Food Network and the author of a number of cookbooks, featuring Deen

28 and Ray preparing Mother's Day meals; (4) Episode 1153R with late-

3

1  night talk show host Craig Ferguson, "comparing notes" on Scottish
2  cuisine; and (5) Episode 1002 with Oprah Winfrey in which they prepare
3  pizza and discuss current projects. (Id. ¶ 46.) Plaintiffs also
4  point to three additional episodes in their opposition to the CBS
5  Defendants' motion: (1) Episode 1007 showing Dr. Phil cooking in his
6  home, without Ray, and then cooking with Ray on the set; (2) Episode
7  2030 showing chef Bobby Flay in his own kitchen without Ray, then with
8  Ray on set, although they do not cook; and (3) Episode 2048 showing
9  chef Nigella Lawson in her own kitchen without Ray, and then cooking
10  on set with Ray. (Compl. ¶ 46; Declaration of Lee S. Brenner
11  ("Brenner Decl.") ¶¶ 4-10, Exs. A-G; Declaration of Allison Rohrer
12  ("Rohrer Decl.") ¶¶ 3-8, Exs. A-C.)

13      Plaintiffs allege that the elements contained in Showbiz Chefs
14  are protectable, as well as "the expressive manner in which Plaintiffs
15  selected, arranged, and combined the protectable and non-protectable
16  elements of the Work." (Compl. ¶ 51.) Plaintiffs allege that the CBS
17  Defendants had access to Plaintiffs' Work and that Rachael Ray is
18  substantially similar and infringing. (Id. ¶¶ 51, 52, 54, 55.) The
19  CBS Defendants have moved to dismiss Plaintiffs' first claim (and only
20  claim) against them for copyright infringement, arguing that, as a
21  matter of law, Showbiz Chefs does not contain protectable elements and
22  it is not substantially similar to Rachael Ray.

23  **II.  LEGAL STANDARD**

24      A Rule 12(b)(6) motion tests the legal sufficiency of the claims
25  asserted in the complaint. A Rule 12(b)(6) dismissal is proper only
26  where there is either a "lack of a cognizable legal theory" or "the
27  absence of sufficient facts alleged under a cognizable legal theory."
28  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.

1    1988);  accord Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248 (9th

2    Cir. 1997) ("A complaint should not be dismissed 'unless it appears

3    beyond doubt that the plaintiff can prove no set of facts in support

4    of his claim which would entitle him to relief.'")  In other words, a

5    complaint need not contain detailed factual allegations, but it must

6    allege facts sufficient to raise a right to relief that rises above

7    the level of mere speculation and is plausible on its face.  See Bell

8    Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 1969 (2007).  A court

9    must accept as true all material allegations in the complaint, as well

10   as reasonable inferences to be drawn from them.  See NL Industries,

11   Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); see also Russell v.

12   Landrieu, 621 F.2d 1037, 1039 (9th Cir. 1980) (finding that the

13   complaint must be read in the light most favorable to the plaintiff).

14   However, a court need not accept as true unreasonable inferences,

15   unwarranted deductions of fact, or conclusory legal allegations cast

16   as factual allegations.  See Western Mining Council v. Watt, 643 F.2d

17   618, 624 (9th Cir. 1981); Hiland Dairy, Inc. v. Kroger Co., 402 F.2d

18   968, 973 (8th Cir. 1968).

19       in ruling on a 12(b)(6) motion, a court generally cannot consider

20   material outside of the complaint (e.g., those facts presented in

21   briefs, affidavits, or discovery materials).  See Branch v. Tunnell,

22   14 F.3d 449, 453 (9th Cir. 1994).  A court may, however, consider

23   exhibits submitted with the complaint.  See id. at 453-54.  Also, a

24   court may consider documents which are not physically attached to the

25   complaint but "whose contents are alleged in [the] complaint and whose

26   authenticity no party questions."  Id. at 454.  Further, it is proper

27   for the court to consider matters subject to judicial notice pursuant

28   to Federal Rule of Evidence 201.  See Mir, M.D. v. Little Co. of Mary

1  <u>Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988).

2  **III.  THE CBS DEFENDANTS' EVIDENCE AND REQUEST FOR JUDICIAL NOTICE**

3        A.    Copies of Episodes of <u>Rachael Ray</u>

4        Generally, in ruling on a 12(b)(6) motion, a court cannot

5  consider material outside of the complaint, such as facts presented in

6  briefs, affidavits, or discovery materials.  See <u>Branch v. Tunnell</u>, 14

7  F.3d 449, 453 (9th Cir. 1994).  A court may, however, consider

8  exhibits submitted with the complaint.  See <u>id.</u> at 453-54.  Also, a

9  court may consider documents which are not physically attached to the

10 complaint but "whose contents are alleged in [the] complaint and whose

11 authenticity no party questions."  <u>Id.</u> at 454.

12       The CBS Defendants submit DVD copies of each of the <u>Rachael Ray</u>

13 episodes to which Plaintiffs refer in their Complaint, as well as the

14 episodes mentioned in Plaintiffs' Opposition, which are collectively

15 Episodes 1161R, 1143R, 1154, 1153R, 1002, 1007, 2030, and 2048.  (<u>See</u>

16 Brenner Decl. ¶¶ 4-10, Exs. A-G; Rohrer Decl. ¶¶ 3-8, Exs. A-C.)

17 Defendants also submit DVD copies of Episodes 1006 and 1012 as

18 examples of episodes in which no celebrities appear.  (Brenner Decl.

19 ¶¶ 4-5, Exs. A-B.)

20       Plaintiffs allege that the show <u>Rachael Ray</u>, as an ongoing

21 series, infringes on Plaintiffs' <u>Showbiz Chefs</u>, so the Court may

22 properly consider the content of the show as a documentary facts

23 "whose contents are alleged in [the] complaint," <u>Branch</u>, 14 F.3d at

24 454.[2]  Plaintiffs do not object to either the authenticity of the

25 _____

26       [2]The "content" of the ongoing <u>Rachael Ray</u> show are its episodes,
   which the Court may properly consider under the rule in <u>Branch</u>.
27 Plaintiffs concede that the episodes provide the infringing content by
   citing specific episodes in their Complaint as examples of
28                                                     (continued...)

1   copies of the episodes submitted by the CBS Defendants, or to the

2   accuracy of the content of the episodes.  Moreover, the Court finds

3   that it may properly consider not only the episodes to which

4   Plaintiffs specifically refer in the Complaint (Episodes 1161R, 1143R,

5   1154, 1153R, and 1002), but also the episodes submitted by the CBS

6   Defendants to demonstrate episodes without celebrities (Episodes 1006

7   and 1012) and episodes to which Plaintiffs referred in their

8   opposition brief (Episodes 1007, 2030, and 2048).

9       **B.    Judicial Notice of Evidence of Other Cooking Shows**

10      On a motion to dismiss, it is proper for the court to consider

11  matters subject to judicial notice pursuant to Federal Rule of

12  Evidence 201.  See Mir, M.D. v. Little Co. of Mary Hosp., 844 F.2d

13  646, 649 (9th Cir. 1988).  Federal Rule of Evidence 201 allows a court

14  to take judicial notice of facts that are either "(1) generally known

15  within the territorial jurisdiction of the trial court; or (2) capable

16  of accurate and ready determination by resort to sources whose

17  accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  In

18  the context of copyright claims, the Court may take judicial notice of

19  generic elements of creative works.  See, e.g., Walker v. Time Life

20  Films, Inc., 615 F. Supp. 430, 438 (S.D.N.Y. 1985) (taking judicial

21  notice that "members of the New York Police Department are often

22  potrayed as Irish, smokers, drinkers, and third or fourth generation

23  police officers"); Willis v. Home Box Office, 2001 WL 1352916, at *2

24  (S.D.N.Y. 2001) ("It does not strain the concept of judicial notice to

25  observe that books, movies and television series are full of such

26  unethical men and women in a variety of businesses[.]").

27  _____

28      [2](...continued)
    infringement.  (Compl. ¶¶ 45-46.)

1    The CBS Defendants ask the Court to take judicial notice that the

2    following elements of a television show are common and prevalent in

3    public works: (a) a host; (b) guest celebrities; (c) an interview; and

4    (d) a cooking segment. (Request for Judicial Notice ("RJN") at 1:7-

5    13.) The Court grants this request because these elements are

6    generally known and can be verified simply by watching television for

7    any length of time. Plaintiffs cannot reasonably question the

8    existence or accuracy of these generic elements and, in fact, they

9    concede that the Court "may take judicial notice of the fact that

10   there are and have been numerous TV cooking shows and that TV talk

11   show hosts have frequently involved celebrity guest[s] in cooking."

12   (Opp'n at 13:7-9.)

13        The CBS Defendants also ask the Court to judicially notice

14   various specific shows that contain these elements. (Id. at 3 n.2,

15   Ex. A.)   The Court denies this request, however. These shows are not

16   commonly known within this District, nor can their accuracy be

17   verified by the Court, especially since many of them are several years

18   old. Moreover, while Plaintiffs cannot reasonably dispute the generic

19   talk show and cooking show elements of these shows (since one need

20   only watch them to verify that fact), the Court cannot determine

21   whether these shows were ever aired so as to contribute to the

22   commonplace character of the generic show elements.[3]   In any event,

───────────────

24       [3]The CBS Defendants' citations to contrary authority does not
     persuade the Court to rule otherwise. See, e.g., Sobhani v. @Radical
25   Media, Inc., 257 F. Supp. 2d 1234, 1235-36 n.1 (C.D. Cal. 2003)
     (judicially noticing the film Castaway and commercials for the fast
26   food chain Jack-in-the-Box); Felix the Cat Prods, Inc. v. New Line
     Cinema Corp., 54 U.S.P.Q.2d 1856, 1857 (C.D. Cal. 2007) (judicially
27   noticing the film Pleasantville); Twentieth Century Fox Film Corp. v.
     Marvel Ents., 155 F. Supp. 2d 1, 41 n.71 (S.D.N.Y. 2001) (judicially
28                                                          (continued...)

1  for the purposes of determining whether <u>Showbiz Chefs</u> contains

2  protectable elements, the Court need not judicially notice any

3  specific shows containing these generic talk show and cooking show

4  elements because it has judicially noticed the generic character of

5  the elements themselves.  Therefore, the Court declines to consider

6  the content of Exhibit A to the CBS Defendants' Request for Judicial

7  Notice.[4]

8  **IV.  ANALYSIS**

9      The CBS Defendants move to dismiss the Complaint against them

10 because, as a matter of law, <u>Showbiz Chefs</u> contains no protectable

11 elements, and there is no substantial similarity between it and

12 <u>Rachael Ray</u>.  Plaintiffs oppose on two grounds: (1) the Ninth Circuit

13 does not permit the Court to decide substantial similarity on a motion

14 to dismiss because not all 150 <u>Rachael Ray</u> episodes are before the

15 Court; and (2) in any event, <u>Rachael Ray</u> is substantially similar to

16

17  _____

18      [3](...continued)
   noticing the film <u>Star Wars</u>).  In <u>Sobhani</u>, the specific content of the
19 film <u>Cast Away</u> was noticed because the commercials at issue
   specifically parodied the film.  257 F. Supp. 2d at 1235-36 n.1.  In
20 <u>Felix the Cat</u>, the court noticed the film <u>Pleasantville</u> because it was
   at issue in that trademark case.  54 U.S.P.Q.2d at 1857.  In <u>Marvel</u>,
21 the court noticed the film <u>Star Wars</u> as an unquestionable
   representation of the generic storyline of a mentor-mentee
22 relationship in science fiction, even though the court could have
   simply noticed the generic aspects of the mentor-mentee relationship
23 without resorting to noticing a specific film in which those elements
   were presented.  155 F. Supp. 2d at 41 n.71.  Here, the Court finds it
24 improper and unnecessary to notice specific shows embodying generic
   talk show and cooking show elements.
25
      [4]For these same reasons, the Court also declines to notice
26 Exhibits B, C, D, E, F, G, and H attached to the CBS Defendants'
   Request for Judicial Notice, and Exhibit A attached to the CBS
27 Defendants' Notice of Lodging, as these exhibits also purport to
   evidence the commonplace and generic nature of the talk show and
28 cooking show elements.

1 <u>Showbiz Chefs</u>, creating a factual issue that cannot be decided on a

2 motion to dismiss.  The Court finds that <u>Showbiz Chefs</u> and <u>Rachael Ray</u>

3 are properly before the Court and the Court can assess substantial

4 similarity as a matter of law.  Moreover, the Court holds that <u>Showbiz</u>

5 <u>Chefs</u> and <u>Rachael Ray</u> are not substantially similar as a matter of law

6 and dismisses Plaintiffs' claim against the CBS Defendants with

7 prejudice.

8    **A.    The Court May Assess Copyright Infringement as a Matter of**

9       **Law on the CBS Defendants' Motion to Dismiss.**

10       Courts have the power to dismiss complaints that either lack a

11 cognizable legal theory or fail to allege sufficient facts to

12 establish the elements of a valid claim for relief.  <u>Balistreri</u>, 901

13 F.2d at 699.  Plaintiffs have pointed to no law suggesting the a court

14 <u>lacks</u> this power in the context of copyright infringement claims.  In

15 contrast, the Ninth Circuit has noted that "[t]here is ample authority

16 for holding that when the copyrighted work and the alleged

17 infringement are both before the court, capable of examination and

18 comparison, non-infringement can be determined on a motion to

19 dismiss."  <u>Christianson v. West Pub. Co.</u>, 149 F.2d 202, 203 (9th Cir.

20 1945) (specifically approving of the district court's dismissal of a

21 copyright complaint by comparing the two works that were part of the

22 record).  For fifty years, courts have followed this rather obvious

23 principle and dismissed copyright claims that fail from the face of

24 the complaint (and in light of all matters properly considered on a

25 motion to dismiss).  <u>See, e.g.</u>, <u>Rodriguez v. Casa Salsa Restaurant</u>,

26 260 F. Supp. 2d 413, 414 (D.P.R. 2003) (motion to dismiss); <u>Cano v.</u>

27 <u>World of Difference Institute</u>, 1996 WL 371064, at *12 (N.D. Cal. 1996)

28

1  (motion for judgment on pleadings)[5]; <u>Lake v. Columbia Broad. Sys.,</u>

2  <u>Inc.</u>, 140 F. Supp. 707, 708 (S.D. Cal. 1956) (noting that "upon this

3  motion to dismiss the Court may assume validity of the copyright and,

4  comparing the literary products incorporated into the complaint,

5  determine as a matter of law whether or not the copyright has been

6  infringed," and dismissing complaint); <u>Nelson v. PRN Prods.</u>, 873 F.2d

7  1141, 1143-44 (8th Cir. 1989) (affirming dismissal, stating that

8  "[t]he trial judge could properly determine the matter of substantial

9  similarity as a matter of law and did so by granting defendants'

10  motion to dismiss" because both works were before the court); <u>Bell v.</u>

11  <u>Blaze Magazine</u>, 2001 WL 262718, at *3 (S.D.N.Y. 2001) ("If the court

12  determines that no reasonable jury could find that the works are

13  substantially similar, or if it concludes that the similarities

14  pertain only to unprotected elements of the work, it is appropriate

15  for the court to dismiss the action because, as a matter of law, there

16  is no copyright infringement.").

17      Recently, a court in the Northern District of California found no

18  obstacle to addressing substantial similarity as a matter of law:

19      [P]laintiffs make much of the procedural argument that decisions
        as to copyright infringement – and in particular, substantial
20      similarity issues – are not proper on 12(c) motions for judgment

21  _____

22      [5]Plaintiffs attempt to discount the CBS Defendants' reliance on
    this case because it was a motion for judgment on the pleadings, not a
23  motion to dismiss. However, the legal standard for these motions is
    identical, the only difference being the stage in the case at which
24  they are brought.  <u>See</u> <u>Qwest Commc'ns Corp. v. City of Berkeley</u>, 208
    F.R.D. 288, 291 (N.D. Cal. 2002) ("Rules 12(b)(6) and 12(c) are
25  substantially identical; both permit challenges to the legal
    sufficiency of the opposing party's pleadings."); <u>Strigliabotti v.</u>
26  <u>Franklin Resources, Inc.</u>, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005)
    ("Rules 12(b)(6) and 12(c) are substantially identical. . . . Under
27  either provision, a court must determine whether the facts alleged in
    the complaint, to be taken for these purposes as true, entitle the
28  plaintiff to a legal remedy.").

1     on the pleadings.  Plaintiffs are correct that many times, the
    issue of substantial similarity is not amenable to resolution
2     without a trial. . . .  However, summary judgment may be granted
    if the evidence in the record, combined with every inference
3     reasonably drawn in favor of the non-moving party, demonstrates
    that no reasonable jury could find substantial similarity. . . .
4     It follows, therefore, that judgment on the pleadings may be
    granted where the facts asserted by the non-moving party in its
5     pleadings - including the attached works themselves - and all
    reasonable inferences from those facts, show the absence of
6     substantial similarity.

7 Identity Arts v. Best Buy Ent. Servs. Inc., 2007 WL 1149155, at *5

8 (N.D. Cal. 2007).  Therefore, "[i]f after examining the works

9 themselves, this Court determines that there is no substantial

10 similarity, then the plaintiff here can prove no facts in support of

11 his claim which would entitle him to relief - the standard for

12 dismissal under Rule 12(b)(6)."  Boyle v. Stephens, Inc., 1998 WL

13 80175, at *4 (S.D.N.Y. 1998) ("A court may, therefore, dismiss a

14 copyright infringement claim on a 12(b)(6) motion if it concludes that

15 no reasonable jury could find that the works are substantially

16 similar, or if it concludes that the similarities between the two

17 works pertain only to unprotected elements of the works.").  This

18 Court agrees with this analysis and finds that it may properly address

19 the merits of the CBS Defendants' motion.

20     Plaintiffs do not necessarily challenge the Court's power to rule

21 on the CBS Defendants' motion to dismiss.  Rather, they claim that,

22 because the Court does not have all 150 episodes before it, the above

23 authorities are inapplicable and the Court cannot assess substantial

24 similarity on a motion to dismiss.  The Court rejects this contention.

25 Plaintiffs concede that the Court may consider documents incorporated

26 by reference into a complaint.  Branch, 14 F.3d at 454; Parrino v.

27 FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998), superseded on other

28 ground by 28 U.S.C. § 1453(b).  Moreover, Ninth Circuit law permits

1  the Court to consider documents not specifically incorporated by

2  reference if the "plaintiff's claim depends on the contents of the

3  document, the defendant attaches the document to its motion to

4  dismiss, and the parties do not dispute the authenticity of the

5  document, even though the plaintiff does not explicitly allege the

6  contents of that document in the complaint." Knievel v. ESPN, 393

7  F.3d 1068, 1076 (9th Cir. 2005). This rule serves a critical policy

8  interest in "preventing plaintiffs from surviving a Rule 12(b)(6)

9  motion by deliberately omitting references to documents upon which

10  their claims are based." Parrino, 146 F.3d at 706.[6]

11       Plaintiffs' speculation that some episodes of Rachael Ray not

12  before the Court may contain infringing content does not defeat the

13  CBS Defendants' motion. First, Plaintiffs claim they have viewed

14  "many, but not all" of those episodes. If true, as masters of their

15  Complaint, Plaintiffs must allege the best facts for their case.

16  Presumably, Plaintiffs have done so by alleging the content of the

17  episodes they believe most substantially resemble Showbiz Chefs, and

18  have even augmented that showing with three additional episodes to

19  _____

20       [6]The Eleventh Circuit has explained the rationale behind the
    Ninth Circuit's "incorporation by reference" doctrine as follows:
21

22       [T]he rationale is that when a plaintiff files a complaint based
         on a document but fails to attach that document to a complaint,
23       the defendant may so attach the document, and therefore, the
         document, as one that could have or rather in fairness should
24       have been attached to the complaint, is considered part of the
         pleadings and thus may be reviewed at the pleading stage without
25       converting the motion into one for summary judgment. In short,
         the theory is that such a document is not "outside the
26       pleadings," and thus it may be considered at the 12(b)(6) stage
         without a transformation into the summary judgment posture[.]
27

28  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 n.16 (11th Cir.
    1999).

1  which they refer in their opposition brief.  That they now suggest
2  that the Court review every episode to save their claims would waste
3  substantial judicial resources undertaking a task Plaintiffs should
4  have undertaken themselves.  The Court will <u>not</u> perform Plaintiffs'
5  work for them and review all 150 episodes to select those which
6  infringe on Plaintiffs' copyrights.

7      Plaintiffs cite no authority that the Court may not base its
8  ruling on the eight episodes presented to it.  In fact, in <u>Funky</u>
9  <u>Films, Inc. v. Time Warner Entertainment Co.</u>, the Ninth Circuit
10 considered a copyright infringement claim involving the television
11 show <u>Six Feet Under</u>.  462 F.3d 1072 (9th Cir. 2006).  The Court
12 affirmed summary judgment on the issue of substantial similarity
13 between the plaintiff's work and the <u>first three</u> episodes of <u>Six Feet</u>
14 <u>Under</u>, even though the plaintiff's claim involved the entire series.
15 <u>Id.</u> at 1076.  As in <u>Funky Films</u>, the Court need not look at all 150
16 episodes of <u>Rachael Ray</u> to determine whether the show is substantially
17 similar to Plaintiffs' one-page treatment and three-page script for
18 <u>Showbiz Chefs</u>.

19     The policy concerns here are particularly acute because
20 Plaintiffs allege that an entire show - made up of individual episodes
21 - infringes on their copyright.  Finding that the Court must have all
22 episodes before it to rule on a motion to dismiss would essentially
23 give Plaintiffs a free pass to the summary judgment stage.  In other
24 words, future plaintiffs alleging copyright infringement in ongoing
25 works (i.e., book series or television series), could evade dismissal
26 simply by alleging infringement from common elements by citing only a
27 handful of specific examples in the Complaint.  The decision in <u>Funky</u>
28 <u>Films</u> implicitly precluded this result.  The Court is satisfied that

1  the eight episodes submitted by Defendants accurately reflect the

2  content of the Rachael Ray show sufficiently to rule on the CBS

3  Defendants' motion.

4      **B.    Plaintiffs Have Failed to State a Claim for Copyright**

5          **Infringement Over Rachael Ray.**

6      To state a claim for copyright infringement, Plaintiffs must

7  allege: "(1) ownership of a valid copyright, and (2) copying of

8  constituent elements of the work that are original." Feist Publ'ns,

9  Inc. v. Rural Tele. Serv. Co., 499 U.S. 340, 361 (1991).[7]  The second

10  prong – at issue here – requires Plaintiffs to allege that "the

11  infringer had access to plaintiff's copyrighted work and that the

12  works at issue are substantially similar in their protected elements."

13  Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002).

14      Here, the CBS Defendants do not meaningfully challenge

15  Plaintiffs' allegations of access because, even if access is present,

16  Plaintiffs cannot state a claim if substantial similarity is lacking.

17  See, e.g., Krofft Tele. Prods. v. McDonald's Corp., 562 F.2d 1157,

18  1172 (9th Cir. 1977) ("No amount of proof of access will suffice to

19  show copying if there are no similarities."), superseded on other

20  ground by 17 U.S.C. § 504(b); Funky Films, 462 F.3d at 1082 (quoting

21  same).  Even if a defendant concedes use of a plaintiff's work, the

22  copyright claim still fails absent substantial similarity. See, e.g.,

23  Bensbargains.net, LLC v. XPBargains.com, 2007 WL 2385092, at *3 (S.D.

24  Cal. 2007) (holding that "Plaintiff must prove the existence of a

25  triable issue of material fact with respect to substantial similarity,

26  regardless of how strong its evidence is that Defendants in fact

27  _____

28      [7]The CBS Defendants do not challenge Plaintiffs' allegations that
they own a valid copyright in Showbiz Chefs.

1  copied . . . ." (emphasis in orig.)); see also Narell v. Freeman, 872

2  F.2d 907, 910 (9th Cir. 1989) ("A finding that a defendant copied a

3  plaintiff's work, without application of a substantial similarity

4  analysis, has been made only when the defendant has engaged in a

5  virtual duplication of a plaintiff's entire work.").

6      To assess substantial similarity as a matter of law, the Court

7  must apply the objective "extrinsic test." Funky Films, 462 F.3d at

8  1077.[8]  The extrinsic test focuses on "articulable similarities

9  between the plot, themes, dialogue, mood, setting, pace, characters,

10  and sequence of events of the two works." Id. (quotation marks and

11  citation omitted).  "In applying the extrinsic test, this court

12  compares, not the basic plot ideas for stories, but the actual

13  concrete elements that make up the total sequence of events and the

14  relationships between the major characters." Id. (quotation marks and

15  citation omitted).

16          1.   The Generic Elements of a Talk/Cooking Show Are Not

17               Protectable.

18      In applying the extrinsic test, the Court "must take care to

19  inquire only whether the protectable elements, standing alone, are

20  substantially similar." Funky Films, 462 F.3d at 1077 (quoting

21

22  ⎯⎯⎯⎯⎯⎯⎯⎯

23      [8]The substantial similarity inquiry generally requires the
    application of both an "extrinsic test" and "intrinsic test." Funky
    Films, 462 F.3d at 1077.  Only the extrinsic test is assessed prior to
24  a jury trial (i.e., in a motion to dismiss or on summary judgment)
    because "the intrinsic test, which examines an ordinary person's
25  subjective impressions of the similarities between two works, is
    exclusively the province of the jury." Id.  However, "a plaintiff
26  who cannot satisfy the extrinsic test necessarily loses on summary
    judgment, because a jury may not find substantial similarity without
27  evidence on both the extrinsic and intrinsic tests.'" Id. (quoting
    Kouf v. Walt Disney Pictures & Tele., 16 F.3d 1042, 1045 (9th Cir.
28  1994)).

1  <u>Cavalier</u>, 297 F.3d at 822) (emphasis in original).  This requires the

2  Court to "filter out and disregard the non-protectable elements in

3  making [the] substantial similarity determination."  <u>Id.</u>  The

4  protectable elements must demonstrate "not just 'similarity,' but

5  'substantial similarity,' and it must be measured at the level of the

6  concrete 'elements' of each work, rather than at the level of the

7  basic 'idea,' or 'story' that it conveys."  <u>Idema v. Dreamworks, Inc.</u>,

8  162 F. Supp. 2d 1129, 1179 (C.D. Cal. 2001).

9        Plaintiffs here do not claim that the individual generic elements

10  of cooking shows and talk shows – i.e., a host, guest celebrities, an

11  interview, and a cooking segment – are protectable elements of <u>Showbiz</u>

12  <u>Chefs</u>.  Nor could they, since "[n]o one can own the basic idea for a

13  story.  General plot ideas are not protected by copyright law; they

14  remain forever the common property of artistic mankind."  <u>Berkic v.</u>

15  <u>Crichton</u>, 761 F.2d 1289, 1293 (9th Cir. 1985).  In the context of

16  fictional plot lines, courts have declined protection of ideas far

17  more developed than Plaintiffs' one-page treatment and three-page

18  script for <u>Showbiz Chefs</u>.  <u>See, e.g.</u>, <u>Funky Films</u>, 462 F.3d at 1081

19  (finding no protection for similar plots involving "the family-run

20  funeral home, the father's death, and the return of the 'prodigal

21  son,' who assists his brother in maintaining the family business.");

22  <u>Kouf v. Walk Disney Pictures & Tele.</u>, 16 F.3d 1042, 1044-45 (9th Cir.

23  1994) (finding no protection for similar plots of shrunken kids and

24  the "life struggle of kids fighting insurmountable dangers"); <u>Berkic</u>,

25  761 F.2d at 1293 (finding no protection for similar plots of "criminal

26  organizations that murder healthy young people, then remove and sell

27  their vital organs to wealthy people in need of organ transplants" and

28  the general story of the "adventures of a young professional who

1  courageously investigates and finally exposes, the criminal

2  organization.").

3       Plaintiffs' unscripted program does not alter this analysis.  For

4  example, in <u>Bethea v. Burnett</u>, the court reviewed the two "plots" of

5  the reality-based shows <u>C.E.O.</u> and <u>The Apprentice</u>.  2005 WL 1720631,

6  at * (C.D. Cal. 2005).  The Court concluded that

> [a]t the most abstract level, or at the level of "ideas," there
> is some similarity between <u>C.E.O.</u> and <u>The Apprentice</u>.  For
> example, Plaintiffs claim that the "plot" of both reality
> television programs is similar because both programs depict a
> group of dynamic contestants from varied backgrounds competing in
> business challenges in a dynamic corporate environment for
> promotions and benefits and, ultimately, a real job as a top-
> level executive of a corporation. . . .  However, Plaintiffs'
> alleged similarity is nothing more than a string of generic
> "ideas" which is not protected by copyright law.

13  <u>Id.</u> at *11.  Notably, courts have denied protection to the generic

14  elements of a host and of conducting interviews about particular

15  topics.  <u>See, e.g.</u>, <u>id.</u> at *13 (noting that "Plaintiffs cannot

16  copyright the idea of having a well-known business leader, or even

17  more specifically Donald Trump, host a reality television program.");

18  <u>Bell</u>, 2001 WL 262718, at *4 ("The mere fact that some of the formats

19  are similar (for example, the interview format) or the fact that the

20  subject matter is similar (both works included articles on the

21  weather, current events, hip hop music, prison life, ethnic targeting

22  and drug crimes) do not give rise to valid copyright claims.");

23  <u>Falotico v. WPVI-Channel 6</u>, 1989 WL 143238, at *3-4 (E.D. Pa. 1989)

24  (finding no protection for works that "concern the general subject of

25  celebrities who came from South Philadelphia, both spotlight

26  celebrities from that geographic area, and both cover similar facts

27  about the lives of those celebrities.").

28       The stock elements of a host, guest celebrities, an interview,

1  and a cooking segment can also be characterized as unprotected _scenes_

2  _a faire_, or "situations and incidents which flow naturally from [the]

3  basic plot premise" of a cooking- and home-related talk show. _Berkic_,

4  761 F.2d at 1293; _see also_ _Rice v. Fox Broad. Co._, 330 F.3d 1170, 1177

5  (9th Cir. 2003) (finding that "the sequencing of first performing [a

6  magic] trick and then revealing the secrets behind the trick is

7  subject to the limiting doctrines of merger and _scenes a faire_.");

8  _Williams v. Crichton_, 84 F.3d 581, 589 (2d Cir. 1996) (holding

9  similarities of a "dinosaur zoo or adventure park, with electrified

10 fences, automated tours, dinosaur nurseries, and uniformed workers . .

11 . are classic _scenes a faire_ that flow from the uncopyrightable

12 concept of a dinosaur zoo.").

13      Here, any similarities from Plaintiffs' _Showbiz Chefs_ and the CBS

14 Defendants' _Rachael Ray_ are _scenes a faire_ that naturally flow from

15 the interview and talk-show format.  For example, discussion of the

16 celebrity's current projects is a natural outgrowth of a talk show.

17 So is a tour of the celebrity's home, including the kitchen,

18 especially in the context of a "lifestyle" show like _Rachael Ray_.

19 Cooking segments may individualize the talk-show structure somewhat,

20 but they still represent the outgrowth of the generic talk show,

21 especially when the host can, in fact, cook.  The alleged specific

22 similarities of two shows with cooking, interviewing celebrities, and

23 discussing celebrity projects are _scenes a faire_ not protected by

24 copyright law.

25      Similarly, the doctrine of "merger" precludes protection for

26 these elements expressed in the standard form of a talk show.  "[W]hen

27 the idea and the expression are indistinguishable, or 'merged,' the

28 expression will only be protected against nearly identical copying."

1  Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1444 (9th Cir.

2  1994).  For example, one California court found that a show featuring

3  a host, a studio audience, studio guests, and the host showing

4  outtakes on a large screen while adding commentary was not protected

5  because there were only a limited number of ways in which the format

6  of an outtakes show could be expressed.  See dick clark co. v. Alan

7  Landsburg Prods., 1985 WL 1077775, at * 3 (C.D. Cal. 1985).  "The

8  formats of the two shows look similar, but so do the formats of

9  virtually every television news show.  The 'look' of a show is not the

10 proper subject of copyright protection.  The scope of copyright

11 protection was never intended to go this far."  Id. at *4.

12     Here, there are only a finite number of ways in which to express

13 the idea of a talk/cooking show with celebrities.  Placing the host in

14 a studio, inviting celebrity guests into the studio, and discussing

15 current projects is naturally expressed by having the sort of common

16 talk show format present in Rachael Ray.  Presenting segments in which

17 the host and celebrities cook in the studio is also only one of a

18 limited number of ways to express the idea of a cooking show.  As the

19 court in dick clark stated, the formats of Showbiz Chefs and Rachael

20 Ray may look similar, but so does every talk show to some extent.

21 Extending copyright protection over the generic format of a

22 cooking/talk show would stretch the bounds of copyright law beyond

23 what it was intended to cover.  As a result, Plaintiffs cannot

24 establish infringement over these basic elements of a talk

25 show/cooking show.

26        2.    Any Protectable Elements in Plaintiff's Show Are

27              Dissimilar to Rachael Ray.

28 Even assuming some elements of Plaintiffs' Show are protectable,

1  <u>Showbiz Chefs</u> is not substantially similar to <u>Rachael Ray</u>.  Again, the

2  Court must apply the objective "extrinsic test" and determine whether

3  there are "articulable similarities between the plot, themes,

4  dialogue, mood, setting, pace, characters, and sequence of events" in

5  <u>Showbiz Chefs</u> and <u>Rachael Ray</u>.   <u>Funky Films</u>, 462 F.3d at 1077.

6                     a.   <u>Plot</u>

7        "Plot" is defined at the "sequence of events by which the author

8  expresses his theme or idea" that is sufficiently concrete to warrant

9  a finding of substantial similarity if it is common in both works.  4

10 <u>Nimmer on Copyright</u> § 13.03[A][1][b], at 13-42 (2003).  Although not a

11 "plot," the sequencing of <u>Showbiz Chefs</u> and <u>Rachael Ray</u> contain no

12 true similarity outside of the commonplace elements discussed above.

13 The only commonalities are the talk show format that features a host,

14 guest celebrities, and cooking.  <u>Rachael Ray</u> contains segments on

15 shopping, gift-giving, parenting, relationships, and fashion, along

16 with cooking segments, either with Rachael Ray alone or with a guest,

17 but always in the studio.  <u>Showbiz Chefs</u>, however, features segments

18 set almost exclusively in the celebrity's home, whether the host and

19 celebrity are in an interview, eating, or cooking (except for a

20 clandestine trip to the supermarket).  While <u>Rachael Ray</u> sometimes

21 includes a segment of a celebrity cooking alone in his or her home,

22 this acts as more of an introduction to the segments set in the

23 studio, rather than the centerpiece of the show.  In short, the

24 ordering of segments in <u>Rachael Ray</u> does not resemble the ordering in

25 <u>Showbiz Chefs</u>.

26                   b.   <u>Theme</u>

27       <u>Showbiz Chefs</u> contains no real discernable theme, while <u>Rachael</u>

28 <u>Ray</u> is more of a "lifestyle" show that includes cooking segments.  For

1  example, host Rachael Ray dispenses household advice on myriad topics
2  like shopping, fashion, and parenting, while at the same time inviting
3  celebrities to discuss these topics or to share their own experiences.
4  The "theme" includes what the CBS Defendants call a "can do" attitude,
5  i.e., "if you try, you can do it" and presenting solutions to everyday
6  problems.  (Mot. at 21:19-21.)  As the CBS Defendants describe the
7  show, "Rachael Ray provides this inspirational 'can do' message and
8  advice to those who need help - e.g., to mothers who do not think that
9  they have the time or ability to make a family dinner, to women with
10  low self-esteem and bad shopping habits, to those who need to
11  redecorate their homes, to those who do not know how to cook a healthy
12  meal for their children, to those who need to buy gifts on a tight
13  budget, to those who need wedding advice, and to those who need
14  fashion advice." (Id. at 21:20-27.)

15      The Court agrees with the CBS Defendants' essential point that
16  the Rachael Ray show is more of a general lifestyle show than simply a
17  cooking show featuring celebrities.  Showbiz Chefs, in contrast, is
18  much more specialized, seeking apparently to entertain the audience
19  with celebrity interviews and perhaps impart some knowledge of cooking
20  in the process.  The theme seems to be an invitation to look inside
21  celebrity homes, and perhaps get a glimpse of celebrity lifestyles.
22  The focus, however, is not on the lifestyles of the viewers or
23  audience.  As such, the themes of the two shows appear to differ
24  substantially.

25          c.  Dialogue
26      The dialogue in Rachael Ray does not resemble the dialogue in
27  Plaintiffs' three-page script for Showbiz Chefs.
28

1          d.   Mood

2      The CBS Defendants implicitly concede that the mood of Rachael

3  Ray and Showbiz Chefs is almost identical.  Plaintiffs describe

4  Showbiz Chefs as "relaxed, informal and fun."  (FAC, Ex. A.)  Rachael

5  Ray evokes a similar mood.  The upbeat mood flowing from a

6  coooking/talk show, however, is merely another example of scenes a

7  faire and merger, common to all cooking/talk shows (indeed, it is

8  difficult to imagine a somber show of this nature).  See Rice, 330

9  F.3d at 1177 (holding that the mood of secrecy and mystery is both

10 merged into and constitutes scenes a faire of a show about the

11 "mysteries of magic"); Olson v. National Broad. Co., 855 F.2d 1446,

12 1451 (9th Cir. 1988) (finding that the comic mood is "common to the

13 genre of action-adventure television series and movies therefore do

14 not demonstrate substantial similarity.").  Therefore, the relaxed,

15 fun mood of the two shows is not a protectable element, even though it

16 may be substantially similar.

17          e.   Setting

18     The setting of the two shows is generally different.  Showbiz

19 Chefs takes place exclusively within a celebrity's home (and perhaps a

20 trip to the market), while Rachael Ray takes place in a studio with a

21 live studio audience, which plays a role in the format of the show.

22 Sometimes Rachael Ray episodes contain segments of celebrities cooking

23 in their own homes, but, as noted above, the celebrities are alone and

24 these scenes are minor introductions to the larger in-studio segments

25 with the celebrities.  While this may result in some overlap between

26 the shows, it is not enough for a reasonable jury to find that the

27 shows are substantially similar.

28

1          f.   <u>Characters</u>

2        The central "characters" in each show are the hosts and the

3   celebrities.  As discussed above, the generic idea to have a host is

4   not protectable, <u>see</u> <u>Bethea</u>, 2005 WL 1720631, at *13, and Plaintiffs'

5   sketch of the host of <u>Showbiz Chefs</u> as an "inept but well meaning sous

6   chef" bears no resemblance to Rachael Ray, the host of <u>Rachael Ray</u>.

7   Ray is presented as a competent celebrity chef in her own right, often

8   presenting segments where she cooks alone for viewers.  She also goes

9   beyond cooking and performs an opening monologue, gives advice, and

10  interacts with the studio audience.  These features are absent from

11  Plaintiffs' <u>Showbiz Chefs</u> treatment and script.  Moreover, the

12  portrayal of celebrities appears to be different, since some of the

13  <u>Rachael Ray</u> episodes featuring celebrities appear to center on the

14  <u>celebrity's</u> novice cooking skills and Ray's assistance in improving

15  them.  And in those episodes where the celebrity is a chef (e.g.,

16  Bobby Flay and Nigella Lawson), Ray adds her skills and works

17  alongside the celebrity chef as a team effort, rather than performing

18  ineptly, as the host does in <u>Showbiz Chefs</u>.  Therefore, the

19  "characters" of the two shows are not substantially similar as a

20  matter of law.

21          g.   <u>Sequence of Events</u>

22       As discussed in the context of plot, the segment sequencing in

23  <u>Rachael Ray</u> does not resemble the structure of <u>Showbiz Chefs</u>.  <u>Showbiz</u>

24  <u>Chefs</u> includes two large segments in which the host cooks with and

25  then interviews the celebrity in the celebrity's home.  Plaintiffs

26  have not pointed out any episodes of <u>Rachael Ray</u> in which this

27  sequence occurs, and in fact, the topics in each <u>Rachael Ray</u> episode

28  change and the show does not follow any set format.  Some episodes

24

1  feature no celebrities at all.  No reasonable jury could conclude that

2  the sequence of events in the two shows is substantially similar.

3      Each factor relevant to the extrinsic test militates so strongly

4  in the CBS Defendants' favor that no reasonable jury could conclude

5  that <u>Rachael Ray</u> and <u>Showbiz Chefs</u> are substantially similar.

6          3.   <u>Plaintiffs Have Failed to State a Claim under Metcalf</u>

7               <u>v. Bochco.</u>

8      Plaintiffs concede that <u>Showbiz Chefs</u> contain a number of generic

9  elements that are not protectable.  (Opp'n at 13:7-18.)  The Court has

10 also concluded that any potentially protectable elements of <u>Showbiz</u>

11 <u>Chefs</u> are not substantially similar to <u>Rachael Ray</u>.  Despite this,

12 Plaintiffs contend that, even if the component parts of <u>Showbiz Chefs</u>

13 are not protectable (or, if the protectable elements are dissimilar to

14 <u>Rachael Ray</u>), "the particular sequence in which they place a number of

15 elements (each of which individually may be unprotect[a]ble) can

16 itself be a protect[a]ble element," citing <u>Metcalf v. Bochco</u>, 294

17 F.3d 1069, 1074-1075 (9th Cir. 2002).

18     In <u>Metcalf</u>, the Ninth Circuit determined that "[t]he particular

19 sequence in which an author strings a <u>significant</u> number of

20 unprotectable elements can itself be a protectable element."  <u>Id.</u> at

21 1074 ("Each note on a scale, for example, is not protectable, but a

22 pattern of notes in a tune may earn copyright protection.") (emphasis

23 added).  This holding was based on the "striking" similarities between

24 the plaintiffs' and defendants' works:

25         Both the Metcalf and Bochco works are set in overburdened county
           hospitals in inner-city Los Angeles with mostly black staffs.
26         Both deal with issues of poverty, race relations and urban
           blight.  The works' main characters are both young, good-looking,
27         muscular black surgeons who grew up in the neighborhood where the
           hospital is located.  Both surgeons struggle to choose between
28         the financial benefits of private practice and the emotional

                                        25

1   rewards of working in the inner city.  Both are romantically
    involved with young professional women when they arrive at the
2   hospital, but develop strong attractions to hospital
    administrators.  Both new relationships flourish and culminate in
3   a kiss, but are later strained when the administrator observes a
    display of physical intimacy between the main character and his
4   original love interest.  Both administrators are in their
    thirties, were once married but are now single, without children
5   and devoted to their careers and to the hospital.  In both works,
    the hospital's bid for reaccreditation is vehemently opposed by a
6   Hispanic politician.

7   Id. at 1073-74.  As a result of this resemblance, a jury "could easily

8   infer that the many similarities between plaintiffs' scripts and

9   defendants' work were the result of copying, not mere coincidence."

10  Id. at 1075.

11      Many courts have been reluctant to expand this concept beyond

12  the clear-cut case presented in Metcalf.  See, e.g., Identity Arts,

13  2007 WL 1149155, at *4 ("However, in Metcalf, the 'many' generic

14  similarities and patterns present in the works in question were much

15  more voluminous and specific than in this case."); Bethea, 2005 WL

16  1720631, at *14-15 (rejecting a Metcalf argument and holding that,

17  "[w]hen taken separately or as a whole, the common elements of C.E.O.

18  and The Apprentice simply do not allow for a reasonable inference

19  that the works are substantially similar in expressive content."),

20  Rice, 330 F.3d at 1178-79 (rejecting the plaintiff's Metcalf argument

21  because the case did not involve the "same pattern of generic

22  similarities").

23      Here, Plaintiffs fail to point to any string of unprotected

24  elements in Rachael Ray that resembles Showbiz Chefs in the sort of

25  magnitude contemplated by the Metcalf court.  Rather, Plaintiffs

26  point out random similarities between Showbiz Chefs and Rachael Ray

27  to support their Metcalf claim.  Courts have routinely rejected

28  Metcalf claims over random similarities.  See, e.g., Flynn v. Surnow,

26

1 70 U.S.P.Q.2d 1231, 1238 (C.D. Cal. 2003) (rejecting a <u>Metcalf</u> theory

2 because the alleged similarities are "randomly scattered throughout

3 the works and have no concrete pattern or sequence in common.");

4 <u>Kouf</u>, 16 F.3d at 1045-46 ("And, we are equally unimpressed by Kouf's

5 compilation of random similarities scattered throughout the works[.]"

6 (internal quotation marks omitted); <u>Litchfield v. Spielberg</u>, 736 F.2d

7 1352, 1356 (9th Cir. 1984) (rejecting a list of similarities between

8 works because "they are inherently subjective and unreliable.  We are

9 particularly cautious where, as here, the list emphasizes random

10 similarities scattered throughout the works.").

11       Plaintiffs' claimed similarities between <u>Rachael Ray</u> and <u>Showbiz</u>

12 <u>Chefs</u> consist of randomly selected similarities of generic elements:

13 "<u>Showbiz Chefs</u> paints a television show where in each episode the

14 host engages a celebrity in a home or restaurant setting with cooking

15 that is personal to the guest and provides the audience a glimpse

16 into their lifestyles."  (Opp'n at 11:4-6.)[9]  These random elements

17 (i.e., a talk show, cooking, a host, a celebrity, and kitchens)

18 appear at different points in <u>Showbiz Chefs</u> and <u>Rachael Ray</u> and

19 Plaintiffs cannot merely cobble them together to make a <u>Metcalf</u>

20 argument.  To do so would give Plaintiffs a monopoly over these

21 generic elements expressed as a television talk show featuring

22 celebrity guests and cooking.  Therefore, the Court rejects

23 Plaintiffs' attempt to bring their claim under <u>Metcalf</u>.

24 //

25 //

26

27       [9]The Court notes that this description of <u>Showbiz Chefs</u> is
   misleading at best.  Plaintiffs' treatment and script does not depict
   a show set in any "home", but specifically in the celebrity's home,
28 and does not mention a restaurant setting at all.

## V.    CONCLUSION

The Court finds that it may rule on Plaintiffs' copyright claim against the CBS Defendants as a matter of law.  They have attached to their Complaint the one-page synopsis and three-page script for Showbiz Chefs, so the Court may consider it on a motion to dismiss. The Court may also consider the Rachael Ray show, as its content comprises the basis for Plaintiffs' claim and the CBS Defendants have provided copies of episodes.  The Court holds that no reasonable jury could conclude that Rachael Ray is substantially similar to any protectable elements of Showbiz Chefs or to the order in which Plaintiffs have presented non-protectable elements in Showbiz Chefs.

Therefore, the Court GRANTS the CBS Defendant's Motion to Dismiss and DISMISSES with prejudice Plaintiffs' first claim for copyright infringement against them.  Because Plaintiffs allege no other claims against the CBS Defendants, the Court DISMISSES Defendants CBS Television Distribution, King World Productions, Inc. and Harpo Productions, Inc. from this case.

**IT IS SO ORDERED.**

DATED:    December 18, 2007

_____

**AUDREY B. COLLINS**
**UNITED STATES DISTRICT JUDGE**

28