1

**Robert R. Prunte', (pro se')**
614 Wyanoke Avenue

2
Baltimore, Maryland 21218
443.615.1745 or 443.682.7292

3

4

RECEIVED

JUN 1 3 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

5                    **UNITED STATES DISTRICT COURT**

6                **FOR THE DISTRICT OF COLUMBIA**

7

8

**ROBERT R. PRUNTE'**

9
            Plaintiff,                    | **CASE NUMBER: 1:06-cv-00480**
10                  Vs.
**UNIVERSAL MUSIC GROUP** dba UMG              | **JUDGE: PLF**
11   RECORDINGS; C/O CT CORPORATION
     SYSTEM, 111 EIGHTH AVENUE, NEW
12   YORK, N.Y. 10011; & ZACH HOROWITZ,
     NICK HENRY, SHAWN (JAY-Z) CARTER;
13   L.A. REID, "BABY" (CASH MONEY                | **SECOND AMENDED COMPLAINT**
     RECORDS) & DINO DELVAILLE; DAMON
14   DASH; DEF JAM; INTERSCOPE RECORDS,
     CASH MONEY RECORDS/BABY, GEOFF                | **JURY TRIAL DEMAND**
15   SEIGEL, BRIAN WITTMER; KANYE WEST;
     BRANDY NORWOOD; G-UNIT RECORDS
16   & 50 CENT, JUVENILE; LIL WAYNE; ROY
     JONES JR. EMINEM; DMX, T.I.; YING
17   YANG TWINS; FAT JOE; LUDACRIS,
     SHAWNNA, AKON, T-PAIN, YO GOTTI,
18   THE GAME & JOHN LEGEND; **WARNER
     MUSIC GROUP & SUBSIDIARIES);** :C/O
19   CT CORPORATION SYSTEM, 111 EIGHTH
     AVENUE, NEW YORK, N.Y. 10011 & TED
20   TURNER, ATLANTIC RECORDS, ADAM
     FISCHELL, BLACK ROBB & RICH
21   CHRISTINA & **VIACOM INTL. INC.,**C/O
     **MICHAEL FRICKLAS, 1515 BROADWAY,**
22   **NEW YORK NY. 10036 & CORPORATION**
     **SERVICE COMPANY, 80 STATE STREET,**
23   **ALBANY, NEW YORK 12207-2543 &**
     **SUBSIDIARIES** Defendant (s)
24

25

1

**A CIVIL COMPLAINT FOR DIRECT COPYRIGHT INFRINGEMENT & CONTRIBUTORY COPYRIGHT INFRINGEMENT OF PLAINTIFFS COMMERCIAL AND COPYRIGHT PROTECTED EXPRESSIONS, MUSIC AND SAMPLED SOUND RECORDINGS**

## BACKGROUND AVERMENTS

*"In an appropriate case, copying might be demonstrated, with no proof or weak proof of access, by showing that a single brief phrase, contained in both pieces, was so idiosyncratic in its treatment as to preclude coincidence...." Opinion by Judge Frank in Heim v. Universal City Pictures*

1. This case is based upon a song harvesting operation known as "Inside Sessions", which dupes authors into sending them original songs, (for $250.00 dollars), (See previous Amended Complaint), and then decides later whether to give the original authors works to artists whom they already have signed on their rosters. A commercial song is a complex literary and musical work composed of discreet literary components. Everyone, from the schoolchild to the scholar, knows that any song, of any genre, always contains a "***most commercial part***" or a "***chorus line***" that determines the force and effect of the songs literal payoff to the listener.

2. A hot chorus line may mean the difference between the success or failure of a commercial song. When someone chooses to lift the chorus lines from the works of original creators, it becomes obvious that some individuals have unraveled the formula that made the original chorus line so hot in the first

2

place, while at the same time intentionally de-valuing the original authors work.

3. In their drive to maintain the attention of huge audiences, this enterprise, has created an *"open academy type hit factory"*, as well as puppet/slave-like actors known as *"contract/ recording artists/employee/slave lackeys"* who are cast to appear in starring roles performing completely stolen works.

4. After creating the unlawful derivative work, the enterprise then distributes and exploits the project as if it has gone through the proper and traditional evolution of popular song creation, production and exploitation.

5. After unlocking the secrets of the song, so to speak, these unscrupulous agents and operators of the enterprise, then unlawfully counterfeit the derivative works of the original copyright owners, without compensating them, or even returning their original and now mutilated works.

6. Although the complained of enterprise recently ceased active operation of the *"Inside Sessions"* program via the Internet, the firm still exists and is doing business. This equals a strong intimation that they intend to reactivate it on Internet after resolving the issues of this case and others, and resurrect the professional copyright infringement services of *"Inside Sessions"* at a later date.

7. In doing the acts averred herein above, the defendant persons and each of them, have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which has been, among other things to serve each of these defendant persons and the overall enterprise' own economic benefit by knowingly, willfully and intentionally re-creating derivative works from copyrighted songs.

3

8. Thus, each of these defendants knowingly, willfully and intentionally has committed the herein complained of acts either passively or actively, directly or indirectly and have thusly committed the acts herein above described in furtherance of the conspiracy, common enterprise, and common course of conduct.

9. Therefore, each defendant actively participates in, facilitates, materially contributes to, and encourages the infringing activities of each other defendant person in compliment of the overall enterprise, and each defendant greatly profits from those activities. Plaintiff and countless others are being irreparably harmed by the conduct of the defendants, and each of them, and has further suffered significant damages for which each defendant person is liable in varying degrees.

## JURISDICTION AND VENUE

10. This is an action for Copyright Infringement arising under the Copyright Act **17 U.S.C. 101 et seq., 17 U.S. C. 104 et seq., 501 & 506 et seq.** this court has exclusive jurisdiction under **28 U.S.C. 1338(a), 28 U.S.C. 1331**. ---Also liability is premised upon 17 U.S.C. 106 et seq. as well as *17 U.S.C. 107 thru 122*.

11. Venue is proper in this district as well as personal jurisdiction over the defendants in this district under **28 U.S.C. 1391(b)(1)(c) & (d) & 28 U.S.C. 1400(a)**, in that all infringing articles can be found in this district and defendants can therefore be found as well.

12. All defendants are hereby presumed to have the necessary minimum contacts with this instant forum and others, nationally and internationally so as to justify being hauled into court anywhere.

## PARTIES

13. Plaintiff, Robert R. Prunté, is a citizen of the state of Maryland, as well as the sole owner and author of all the copyrighted expressions allegedly purloined by the defendants. Mr. Prunte' specializes in the creation of original songs in several genres, e.g. Urban Contemporary R&B—Hip Hop—Pop and Country. Mr. Prunte's Independent record label, Rowdy City Records, creates original music and lyrics, develops raw talent into fine acts and then sells the songs in album form throughout the east coast and the southern states mainly with a vertically integrated approach like Motown of old.

14. Defendant, Warner Music Group, is a Delaware corporation with a principle place of business in California and New York. Warner Music Group is a defendant allegedly in violation of the United States Copyright Act.

15. Defendant, Viacom International, Inc is a Delaware corporation with a principle place of business in California and New York. Viacom International is a defendant allegedly in violation of the United States Copyright Act laws against unauthorized publication.

16. Defendant, Interscope Records is a defendant person and subsidiary of Universal Music Group as well as defendant allegedly in violation of the United States Copyright Act.

17. Defendant, Universal Music Group, is a Delaware corporation with a principle place of business in California and New York. Universal Music Group is a defendant allegedly in violation of the United States Copyright Act.

18. Defendant Ted Turner & Ahmet Ertegun are the chief executives of Atlantic Music Group and Atlantic Records & Warner Chappell Publishing respectively, and are defendants allegedly in violation of the United States Copyright Act.

19. Defendant Adam Fischell is an employee and executive officer of Atlantic Records, and also a defendant allegedly in violation of the United States Copyright Act.

20. Defendant Dino Delvaille is employee of Universal Music Group and allegedly in violation of the United allegedly in violation of the United States Copyright Act.

21. Defendant, Geoff Siegel, is an employee with Universal Music Group, as well as executive officer of the firm. Mr. Siegel is also a defendant allegedly in violation of the United States Copyright Act.

22. Defendant Summer Redstone is CEO of Viacom and also a defendant allegedly in violation of the United States Copyright Act.

23. Likewise BET, MTV & VH1 are defendants as well as Paramount Pictures, ( subsidiaries of Viacom International), are also defendants allegedly in violation of the United States Copyright Act.

24. Defendant(s) Zach Horowitz and Nick Henry are chief executives of Universal Music Group and are defendants allegedly in violation of the United States Copyright Act.

25. Inside Sessions, Def Jam Music Group, Interscope and Cash Money Records, being subsidiaries of Universal Music Group, are also defendants allegedly in violation of the United States Copyright Act.

26. Kanye West is defendant employee or other agent of Atlantic Music Group/ Def Jam/Universal Music Group, and also a defendant allegedly in violation of the United States Copyright Act.

27. Defendant, Brian Wittmer is an employee of Universal Music Group and allegedly in violation of the United States Copyright Act.

28. Defendant, Brandy Norwood, is an employee of Atlantic Records & also a defendant allegedly in violation of the United States Copyright Act.

29. Defendant, Lil Wayne, is an employee or other agent of Universal Music Group/Cash Money Records and also a defendant allegedly in violation of the United States Copyright Act.

30. Defendant, Roy Jones, Jr., is an employee or other agent of Universal Music Group and also a defendant allegedly in violation of the United States Copyright Act.

32. Defendant, Eminem, is an employee or other agent of Universal Music Group and Interscope Records and   also a defendant allegedly in violation of the United States Copyright Act.

33. Defendant, T.I., is an employee or other agent of Universal Music Group and the alleged enterprise and also a defendant allegedly in violation of the United States Copyright Act.

34. Defendant, the Ying Yang Twins, are also employees or other agents of Universal Music Group and also a defendant allegedly in violation of the United States Copyright Act.

35. Defendant, Fat Joe, is an employee or other agent of Universal Music Group and also a defendant.

36. Defendant, Ludacris, is an employee or other agent of Universal Music Group and also a defendant allegedly in violation of the United States Copyright Act.

37. Defendant, Baby of Cash Money Records, is an employee or other agent of Universal Music Group and also a defendant allegedly in violation of the United States Copyright Act.

38. Defendant, John Legend, is an employee or other agent of Universal Music Group and also a defendant allegedly in violation of the United States Copyright Act.

39. Defendant Rich Christina is an employee and executive of Atlantic Recording Group as well as a defendant allegedly in violation of the United States Copyright Act.

40. Defendants Shawn (Jay-Z) Carter and Damon Dash are employees, agents of Universal Music Group and subsidiary owners of Def Jam and Roc-A-Fella Records, and are also defendants allegedly in violation of the United States Copyright Act.

41. Defendant Akon and T-Pain are also Universal Music Group employees or agents as well as defendants allegedly in violation of the United States Copyright Act.

42. Defendant, The Game, is an employee of Interscope Records, a subsidiary of Universal Music Group and also a defendant allegedly in violation of the United States Copyright Act.

43. Defendant, Yo Gotti, or "Young Gotti", is an employee or other agent of Cash Money Records, a subsidiary of Universal Music Group and also a defendant allegedly in violation of the United States Copyright Act.

44. Defendant, Black Rob, is an employee or other agent of Bad Boy Entertainment, which is a subsidiary of Warner Music Group, and is also a defendant allegedly in violation of the United States Copyright Act.

45. The above named defendant persons both corporate and individual, are hereafter referred to collectively as "defendants", and each defendant is, and at all times averred herein, alleged to be a party to the unlawful activities, complained of herein, directly and or indirectly, and thus conspired with and or acted in concert or in combination with each of the other defendants, and has aided or abetted such other defendants, and or has acted as an agent for each of the other defendants both complimentary and peripherally, either committing criminal acts or thereby providing support under a cloak of legitimacy, with respect to the actions and matters described within this complaint.

## STATEMENT OF THE CASE

46. Plaintiff hereby alleges that in or about 2001, Universal Music was advertising and promoting a service called "Inside Sessions", which purported to be an outlet for critiquing and analyzing original songs for the sake of future record business success, since all the critiques were done by well known music business executives.

47. Plaintiff submitted nearly (100) one-hundred original songs to the Inside Sessions program for nearly (2) two years and getting critiqued by the music

executives, until suddenly in around 2003, plaintiff received an email stating that the Inside Sessions program executives were no longer available.

48. Later that same year, plaintiff began to see songs and artists released by the Universal Music Group network, which consisted of Viacom, Warner Music Group and Atlantic Records, who channeled the songs to new artists while Viacom assisted the performances via video of the songs allegedly stolen by the Inside Sessions program.

49. Therefore, all the (5) five exclusive rights of copyright owner plaintiff have been allegedly violated by the named defendants.

## FIRST CLAIM FOR RELIEF
## DIRECT COPYRIGHT INFRINGEMENT

Plaintiff repeats and re-avers each and every averment contained in paragraphs 1 through 49, inclusive, and as if fully set forth herein.

50. Plaintiff is alleging in this complaint that he knows of at least (14) fourteen original songs, owned by him, that are allegedly being infringed by the defendant companies and their cadre of artists, to the tune of billions of dollars.

51. The titles of such original songs and comparative offending derivative songs are as follows"

1. "Fire In Tha Hole" By Plaintiff & "Fire In a Hole" By Defendants
2. "Im So High" By Plaintiff & "So High" By Defendants
3. "Smoke, Drink, Cuss Fight" By Plaintiff & I Smoke, I Drink & I Smoke by Maself
4. "Kings In The City" By Plaintiff & "I'm A King" By defendants

10

5. "We Got It Poppin" By Plaintiff & "Gon Git Git Git It Poppin" By Defendants

6. "Wish A Mutha Fuggah Would" By Plaintiff & "The Heat" By Defendants.

7. "Strippa Girl" By Plaintiff & "In Love Wit A Stripper" By Defendants

8. "Slow Neck" By Plaintiff & "Slow Motion" & "Getting Some" By Defendants

9. "Everybody's Talkin Bout Us" By Plaintiff & "Talk about Our Love"—

10. "Shoot To Kill" By Plaintiff & Battle Song & "Welcome To The South" By Defendants

11. "I'm A Maniac" By Plaintiff & "Break Bread" By Defendants

12. First Blood By Plaintiff & "One Blood" By Defendants.

13. "That's What's Up" By Plaintiff & "That's What's Up" By Defendants

## PROBATIVE/SURFACE ANALYSIS

52. One song has been outlined here for the sake of brevity and analyzed to locate any probative similarities that can be found in the offending works. In this search for probative evidence of copying, evidence probative enough to mandate a trial on the merits where the serious fact issues shown below must be decided. It is with a view to the Court's statements in *Nichols*, that this preliminary analysis was devised and placed within the four corners of this complaint.

> *"Likewise, when a study of (2) two writings is made, and it is plain from the study that one of them is not in fact the creation of the putative author, but instead has been copied in substantial part exactly or in transparent re-phrasing to produce essentially the story of the other writing, it infringes". (See: Nichols v. Universal Pictures Corp., 11930, 45 F. 2d 119 & Warner Brothers Pictures v. Majestic Pictures Corp, 2 Cir. 70 F. 2d 310, 311).*

## SONG ONE: "FIRE IN THE HOLE"

**TITLE: *"FIRE IN THE HOLE"*- (PLAINTIFF, ARTISTS, ROWDY BOYZ)**
**TITLE: *"FIRE IN THE HOLE"*-(DEFENDANTS, ARTIST, BLACK ROBB)**

**RIGHTS ALLEGELY VIOLATED: 17 USC 106(1), (RIGHT OF REPRODUCTION), 17 USC 106(2), (RIGHT TO PREPARE DERIVATIVE WORKS), 17 USC 106(3), 17 USC 106(4) (RIGHT OF PUBLIC DISTRIBUTION), 17USC 106(5) RIGHT TO PUBLICLY PERFORM).... 17 U.S.C. 102 ET SEQ. & SECTIONS 107 THRU 122**

**LIABILITY IS ATTRIBUTTED TO: BAD BOY RECORDS (17 USC 106(1), (2)(3)(4)&(5), UNIVERSAL MUSIC GROUP (17 USC 106(1), (2)(3)(4)&(5)& VIACOM 17 USC 106(4)&(5), FOR DIRECT COPYRIGHT INFRINGEMENT & CONTRIBUTORY COPYRIGHT INGRINGEMENT.**
**\*\*\*Alleged Sampled Sound Recording Violations\*\*\***

53.  Under 17 U.S.C. 106 et seq & 107 through 122, Section 106 provides; Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: 1.) to reproduce the copyrighted work in copies or phono records; 2.) to prepare derivative works based upon the copyrighted work; 3.) to distribute copies or phonorecords of the

copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; 4.) In the case of literary, musical, dramatic, and chorographical works, pantomimes, and motion pictures and other audio visual works to perform the copyrighted work publicly; 5.) In the case of literary, musical dramatic and choreographic works, pantomimes, and pictorial, graphic or sculptural works, including the individual images of a motion picture or other audio visual work, to display the copyrighted work publicly; and 6.) In the case of sound recordings, to perform the copyrighted work publicly by means of audio transmission…

54. Section 114(b) states: (b). The exclusive right of the owner of copyright in a sound recording under clause (1) of section 106, is limited to the right to duplicate the sound recording in the form of phonorecords or copies that directly or indirectly recapture the actual sounds fixed in the recording. The exclusive right of the owner of copyright in a sound recording under clause (2) of section 106 is limited to the right to prepare a derivative work in which the actual sounds fixed in the sound recording are rearranged, remixed or otherwise altered in sequence or quality.

55. Therefore, it is being further alleged that in order to use plaintiff's works as the starting point for defendant's alleged derivative creations, plaintiff's original sound recordings were sampled into a digital recorder and manipulated in order to achieve the same musical and lyrical expression as the plaintiff, by merely changing pitch, time signature and sounds, all in order to come as close as possible to plaintiff's original expressions.

**SAMPLE SIDE-BY-SIDE COMPARISON OF LYRICS TO THE CHORUS LINES OF BOTH WORKS**

**PLAINTIFF**: <u>FIRE IN THA HOLE</u>-- <u>FIRE IN THA HOLE</u>--- <u>FIRE IN THA HOLE</u>-----…OHH.<u>TAKE COVER</u>…. (REPEATED OVER AND OVER AGAIN FOR 8 BARS)

**DEFENDANT (S):** NUTTIN BUT FLESH AND FRAGMENTS—YOU CANT ESCAPE—<u>THE FIRE IN THA HOLE</u>—LOUD TALK DON'T MOVE ME, YOU AINT UNRULY—PUNK YOU SCARED TA DEAF A DAT---<u>FIRE IN THA HOLE</u>—YOU AIN AFRAID TA DIE, OH MY MY MY---YOU FRONTIN YOU SCARED TA DEAF A DAT---<u>FIRE IN THA HOLE</u>—YO BOYS SCOPE IS DOPED OUT, YO WE RIDE NO WAY OUT—YALL NIGGAS BOUT TA SEE---<u>THE FIRE IN THA HOLE</u>—LIKE CANCER BABY, YALL GON GET TURNED INSIDE OUT WIT DAT---<u>FIRE IN THA HOLE</u>—BETTA STOP DROP AND ROLL---AND WATCH <u>THAT FIRE IN THA HOLE</u>---

56. Therefore, as a matter of fact and law, it can be presumed that the probative value here points not only to the identical expression and verbatim titles, but more directly, the plaintiff's "take cover" chorus line ending also appearing in the ending of the defendants chorus line, but stated as "stop drop and roll", which literally means the same thing as "taking cover".

14

57. The Court can see from the side-by-side comparisons, identical beginnings and endings, and verbatim expressions what the experts will say concerning the words and the music and a trial on the merits will become inevitable.

58. It is further alleged that the defendants made a video out of plaintiff's song and mass marketed and distributed the video as well as thousands of the Black Robb Report CD, which sold tremendously.

## PROTECTED ELEMENTS LIFTED FROM PLAINTIFF'S WORK INCLUDE:

1. Title to chorus line "Fire in the Hole".

2. Sampled music and transposed and time stretched to create derivative.

3. Entire expression of plaintiff's "Fire in the Hole".

4. Entire dialogue, including plaintiff's "take cover" statement at end of chorus. Defendants work states: "stop, drop and roll".

5. Rhythm, Melody, Harmony, Chords, Phraseology, Motif, Time Signature. Sound recording sampled.

6. Chorus line in its entirety, as well as the hook, "Fire in the Hole".

7. Same Aesthetic appeal.

8. Sentiment

9. Imagery

10. Identical personification, Allusion, Symbolism---Gothic Elements—Allegory—Ambiguity

11. Same Assonance—Diction—Hyperbole—Syntax—Tone

12. Repetition of same Theme

13. Same Climax same Resolution.

14. Same figurative language.

15. Idiosyncratic appearance of such a phrase in defendant's chorus line as in plaintiffs.

16. Reasonable jurors would find substantial similarity of ideas and expression.

59. For the sake of brevity, only one song was analyzed here in this complaint for the sake of probative similarities found between the two works. However, the other (13) thirteen songs all follow the same infringement patterns within the body of the music and the lyrics. At the proper time, these will be analyzed as well.

60. Therefore, all the named defendants are allegedly implicated in direct and indirect copyright infringement and liability is deemed Contributory and vicarious. Defendants are further alleged to have made derivative works from plaintiff's original works in order to fully accomplish the alleged infringement.

61. Section 103 of The Copyright Act provides that the subject matter of copyright includes compilations and derivative works. Section 101 defines derivative works as:

> "A work based on one or more pre-existing works, such as a translation, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed or adapted. A work consisting of editorial revisions, annotations, or other modifications,

16

*which, as a whole, represent an original work of authorship, is a derivative work."*

## SECOND CLAIM FOR RELIEF
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

**By plaintiff against all defendant persons for Contributory and Vicarious Copyright Infringement, pursuant to 17 USC 501 Et. Seq.**

62.  Plaintiff repeats and reavers each and every allegation contained in paragraphs 1 through 62 as if fully set forth herein, and further alleges that, at all relevant times, each defendant person has engaged in, and on information and belief, continues to engage in the business of knowingly and systematically participating in facilitating, materially contributing to and encouraging the above described unauthorized creation of derivative works of plaintiffs original songs (as well as other authors), reproducing them, making adaptations, distributing and otherwise commercially exploiting them at will, thereby infringing plaintiffs copyrights, intentionally, and each defendant person had actual and constructive knowledge, either directly or indirectly, of the infringements committed by and through the unlawful enterprise and its agent employees or such defendant persons merely provided necessary support.

63.  Furthermore, and at all relevant times, each defendant has derived substantial financial benefit from the infringement of plaintiff's copyrights by each defendant. Defendants have even charged fees to take possession of plaintiff's and other author's coveted and original works with their permission and consent

64. At all relevant times, each defendant person has had the right and ability to supervise and or control the infringing conduct of each other defendant, whether directly or indirectly, from a criminality standpoint or a support standpoint.

65. Defendant persons, through their active participation in the unauthorized reproduction and creation of derivative works and distribution and exploitation of plaintiffs property, thereby provided provisions of the means and facilities for unauthorized reproduction and creation of derivative works of plaintiffs property, thereby adapting and distributing and publishing plaintiffs works unlawfully, providing encouragement of and assistance to each other defendant to engage in the unauthorized infringement actions, and each defendants material contribution to each other defendants acts, as well as their control over the means and facilities by which such unauthorized reproductions and derivative works were created, as well as the substantial direct financial benefits that defendants derived from all the aforesaid acts, all done with full knowledge of their illegal consequences, and all defendant persons are thus contributorily and vicariously liable for a vast number of intentional and direct copyright infringements.

66. The infringement of each of plaintiff's rights in and to each of the copyrighted works constitutes separate and distinct acts of infringement.

67. The foregoing acts of infringement by defendants have been willful, intentional and purposeful in disregard of and with indifference to plaintiffs and other author's rights.

68. As a direct and proximate result of defendant's infringement of plaintiff's copyrights and exclusive rights under copyrights and exclusive rights under copyright, plaintiff is entitled to damages as well as defendants profits pursuant to **17 USC 504(b)** for each infringement.

69. Plaintiff is further entitled to attorney fees and full costs pursuant to **17 USC 505**.

70. Defendants conduct threatens to cause, and is causing harm to plaintiff's business and property, and unless enjoined and restrained by this Court, will continue to cause plaintiff great and irreparable injury that cannot be fully compensated for or measured in money. Plaintiff has no adequate remedy at law. Pursuant to **17 USC 502**, plaintiff is entitled to preliminary and permanent injunctions prohibiting further infringements of its copyrights and exclusive rights under copyright.

## CONCLUSION

71. "Get a license or do not sample", Sixth Circuit Judge Ralph Guy states in a tone reminiscent of Judge Kevin Duffy, who opened his dreadful opinion in *Grand Upright v. Warner (1991),* with the biblical admonition "Thou Shallt Not Steal". In this case, the actual copying of the "Sound Recording" has been alleged". Sound recordings and their underlying musical compositions are separate works with their own separate and distinct copyrights. *(See: 17 U.S.C. 102(a)(2), (7) Bridgeport Music, Inc., v. Still In The Water Publishing, 327 F. 3d 472 n. 475 n. 3 (6th Cir.), cert. denied, 540 U.S. 948, 124 S.Ct. 399, 157 L.Ed 2d 279 (2003).*

72. In most copyright actions, the issue is whether the infringing work is substantially similar to the original work…. The scope of inquiry is much narrower when the work in question is a sound recording.

73. The only issue is whether the actual sound recording has been used without authorization. Substantial Similarity is not an issue. *("Bradley C. Rosen, Esq. 22 CAUSES OF ACTION 12 (2d ed. 2003).* Since the exclusive right encompasses remixing, re-arranging or otherwise altering the actual sounds, the statute, by its own terms precludes the use of a substantial similarity analysis.

## RELIEF SECTION

74. Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above. Plaintiff is, and at all relevant times has been, the **copyright** owner or licensee of exclusive rights under United States **copyright** with respect to certain copyrighted sound recordings, including but not limited to the copyrighted sound recordings identified in Exhibit A attached hereto, each of which is the subject of a valid Certificate of **Copyright** Registration issued by the Register of Copyrights (the "Copyrighted Recordings") or pre-registration, as the case may be.

75. Among the exclusive rights granted to each Plaintiff under the **Copyright** Act are the exclusive rights to reproduce the Copyrighted Recordings and to distribute the Copyrighted Recordings to the public. Plaintiffs are informed and believe that Defendants, without the permission or consent of Plaintiffs, has used, and continues to use, plaintiff's sound recordings, samples and lyrics and an online media distribution system to download the Copyrighted Recordings, to distribute the Copyrighted Recordings to the public, and/or to make the Copyrighted Recordings available for distribution to others. In doing so, Defendant has violated Plaintiffs' exclusive rights of reproduction and distribution. Defendant's actions

constitute **infringement** of Plaintiffs' copyrights and exclusive rights under **copyright**.

76. Exhibit C contains a complete listing of songs or sound recordings Defendants have made available for distribution to the public. Plaintiffs are informed and believe that virtually all of the sound recordings listed on Exhibit C have been downloaded, marketed, advertised. Distributed sold, promoted and/or offered for distribution without permission of the respective **copyright** holder.

77. Plaintiff is informed and believes that the foregoing acts of **infringement** have been willful and intentional, in disregard of and with indifference to the rights of Plaintiff. As a result of Defendant's **infringement** of Plaintiffs' copyrights and exclusive rights under **copyright**, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's **infringement** of each of the Copyrighted Recordings.

78. Plaintiff is further entitled to their attorneys' fees and costs pursuant to 17 U.S.C. § 505.  The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiffs are entitled to injunctive relief prohibiting Defendant from further infringing Plaintiffs' copyrights, and ordering Defendant to destroy all copies of sound recordings made in violation of Plaintiffs' exclusive rights.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

79.  For an injunction providing: "Defendant shall be and hereby is enjoined from directly or indirectly infringing Plaintiffs' rights under federal or state law in the Copyrighted Recordings and any sound recording, whether now in existence or later created, that is owned or controlled by Plaintiff (or any parent, subsidiary, or affiliate record label of Plaintiffs) ("Plaintiffs' Recordings"), including without limitation by using the Internet or any online media or land based retail/wholesale distribution system to reproduce (*i.e.,* download) any of Plaintiffs' Recordings, to distribute (*i.e.,* upload) any of Plaintiffs' Recordings, or to make any of Plaintiffs' Recordings available for distribution to the public, in any manner whatsoever, except pursuant to a lawful license or with the express authority of Plaintiffs.

80.  Defendant also shall destroy all copies of Plaintiffs' Recordings that Defendant possesses or has downloaded onto any computer hard drive or server. Without Plaintiffs' authorization and shall destroy all copies of those downloaded recordings transferred onto any physical medium or device in Defendant's possession, custody, or control." For statutory damages for each **infringement** of each Copyrighted Recording pursuant to 17 U.S.C. § 504.

### Prayer for Relief

***THEREFORE***, Plaintiff prays for judgment against Defendants as follows:

A. Declaring that Defendants' unauthorized conduct violates Plaintiffs' rights under common law and the Federal Copyright Act.

22

B. Immediately and permanently enjoining Defendants, their officers, directors, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them from copying and publishing and or republishing any of Plaintiffs' copyrighted articles or copyrighted material without consent or otherwise infringing Plaintiffs' copyrights or other rights in any manner;

C. Ordering Defendants to account to Plaintiffs for all gains, profits, and advantages derived by Defendants by their infringement of Plaintiffs' copyrights or such damages as are proper, and since Defendants intentionally infringed plaintiffs' copyrights, for the maximum allowable statutory damages for each violation;

D. Awarding Plaintiffs actual and/or statutory damages for Defendants' copyright infringement in an amount to be determined at trial;

E. Awarding Plaintiffs their costs, reasonable attorneys' fees, and disbursements in this action, pursuant to 17 U.S.C. § 505; and or alternatively, award plaintiff a sum certain, equally split between all defendants based on degrees of culpability, of no less than $50 million dollars, without an accounting, and

F. Awarding Plaintiffs such other and further relief as is just and proper.

DATED: June 10th 2008

By _Robert R. Prunté_

## CERTIFICATE OF SERVICE

I HEREBY DECLARE, UNDER PENALTY OF PERJURY, THAT THE FOREGOING IS A TRUE AND CORRECT ACCOUNT OF THE HEREIN ALLEGED MATTERS AND EVENTS, AND THAT THE FOLLOWING ENTITIES REPRESENT THE INDIVIDUAL DEFENDANT PERSONS NAMED IN THE CAPTION AS INTERESTED PERSONS, AND WERE MAILED A TRUE AND CORRECT COPY OF THIS COMPLAINT ON OR ABOUT ~~————~~. Thurs. ____ JUNE ~~——~~ 12th 2008.

**JENNER & BLOCK, LLP**, C/O MICHAEL DESANCTIS, SEAN HARTIGAN AND STEVEN FABRIZIO; 1099 NEW YORK AVENUE, N.W. SUITE 900, WASHINGTON, D.C. 20001; **LEVINE, SULLIVAN, KOCH & SCHULTZ, LLP.**, C/O MICHAEL D. SULLIVAN OR JOHN B. O'KEEFE 1050 SEVENTEENTH STREET, N.W. SUITE 800, WASHINGTON, D.C. 20036-5514 & **THE UNITED STATES COURTHOUSE** OF THE DISTRICT OF COLUMBIA, F. BARRETT

24

PRETTYMAN BUILDING, 333 CONSTITUTION AVENUE, N.W.

WASHINGTON, D.C. 20001, C/O, CLERK'S OFFICE.

BY:

ROBERT R. PRUNTE'

614 WYANOKE AVENUE

BALTIMORE, MARYLAND 21218

443.615.1745 or 443.682.7292