Robert R. Prunté, (pro sé)
614 Wyanoke Avenue
Baltimore, Maryland 21218
443.615.1745 OR 443.682.7292

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

06-480 (PLF)

ROBERT R. PRUNTÉ

Plaintiff,

Vs.

UNIVERSAL MUSIC GROUP RECORDINGS, et al

Defendant (s)

CASE NUMBER: 1:06-CV-0048

JUDGE: Paul L. Friedman (PLF)

**PLAINTIFF'S REPORT WITH REGARD TO COURTS ORDER OF JUNE 2ND 2008, INCLUDING PLAINTIFF'S VIEWS CONCERNING THE (2) TWO SPECIFIC QUESTIONS POSED TO THE PARTIES BY JUDGE PAUL L. FRIEDMAN, AS WELL AS THE COURT ORDERED PLAINTIFF OPPOSITION TO THE VERY CONCEPT OF SUMMARY JUDGEMENT IN A COMPLEX COPYRIGHT CASE AND MEMORANDUM OF LAW**

Comes now the plaintiff with its report, (obviously not filed jointly), and opposition, not to any motion that was filed, but to the very thought of such a

RECEIVED
JUN 2 5 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

judgment in light of he facts in this case. However, since this Court has entertained defendants feeble request, and not converted any motions to dismiss into summary judgment proceedings, and not given the parties a timetable for filing such motions itself, plaintiff does not have anything to actually oppose at this point, except the wildly speculative motion for summary judgment itself.

The plaintiff will however, make an attempt t do all parts of the Courts order, without sacrificing any rights the plaintiff may have in this regard. Nevertheless, please see plaintiff's version of the "joint report" sought by this Court, and based upon the June 2nd Order, which demanded certain activities from the parties in this case.

As an initial matter, let it be stated here that Counsel for UMG and WMG had utterly no intentions of filing a "<u>joint report</u>" or "<u>meeting</u>" with the plaintiff, as contemplated by the Court with its Order.

Counsel called plaintiff at 7 pm. On or about June 4th 2008 and casually discussed the meaning of the Courts Order. Plaintiff responded with its idea of Summary Judgment proceedings and remained steadfast with no opinion about Counsel's "proposed" motion for Summary Judgment, as a non-moving party would.

For Counsels part, it offered utterly NO schedule for its proposed motion for summary judgment, and instead only spoke about the June 30th 2008 deadline mandated by the Court.

Finally, plaintiff disagreed with the defendant's dilatory tactic of Summary Judgment in the face of facts describing this case. Precisely, the defendants are well aware that the "Operative Complaint" alleges infringement of "Sound Recordings" as contemplated by The Copyright Act, and are fully cognizant of its ramifications, such as the "ordinary observer test" being totally inappropriate where such sound recordings are concerned.

Counsel attempts to mislead this Court and this plaintiff when it claims any ordinary observer test over rules the force and traditional practice of the test concerning sound recordings or music samples, which is known as "Fragmented Literal Similarity". **(See: Bridgeport Music, Inc. v. Dimension Films).**

The short of it all is that plaintiff, for its part, <u>cannot</u> provide the Court with a date for defendants proposed motion for Summary Judgment. However, since plaintiff is all too familiar with Counsel's frivolous legal position(s), (unless they have changed), plaintiff will herein provide this Court with it's "opposition" to "any" motion for Summary Judgment filed by UMG and WMG.

Counsel also refused to actually <u>meet</u>, as this plaintiff told both Desanctis and Hartigan was the literal interpretation of the Courts Order. Counsel replied that telephone could serve the intent of the Courts Order just as well.

So, in essence, the parties "conferred", but nothing happened. There was no schedule mentioned for the filing of defendant UMG and WMG's Motion for Summary Judgment.

Therefore, with regard to the Court's first question of: "(1) precisely what evidence the Court will require in order to rule on defendants motion":

For a certainty, this Court needs the physical lyrics of the "Chorus Lines", the "Music" as well as the "Sound Recording" of the samples plaintiff contends defendants used in creating the eventually infringing product. Plaintiff has already supplied all of this in its recent Motion in Limine.

Then the Court must determine if "Chorus Lines" of the plaintiff are protected by Copyright, (as they most definitely are), and also, the Court must decide if defendants "Lyrics", "Music" and "Sound Recordings" that are also protected by Copyright, are so "dissimilar" with regard to protected expression" that no reasonable fact finder, unless he set out to detect the differences, would regard the "aesthetic qualities" of the works as coming from the same source.

The plaintiff must show not only that the defendant actually copied the plaintiff's work, but also that the defendants work is "substantially similar" to protected elements of the plaintiff's work *(See Boison v. Banion, Ltd., 273 F. 3d 262, 267-268 (2nd Cir. 2001); Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F. 2d 600, 606 (1st Cir. 1988).*

In this case, the proving of "substantial similarity" will undoubtedly involve the analysis of the "music" and the "words", but also an analysis by experts of the "sound recording music samples" used by defendants in developing the allegedly infringing product. In surveying the works, a Court must identify which aspects of

the artists work, if any, are protectible by copyright. The copyright is limited to those aspects of the work—termed "expression"—that display the stamp of the author's originality. (See: Feist Publ'ns, 499 U.S. at 350).

The substantial similarity determination requires comparison not only of the two works "<u>individual elements</u>" in isolation, but also of their "<u>overall look and feel</u>". ***Boisson, 273 F. 3d at 272.***

An allegedly infringing work is considered substantially similar to a copyrighted work if the ordinary observer, unless he set out to detect the disparities,, would be disposed to overlook them, and regard their <u>***"aesthetic appeal"***</u> as the same.

Put another way, the touchstone of the analysis is the <u>***"overall similarities***</u> rather than the minute differences between the two works. ***(See: Country Kids, 77 F. 3d. at 1288)***

Considering the <u>works as a whole</u> is particularly important because protected expression may arise through the ways in which artists combine even <u>unprotectible elements</u>. For example, while color I and of itself is not protectible, the "manner" in which an artist "selects" "coordinates" and "arranges" the colors may be. (See: Boisson, 273 F. 3d at 272).

Thus, and automatically, this Court must focus upon the chorus lines of the two works, which happen to be "the very heart of the works". The Chorus Lines must be "viewed as a whole", literally.

This area of musical/literary/ and original sampled sound recordings is the most hallowed and sacred in all of the law of Copyright. This is the most important section of all musical works, which sonically, aurally, and lyrically expresses the very "commercial value" of the proprietary substance of the works in question. (See: **Harper & Row v. Nation Enterprises, 471 U.S. 539, (1985), Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975).**

The law is currently unsettled regarding the ways in which uncopyrightable elements combine with the author's original contributions to form protected expression. *Compare Wainwright Securities Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91 (CA2 1977) (protection accorded author's analysis, structuring of material and marshaling of facts), *with Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972 (CA2 1980) (limiting protection to ordering and choice of words). *See, e.g.,* 1 Nimmer § 2.11[D], at 2-164 - 2-165.

## SPECIAL MATTERS

First of all, this plaintiff has intimated to this court previously and presently, that "hip hop" or "gangsta rap", are specialized music genres where purchasors of this music posess a specialized and intimate knowledge about the music and its dialect and linguistics. Therefore, plaintiff contends that the "ordinary observer" must come frm the "intended audience" for the works, and not an ordinary observer with no such nowledge or skills possessed by this "intended auience". (See: Dawson v. Hinshaw, 4h Circuit).

Secondly, the operative complaint atests to soundrecordings of original music samples being lifted as well by defendants UMG and WMG, therefore, experts must inform the Cort of the presence of "fragmented literal similarity" between the sound recordings musical samples. The above (2) two pecial matters are very important to plaintiff's case in chief and have been fully briefed in motins in limine.

Finally, plaintiff stands ready for any attempts by summary judgement or otherwise to thwart plaintiffs rights in its original works, with myriad geuine issues of material fact that will be litigated fairly and not fribvolously trivialized where a trial on the

merits is very necessary, and any other and further relief this Court deems to be just and proper.

Respectfully Submitted;

By _[signature]_

## CERTIFICATE OF SERVICE

I HEREBY DECLARE, UNDER PENALTY OF PERJURY, THAT THE FOREGOING IS A TRUE AND CORRECT ACCOUNT OF THE HEREIN ALLEGED MATTERS AND EVENTS, AND THAT THE FOLLOWING ENTITIES REPRESENT THE INDIVIDUAL DEFENDANT PERSONS NAMED IN THE CAPTION AS INTERESTED PERSONS, AND WERE MAILED A TRUE AND CORRECT COPY OF THIS COMPLAINT ON OR ABOUT Sunday JUNE 22nd 2008.

**JENNER & BLOCK, LLP**, C/O MICHAEL DESANCTIS, SEAN HARTIGAN AND STEVEN FABRIZIO; 1099 NEW YORK AVENUE, N.W. SUITE 900, WASHINGTON, D.C. 20001; **LEVINE, SULLIVAN, KOCH & SCHULTZ, LLP.**, C/O MICHAEL D. SULLIVAN OR JOHN

1. B. O'KEEFE 1050 SEVENTEENTH STREET, N.W. SUITE 800,
2. WASHINGTON, D.C. 20036-5514 & **THE UNITED STATES**
3. **COURTHOUSE** OF THE DISTRICT OF COLUMBIA, F. BARRETT
4. PRETTYMAN BUILDING, 333 CONSTITUTION AVENUE, N.W.
5. WASHINGTON, D.C. 20001, C/O, CLERK'S OFFICE.

BY: *[signature]*

ROBERT R. PRUNTE'

614 WYANOKE AVENUE

BALTIMORE, MARYLAND 21218

443.615.1745 or 443.682.7292